**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

MICHAEL D. WATFORD, GARLAND R. SHAW, C. BRADLEY JOHNSON, DAVID W. HONEYFIELD and JERALD J. STRATTON, JR.,

Defendants.

---

Civil Action No. 1:20-cv-02820-KLM

ANDREW BUSSOM, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

MICHAEL D. WATFORD, GARLAND R. SHAW, C. BRADLEY JOHNSON, DAVID W. HONEYFIELD and JERALD J. STRATTON, JR.,

Defendants.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
OF MICHAEL ALTMAN TO CONSOLIDATE THE RELATED ACTIONS,
APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION
OF COUNSEL**

---

Michael Altman[1] ("Movant") hereby moves this Honorable Court for an order: (1)

---

[1] Michael Altman pursues claims in this litigation in connection with his own Ultra securities transactions and the Ultra securities transactions of his wife, Kayreen Altman, for whom he made all investment decisions. Kayreen Altman has duly assigned to

1

consolidating the above-captioned related actions; (2) appointing Movant as Lead Plaintiff for the Class of all persons and entities other than Defendants that purchased or otherwise acquired Ultra Petroleum Corp. ("Ultra" or the "Company") securities between April 13, 2017 and August 8, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against certain of the Company's current and former senior executives; and (3) approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class. This Motion is brought pursuant to pursuant to the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

Movant should be appointed Lead Plaintiff and his selection of counsel should be approved. To Movant's knowledge, Movant is the "most adequate plaintiff" as defined by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Movant purchased, and retained throughout the Class Period, 1,062,200 shares of Ultra suffering losses of approximately $705,022.40 and otherwise satisfies the pertinent requirements of Rule 23 of the Federal Rules of Civil Procedure. Additionally, Movant has selected counsel that has extensive experience in securities class actions throughout the country.

## I.      PERTINENT FACTS AND PROCEDURAL HISTORY

This first of these related actions, styled as *Subramanian v. Michael D. Watford, et al.*, Case No. 1:20-cv-02652-CMA-STV, was commenced against certain of the Company's current and former officers for violations of the Exchange Act on September 1, 2020. That same day, the requisite PSLRA early notice advising class members of

---

Michael Altman the right to pursue such claims. *See* Declaration of Phillip Kim in Support of Motion ("Kim Decl."), Ex. 3.

the pendency of the action and the 60-day deadline for any class member to seek appointment as lead plaintiff in this action was issued. *See* Declaration of Phillip Kim In Support of Motion of Michael Altman to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel, Ex. 1.[2]

On September 17, 2020, the related action styled as *Bussom v. Michael D. Watford, et al.*, Case No. 1:20-cv-02820-KLM, was filed in this district with the same Class Period against the same defendants and with substantially similar Exchange Act allegations.

Ultra is an oil and gas development company with primary assets in the Pinedale and Jonah fields of the Green River Basin of southwest Wyoming. Over 80% of the Company's revenues have historically been derived from the development and sale of natural gas.

The complaints allege that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) Ultra's proved reserves were materially overstated and, therefore, worth hundreds of millions of dollars less than represented; (2) Ultra's proved undeveloped reserves were of *de minimis* value because they contained low quality deposits that lacked a commercially viable path to development; (3) Ultra was unable to meet the production and development estimates provided to investors and such estimates lacked a reasonable basis; (4) Ultra was unable to withstand even a modest downturn in the price of natural gas because, inter alia, Ultra's business had less financial and production flexibility than claimed; (5) Ultra did not have the technical or financial capabilities or available asset base to

---

[2] All references to "Ex. __" refer to the exhibits attached to this Declaration.

sustainably grow its oil and natural gas production by any meaningful amount; and (6) Ultra lacked the production capabilities or asset base necessary to meaningfully grow production through horizontal well drilling, and initial test wells were not representative of the Company's actual horizontal well prospects.

At the start of the Class Period, in April 2017, Ultra exited a court-supervised reorganization under Chapter 11 of the U.S. Bankruptcy Code. At the time, Ultra's management touted the Company's purportedly streamlined and flexible financial profile, lower debt load, access to credit lines, and production growth capabilities. Ultra's management also represented that the Company was well positioned to service its remaining $2 billion debt load and not at risk of any further court-ordered reorganizations, even in the event of a sustained declined in the price of natural gas.

Ultra exited the bankruptcy purportedly in "growth mode." Defendants stated that the Company was poised to maximize the value of its substantial oil and gas deposits (which they valued at $4.19 billion, including $1.5 billion of proved undeveloped reserves) through ramped up production in 2017 and 2018. They likewise claimed that Ultra was on track to produce between 290 and 300 billion cubic feet equivalent ("Bcfe") in 2017, with 25% production growth over these figures in 2018. Defendants represented that the Company had the financial and production flexibility to weather even a low-commodity-price environment and was set to ramp up well development with ten rigs operating by 2018 on the back of an estimated $788 million capital budget. Accretive to this plan was the launch of a horizontal well drilling program, which Ultra executives claimed was set to significantly expand the production capabilities of the Company's existing wells. These and similar statements to investors were materially

false and misleading when made.

Soon after exiting bankruptcy, cracks in Defendants' false and misleading narrative appeared when Ultra provided disappointing financial and operational results for its second quarter of 2017 – the same quarter in which Ultra had exited the bankruptcy proceedings. However, the full truth about Defendants' fraud would not be fully revealed until two years later, after a series of shocking revelations demonstrated that Ultra could not grow production by any meaningful amount and that its wells were worth a fraction of the values previously represented. By the end of the Class Period, Ultra was forced to completely halt well development, abandon its horizontal well program, and admit that its undeveloped proved reserves – previously valued at $1.5 billion – were in fact worthless.

