## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

  v.

MICHAEL D. WATFORD,
GARLAND R. SHAW, C.
BRADLEY JOHNSON, DAVID W.
HONEYFIELD and JERALD J.
STRATTON, JR.,

    Defendants.

---

Civil Action No. 1:20-cv-02820-KLM

ANDREW BUSSOM, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

  v.

MICHAEL D. WATFORD,
GARLAND R. SHAW, C.
BRADLEY JOHNSON, DAVID W.
HONEYFIELD and JERALD J.
STRATTON, JR.,

    Defendants.

---

### MOTION OF THE ULTRA PETROLEUM INVESTOR GROUP FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................2

II.  STATEMENT OF FACTS...................................................................................3

III.  ARGUMENT .....................................................................................................6

    A.  The Actions Should Be Consolidated ..........................................................6

    B.  The Court Should Appoint Movant as Lead Plaintiff ....................................6

        1. The Procedure Required by the PSLRA................................................6

            a.  Movant Is Willing to Serve as Class Representative......................................8

            b.  Movant has the Requisite Financial Interest in the Relief Sought by the Class 8

        2. Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ................................................................................................9

            a.  Movant's Claims are Typical of the Claims of all the Class Members..........10

            b.  Movant Will Adequately Represent the Class ...............................................11

    C.  Movant's Choice of Counsel Should Be Approved ...................................13

IV.  CONCLUSION .................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Cooke v. Equal Energy Ltd.*,
  C.A. No.14-cv-0087-C, 2014 WL 3819159 (W.D. Okla. May 8, 2014) ........................... 10

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2d Cir. 1992) ....................................................................................... 11, 12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336, 338 (2005) .................................................................................................. 3

*Friedman v. Quest Energy Ptnrs. LP*,
  261 F.R.D. 607 (W.D. Okla. 2009) ................................................................................. 7, 8

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ......................................................................................................... 11

*Hufnagle v. Rino Int'l Corp.*,
  No. CV 10-8695-VBF (VBKx), 2011 WL 710704 (C.D. Cal. Feb. 14, 2011) .................... 6

*Lane v. Page*,
  250 F.R.D. 634 (D.N.M. 2007) .......................................................................................... 3

*Medina v. Clovis Oncology, Inc.*,
  Case No. 15-cv-2546-RM- MEH, 2016 WL 660133 (D. Colo. Feb. 18, 2016) ........... 6, 12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................ 10

*In re Party City Secs. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999) ............................................................................................ 10

*In re Razorfish, Inc. Secs. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001) ............................................................................... 3

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................................................ 10

*Schulman v. Lumenis, Ltd.*,
  No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y June 18, 2003) ......................... 10

*Smith v. Suprema Specialties, Inc.*,
  206 F. Supp. 2d 627 (D.N.J. 2002) .................................................................................... 3

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................................... 10

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984)..................................................................................... 11

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................ 10

**Statutes**

15 U.S.C. § 78u-4.....................................................................................passim

 **Rules**

Fed. R. Civ. P. 23 .....................................................................................passim

Fed. R. Civ. P. 42(a)..................................................................................6

## CERTIFICATION PURSUANT TO D.C.COLO.LCIVR 7.1(a)

This motion is filed pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4. This Section provides that within 60 days after publication of the required notice, any member of the proposed class may move the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the underlying action. Consequently, Movant's counsel has no way of knowing who, if any, the competing lead plaintiff candidates are until after all motions have been filed. Thereafter, counsel will attempt to ascertain whether this motion will be opposed by those class members in accordance with D.C.Colo.LCivR 7.1(a).

Movant's counsel has conferred with defense counsel regarding the consolidation of the above-captioned actions. Defense counsel does not oppose the consolidation of the actions and does not take a position regarding the appointment of lead plaintiff or lead counsel.