Ultra stock has now been delisted. In May 2020, the Company was forced to enter bankruptcy proceedings again to seek a court-ordered reorganization. This time, however, the Company claimed its equity is worthless and that shareholders should get nothing. The bankruptcy court approved the Company's reorganization plan on August 21, 2020.

The price of Ultra securities has plummeted 99% from its Class Period high to a low of less than $0.01 per share, causing investors to suffer tremendous losses. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Ultra's shares, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

## II.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

The above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## III.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 60 days after the date of publication, or (ii) as

soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Crocs, Inc. Secs. Litig.*, 2008 WL 4298316, at * 1- * 2 (D. Colo. Sept. 17, 2008).

As explained below, Movant satisfies the above criteria and is the most adequate plaintiff and should be appointed Lead Plaintiff.

### A.    Movant Is Willing to Serve as Class Representative

Preliminarily, in response to the early notice issued on September 1, 2020, Movant made this motion within the 60-day time period. Movant attests that he has reviewed the complaint and is willing to serve as a representative of the class. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class. *See* Ex. 2.

### B.    Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person … that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). While the PSLRA does not specify how to calculate the "largest financial interest," the approximate losses suffered are the most determinative.

*Richardson v. TVIA, Inc.*, 2007 WL 1129344 at * 4 (N.D. Cal. Apr. 16, 2008) (citing cases). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005); *Weiss v. Friedman, Billings, Ramsey, Group, Inc.*, 2006 WL 197036 * 3 (S.D.N.Y. Jan. 25, 2006).

Movant purchased, and retained through the Class period, 1,062,200 Ultra shares and lost approximately $705,022.40 in connection with his purchases of Ultra securities. *See* Ex. 4. Movant is not aware of any other individual who has suffered greater losses in Ultra securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed Lead Plaintiff for the Class.

C.     **Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Federal Rules of Civil Procedure Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that the Lead Plaintiff satisfies the requirements of

Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See In re Fuwei Films Secs. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23."); *Cooke v. Equal Energy Ltd.*, Master Docket CIV14-0087-C, 2014 U.S. Dist. LEXIS 63452, *7 (W.D. Okla. May 8, 2014); *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA. *Crocs*, 2008 WL 4298316, at * 2. And of these four prerequisites, only two – typicality and adequacy – affect the analysis of competing motions for appointment as lead plaintiff. *See Wolfe v. Aspenbio Pharma, Inc.*, 275 F.R.D. 625, 628 (D. Colo. 2011).

### 1. Movant's Claims Are Typical of the Claims of All Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." Typicality is demonstrated where the members of the class are victims of the same course of conduct. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 604 (D. Colo. 1990). Typicality is satisfied when the representative plaintiffs' claims arise from the same event, practice or course of conduct that provides the basis of class claims and are grounded in the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Typicality does not require that every class member's claim be identical to those of the representative plaintiffs. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). According to the

Tenth Circuit, "the typicality requirement is ordinarily not argued…It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975).

Here, the typicality requirement is met because Movant's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. Movant and all of the Class Members purchased Ultra securities when the prices were artificially inflated as a result of the Defendants' misrepresentations and omissions, and thus, both Movant and Class Members suffered damages as a result of these purchases. Simply put, Movant like all other Class Members: (1) purchased Ultra securities during the Class Period; (2) purchased Ultra securities at artificially-inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. Moreover, Movant is not subject to any unique or special defenses. Thus, Movant meets the typicality requirement of Rule 23.

### 2.    Movant Will Adequately Represent the Class

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and has made this motion to be appointed as Lead Plaintiff.

Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from his investments in Ultra securities and is therefore, extremely motivated to pursue claims in this action.

### D.    Movant is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiff's class" that the presumptively most adequate plaintiff:

(aa) will not fairly adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered substantial financial losses and has the largest financial interest in this case of any timely lead plaintiff.

Movant is a sophisticated investor. Prior to his retirement, Movant was a licensed advisor with a Fortune 500 company. He holds a bachelor's degree, a Master of Business Administration, and is a Certified Public Accountant.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class. Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed as Lead Plaintiff for the Class.

## IV.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching the Class Plaintiff's claims including reviewing publicly available financial and other documents while gathering information in support of the claims against the defendants. Furthermore, the firm is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in courts throughout the country. *See* Ex. 5. The firm has prosecuted securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## V.    CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff; (3) approving Lead Plaintiff's selection of Rosen Law. as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated:  November 2, 2020                Respectfully submitted,


                                        /s/Phillip Kim
                                        Phillip Kim
                                        The Rosen Law Firm, P.A.
                                        275 Madison Avenue, 40th
                                        Floor New York, NY 10016
                                        Telephone: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: pkim@rosenlegal.com

                                        [Proposed] Lead Counsel for Plaintiff and Class

1

## CERTIFICATE OF SERVICE

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am an attorney at The Rosen Law Firm, P.A., with offices at 275 Madison Ave, 40th Floor, New York, NY 10016. I am over the age of eighteen.

On November 2, 2020, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF MICHAEL ALTMAN TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.


Executed on November 2, 2020.

/s/ Phillip Kim
Phillip Kim