## I.    INTRODUCTION

Scott Heiner, Bala Settu, Geoffrey Polychronis, Mahdi Riyad Issa, and Yoav Givon (collectively, the "Ultra Petroleum Investor Group" or "Movant"), by and through its counsel, will and hereby does move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order (attached hereto): (i) consolidating the above-captioned actions (the "Actions" or "Consolidated Action"); (ii) appointing Movant as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired securities of Ultra Petroleum Corp. ("Ultra" or the "Company") between April 13, 2017 and August 8, 2019, inclusive (the "Class Period") pursuant to 15 U.S.C. §78u-4(a)(3)(B); (iii) approving Movant's selection of counsel Levi & Korsinsky, LLP ("Levi & Korsinsky") and Bragar Eagel & Squire, P.C ("BES") as Co-Lead Counsel and Berens Law LLC as Liaison Counsel; and (iv) granting such other and further relief as the Court may deem just and proper.

Presently pending before the Court are the Actions brought on behalf of all persons who purchased the securities of Ultra during the Class Period. Plaintiffs in the Actions allege violations of the Exchange Act against Michael D. Watford ("Watford"), Garland R. Shaw ("Shaw"), C. Bradley Johnson ("Johnson"), David W. Honeyfield ("Honeyfield"), and Jerald J. Stratton, Jr. ("Stratton"), (collectively, "Defendants").[1]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation who has also made a *prima facie* showing that

---

[1] Specifically, Plaintiffs in the Actions allege that Defendants violated Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

they are an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007); *In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002). Movant satisfies both requirements.

The Ultra Petroleum Investor Group collectively lost approximately $2,808,871.05 under both a straight last-in-first-out "LIFO" analysis, and in losses recoverable pursuant to *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 338 (2005). As such, Movant is the presumptive lead plaintiff under the PSLRA.[2] Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class. As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff.

## II.    STATEMENT OF FACTS

Ultra is an oil and gas development company with primary assets in southwest Wyoming. ¶ 2.[3]  Over 80% of the Company's revenues are purportedly derived from the development and sale of natural gas. *Id.* On May 14, 2020, Ultra filed for bankruptcy protection for the second time in four years and, as a result, is not named as a defendant in the Actions. *Id.*

---

[2] Movant's certifications identifying its transactions in Ultra, as required by the PSLRA, as well as a chart identifying its losses are attached to the declaration of Jeffrey A. Berens ("Berens Decl."), dated November 2, 2020 as Exhibits A and B, respectively.

[3] Citations to "¶_" are to paragraphs of the Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") filed in the *Subramanian* Action. The facts set forth in the Complaint are incorporated herein by reference.

Throughout the Class Period, Defendants knowingly and/or recklessly made false and/or misleading statements about the Company's business, operations, and prospects. Throughout the Class Period, Defendants, *inter alia*: (i) materially overstated the value of Ultra's oil and gas reserves; (ii) materially misrepresented the Company's ability to ramp up production and its financial flexibility; (iii) failed to disclose the Company's extreme sensitivity to even a modest decline in natural gas prices; and (iv) concealed significant setbacks in the Company's vaunted horizontal well drilling program. ¶ 6.

At the start of the Class Period, in April 2017, Ultra exited a court-supervised reorganization under Chapter 11 of the U.S. Bankruptcy Code. ¶ 3. At the time, Ultra's management represented that the Company was well positioned to service its remaining $2 billion debt load and not at risk of any further court-ordered reorganizations, even in the event of a sustained declined in the price of natural gas. *Id.*

The bankruptcy afforded equity holders a substantial recovery in the form of newly issued equity in the reorganized Company. ¶ 4. On the basis of this purportedly favorable conclusion to the bankruptcy, Ultra executives and other employees received lavish equity awards worth an estimated $300 million at the time with Watford alone receiving an astonishing $35 million worth of equity compensation, roughly ten times his prior annual compensation. *Id.*

The Company purportedly exited the bankruptcy in "growth mode" and poised to maximize the value of its substantial oil and gas deposits (which Defendants valued at $4.19 billion, including $1.5 billion of proved undeveloped reserves) through ramped up production in 2017 and 2018. ¶ 5. Defendants claimed that Ultra was on track to produce between 290 and 300 billion cubic feet equivalent ("Bcfe") in 2017, with 25% production

4

growth over these figures in 2018. *Id.* Defendants further represented that the Company was set to ramp up well development with 10 rigs operating by 2018 on the back of an estimated $788 million capital budget coupled the launch of a horizontal well drilling program, which Ultra executives claimed was set to significantly expand the production capabilities of the Company's existing wells. *Id.*

Soon after exiting bankruptcy, cracks in Defendants' false and misleading narrative appeared when Ultra provided disappointing financial and operational results for its second quarter of 2017 – the same quarter in which Ultra had exited the bankruptcy proceedings. ¶ 7. It would be two years before the full truth about Defendants' fraud would be fully revealed, after a series of shocking revelations would demonstrate that Ultra could not grow production by any meaningful amount and that its wells were worth a fraction of the values previously represented. *Id.* By the end of the Class Period, Ultra was forced to completely halt well development, abandon its horizontal well program, and admit that its undeveloped proved reserves – previously valued at $1.5 billion – were in fact worthless. *Id.*

As of the filing of the *Subramanian* Action, Ultra stock had been delisted. ¶ 9. In May 2020, the Company was forced to enter bankruptcy proceedings yet again in order to seek a court-ordered reorganization. *Id.* The Company's reorganization plan was approved by the bankruptcy court on August 21, 2020. *Id.*

The price of Ultra stock has plummeted 99% from its Class Period high to a low of less than $0.01 per share. ¶ 10.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A. <u>The Actions Should Be Consolidated</u>

Pursuant to the PSLRA, the Court should first rule on motions to consolidate before appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a). The Actions pending before this Court are well-suited for consolidation. The Actions are brought on behalf of purchasers of Ultra securities, allege similar class periods, and contain nearly identical allegations charging Defendants with making false and misleading statements.

"Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money." *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710704, at *2 (C.D. Cal. Feb. 14, 2011). Although the Actions are not identical, their common factual and legal bases, similar class periods, nearly identical legal claims, and common Defendants, warrant consolidation. *See Medina v. Clovis Oncology, Inc.*, Case No. 15-cv-2546-RM- MEH, 2016 WL 660133, at *2 (D. Colo. Feb. 18, 2016).

### B. <u>The Court Should Appoint Movant as Lead Plaintiff</u>

#### 1.  The Procedure Required by the PSLRA

Once the Court decides the issue of consolidation, the PSLRA mandates that the

Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a). *See Friedman v. Quest Energy Ptnrs. LP,* 261 F.R.D. 607, 609 (W.D. Okla. 2009).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)    has either filed the complaint or made a motion in response to a notice;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

7

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

### a. Movant Is Willing to Serve as Class Representative

On September 1, 2020, plaintiff in the *Subramanian* Action filed a notice (the "Notice") published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Ultra and which advised putative class members that they had 60 days to file a motion to seek appointment as a lead plaintiff in the action.[4] Movant has reviewed a complaint filed in the pending Actions and has timely filed its motion pursuant to the Notice.

### b. Movant has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Berens Decl., Ex. B. The movant with the largest financial interest who also meets the requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff. *See Friedman,* 261 F.R.D. at 609-610.

Under the PSLRA, damages are calculated based on: (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was

---

[4] On September 1, 2020, the Notice was published over *Business Wire,* a widely circulated national business-oriented wire service. *See* Berens Decl. Exhibit C.

disseminated, or (ii) the difference between the purchase price paid for the shares and

the average trading price of the shares between the date when the misstatement was

corrected and the date on which the plaintiff sold his shares, if he sold his shares before

the end of the 90-day period. 15 U.S.C. §78u-4(e).

During the Class Period, members of the Ultra Petroleum Investor Group

purchased Ultra securities in reliance upon the materially false and misleading statements

issued by Defendants and were injured thereby. Movant suffered a substantial collective

loss of $2,808,871.05. *See* Berens Decl., Ex. B. Movant thus has a significant financial

interest in the outcome of this case. To the best of its knowledge, there is no other

applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger

financial interest and also satisfies Rule 23.

### 2. Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest

financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise

satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a)

provides that a party may serve as a class representative if the following four

requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

With respect to the qualifications of a lead plaintiff, Rule 23(a) requires generally

that representatives' claims be typical of those of the class, and that representatives will

9

fairly and adequately protect the interests of the class. *See Cooke v. Equal Energy Ltd.*, 14-cv-0087-C, 2014 WL 3819159, at \*2-3 (W.D. Okla. May 8, 2014); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v. Lumenis, Ltd.,* No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at \*5-6 (S.D.N.Y June 18, 2003); *Weltz v. Lee,* 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion as lead plaintiff); *see also In re Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999). *See generally* Fed. R. Civ. P. 23(a)(3)-(4). Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *Cooke*, 2014 WL 3819159, at \*2. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See id.*; *Weltz,* 199 F.R.D. at 133.

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

### a. Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (i) it suffered the same injuries as the absent class members; (ii) it suffered as a result of the same course of conduct by defendants; and (iii) its claims are based on the same legal issues. *See Cooke,* 2014 WL 3819159, at \*2; *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims

10

and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).[5]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Members of the Ultra Petroleum Investor Group, like the other members of the Class, acquired Ultra securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby. Thus, its claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Cooke,* 2014 U.S. Dist. LEXIS 63452, at *7-8; *Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b. Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the movant's interests are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *see Drexel*

---

[5] Additionally, although not pertinent to the instant motion, a finding of typicality frequently supports a finding of commonality and *vice versa. See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

*Burnham,* 960 F.2d at 291; *Weltz,* 199 F.R.D. at 133.

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses it suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. *See Clovis Oncology*, 2016 WL 660133, at *3-4 (adequacy satisfied where movant lacks conflicts with remainder of the class and possesses largest financial interest).

Moreover, the Ultra Petroleum Investor Group has submitted a Joint Declaration, attesting to, *inter alia*, their education history, occupation, and investment experience, as well as to their understanding of the strength of this case, the responsibilities and duties of serving as a lead plaintiff, their shared desire to obtain the best result for the Class, and the steps that they will take to supervise this litigation. *See* Berens Decl., Ex. D.

Finally, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v). Therefore, the Ultra Petroleum Investor Group will prosecute the Consolidated Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is,

12

therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. §78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Consolidated Action.

### C. Movant's Choice of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain Co-Lead Counsel, subject to Court approval. 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky and BES as the proposed Co-Lead Counsel for the Class and Berens Law LLC as Liaison Counsel. The members of Levi & Korsinsky and BES have extensive experience in successfully prosecuting complex securities class actions such as the Consolidated Action before the Court and are well-qualified to represent the Class. *See* Berens Decl., Exs. E and F (the firm résumés of Levi & Korsinsky and BES).

### IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff for the Class in the Actions; and (3) approve Levi & Korsinsky and BES as Co-Lead Counsel for the Class and Berens Law LLC as Liaison Counsel for the Class.

Dated:  November 2, 2020                     Respectfully submitted,

                                            /s/ *Jeffrey A. Berens*
                                            Jeffrey A. Berens
                                            Berens Law LLC
                                            2373 Central Park Blvd
                                            Suite 100
                                            Denver, CO 80238
                                            Tel.: (303) 861-1764
                                            Email: jeff@jberenslaw.com

13

*Liaison Counsel for Movant and Proposed
Liaison Counsel for the Class*

Shannon L. Hopkins
Levi & Korsinsky, LLP
1111 Summer Street, Suite 403
Stamford, CT 0695
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com

Melissa A. Fortunato
Marion Passmore
Bragar Eagel & Squire, P.C.
580 California Street, Suite 1200
San Francisco, California 94104
Telephone:  (415) 568-2124
Facsimile:  (212) 214-0506
Email: fortunato@bespc.com
Email: passmore@bespc.com

*Counsel for Movant and Proposed Co-
Lead Counsel for the Class*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2020, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send notification of such filing to

the e-mail addresses denoted on the Court's Electronic Mail Notice List.

/s/ *Jeffrey A. Berens*
Jeffrey A. Berens
Berens Law LLC
2373 Central Park Blvd
Suite 100
Denver, CO 80238
Tel.: (303) 861-1764
Email: jeff@jberenslaw.com

15