**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

  v.

MICHAEL D. WATFORD,
GARLAND R. SHAW, C.
BRADLEY JOHNSON, DAVID W.
HONEYFIELD and JERALD J.
STRATTON, JR.,

     Defendants.

---

Civil Action No. 1:20-cv-02820-KLM

ANDREW BUSSOM, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

  v.

MICHAEL D. WATFORD,
GARLAND R. SHAW, C.
BRADLEY JOHNSON, DAVID W.
HONEYFIELD and JERALD J.
STRATTON, JR.,

     Defendants.

---

**THE ULTRA PETROLEUM INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

---

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ......................................................................................... 1

II. ARGUMENT .............................................................................................................. 4

    A. The Ultra Petroleum Group is the Most Adequate Lead Plaintiff ............................ 4

        1.  The Ultra Petroleum Investor Group Has the Largest Financial Loss ........... 4

        2.  The Ultra Petroleum Investor Group Has Demonstrated that It is a Cohesive Unit ................................................................................................ 6

        3.  The Ultra Petroleum Investor Group Satisfies the Requirements of Rule 23 ............................................................................................................. 10

    B. No Proof Exists to Rebut the Presumption in Favor of the Ultra Petroleum Investor Group's Appointment as Lead Plaintiff. ..................................................... 11

    C. The Ultra Petroleum Investor Group's Selection of Counsel Should Be Approved. .............................................................................................................. 14

III. CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.,*
   C.A. No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) ....... 11

*In Re Altisource Portfolio Solutions, S.A. Securities Litigation*,
   14-cv-81156 (WPD) (S.D. Fla.) .................................................................................... 14

*Brady v. Top Ships Inc.,*
   324 F. Supp. 3d 335 (E.D.N.Y. 2018) ......................................................................... 10

*In re Cavanaugh,*
   306 F.3d 726 (9th Cir. 2002) ...................................................................................... 12

*Cooke v. Equal Energy Ltd.,*
   2014 U.S. Dist. LEXIS 63452 (W.D. Okla. May 8, 2014) ............................................ 12

*In re Crocs, Inc. Sec. Litig.,*
   C.A. No 07-cv-2351-REB-KLM, 2008 U.S. Dist. LEXIS 87524 (D. Colo. Sept. 17,
   2008).................................................................................................................. 10, 12

*Cullinan v. Cemtrex, Inc.,*
   287 F. Supp. 3d 277 (E.D.N.Y. 2018) ............................................................... 9, 11, 13

*In re Helios and Matheson Analytics, Inc. Sec. Litig.,*
   C.A. No. 1:18-cv-6965-JGK (S.D.N.Y. 2018) ............................................................. 11

*In re IPO Sec. Litig.*
   227 F.R.D. 65 (S.D.N.Y. 2004) ................................................................................... 14

*Lax v. First Merchants Acceptance Corp.,*
   C.A. No. 97-cv-2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997) ............... 5

*In re Level 3 Commc'ns, Inc. Sec. Litig.,*
   C.A. No. 09-cv-00200, 2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009) .............. 6

*Mariconda v. Farmland Partners,*
   C.A. No. 18-cv-021040DME-NYW, 2018 U.S. Dist. LEXIS 204411 (D. Colo. Dec. 3,
   2018).................................................................................................................... 1, 5

*Medina v. Clovis Oncology, Inc.,*
   C.A. No. 15-cv-2546-RM- MEH, 2016 U.S. Dist. LEXIS 19784, at *9, 11 (D. Colo.
   Feb. 18, 2016)............................................................................................................ 13

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.,*
    C.A. No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10,
    2014) ........................................................................................................................ 7

*Mishkin v. Zynex, Inc.,*
    C.A. No. 09-cv-00780-REB-KLM, 2010 U.S. Dist. LEXIS 25445 (D. Colo. Mar. 3,
    2010) ........................................................................................................................ 7

*In re Molson Coors Brewing Co. Sec. Litig.*
    C.A. No. 19-cv-00455-DME-MEH, 2019 U.S. Dist. LEXIS 233315 (D. Colo. Oct. 3,
    2019) ................................................................................................................. 1, 4, 5

*In re MolyCorp, Inc. Sec. Litig.,*
    C.A. No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191 (D. Colo. May 29,
    2012) ........................................................................................................ 6, 7, 9, 12

*Nauman v. Array Biopharma Inc. et al.,*
    C.A. No. 1:17-cv-2848 (D. Colo. 2017) ....................................................... 11

*Reitan v. China Mobile Games & Entm't Grp., Ltd,*
    68 F. Supp. 3d 390 (S.D.N.Y. 2014) ............................................................ 14

*In re Sequans Communs. S.A. Sec. Litig.,*
    289 F. Supp. 3d 416 (E.D.N.Y. 2018) ........................................................... 10

*In re SLM Corp. Sec. Litig.,*
    2012 U.S. Dist. LEXIS 8158 (S.D.N.Y. Jan. 24, 2012) ................................. 14

*In re Spectranetics Corp. Sec. Litig.,*
    C.A. No. 08-cv-02048-REB-KLM, 2009 U.S. Dist. LEXIS 54809 (D. Colo. June 15,
    2009) ........................................................................................................................ 7

*Telke v. New Frontier Media, Inc. et al.,*
    C.A. No. 1:12-cv-2941 (D. Colo. 2012) ...................................................... 11

*Wolfe v. Aspenbio Pharma, Inc.,*
    275 F.R.D. 625 (D. Colo. 2011) ............................................................... 4, 12

*In re Williams Sec., Litig.,*
    C.A. No. 02-CV-72-H(M), 2002 U.S. Dist. LEXIS 29738 (N.D. Okla. July 8, 2002) ...... 14

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................ passim

 **Rules**

Fed. R. Civ. P. 23 ....................................................................................... passim

Movants Scott Heiner, Bala Settu, Geoffrey Polychronis, Mahdi Riyad Issa, and Yoav Givon (collectively, the "Ultra Petroleum Investor Group" or "Movant"), respectfully submit this memorandum of law in opposition to the competing motions for consolidation of the above-captioned actions (the "Actions"), appointment as Lead Plaintiff, and approval of selection of counsel.

## I.     PRELIMINARY STATEMENT

Presently before the Court are six[1] competing motions for consolidation of two putative securities class actions, appointment as Lead Plaintiff, and approval of selection of Lead Counsel. As demonstrated in its opening motion, the Ultra Petroleum Investor Group should be appointed Lead Plaintiff pursuant to the provisions of the Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. § 78u-4(a)(3)(B) (the "PSLRA"), because it has the largest financial interest of any movant, almost **four times more** than the closest competing movant, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). ECF No. 26, at 8-11. *See In re Molson Coors Brewing Co. Sec. Litig.* C.A. No. 19-cv-00455-DME-MEH, 2019 U.S. Dist. LEXIS 233315, at *7-8 (D. Colo. Oct. 3, 2019); *Mariconda v. Farmland Partners,* C.A. No. 18-cv-021040DME-NYW, 2018 U.S. Dist. LEXIS 204411, at *10 (D. Colo. Dec. 3, 2018).

As demonstrated in the chart below, the Ultra Petroleum Investor Group has the largest financial interest under all of the four factors recognized by Courts in this District when determining which movant has the largest financial interest in the litigation:

---

[1] One other movant, the Ultra Investor Group, previously sought lead plaintiff appointment in the Actions but withdrew its motion on November 11, 2020. ECF Nos. 20, 31.

| Movant | Loss Suffered | No. of Shares Purchased | Net Funds Expended | No. of Shares Retained |
|---|---|---|---|---|
| **Ultra Petroleum Investor Group** | **$2,808,871.05** | **2,560,594** | **$3,240,040.39** | **2,080,694** |
| - Scott Heiner | $1,269,587.47 | 690,000 | $1,412,571.90 | 690,000 |
| - Bala Settu | $612,134.57 | 648,000 | $746,415.60 | 648,000 |
| - Geoffrey Polychronis | $336,423.67 | 479,900 | $336,423.67 | 0 |
| - Mahdi Riyad Issa | $315,967.81 | 452,094 | $409,652.45 | 452,094 |
| - Yoav Givon | $274,757.53 | 290,600 | $334,976.77 | 290,600 |
| Michael Altman | $705,022.40 | 1,062,200 | $904,341.00 | 1,062,200 |
| Sankar Karuppasamy | $321,806.62 | 423,802 | $380,716.75 | 282,416 |
| Dennis and Margaret Anne Slaight | $291,990.73 | 89,700 | ($50,817.14) | - 1,593 |
| Guomin Mao | $104,301.46 | 123,150 | $130,094.00 | 123,150 |
| Harold Weber | $54,505.50 | 176,500 | $90,102.40 | 174,000.00 |

*See* ECF Nos. 17-4 (Altman Loss Chart); 19-3 (Weber Loss Chart); 22-3 (Karuppasamy Loss Chart); 23-3 (Slaight Loss Chart); 25-2 (Mao Loss Chart); and 30-2 (Ultra Petroleum Investor Group Amended Loss Chart).   Moreover, as demonstrated in the chart above, Mr. Heiner, a member of the Ultra Petroleum Investor Group, ***suffered the largest individual loss*** of any remaining individual movant under each of the four factors.

Furthermore, the Ultra Petroleum Investor Group is more than adequate to represent the Class in the Actions. The Ultra Petroleum Investor Group consists of just five sophisticated investors who are motivated to recover the losses they and the Class suffered, and have agreed to work as a small, cohesive group. *See* ECF. No. 27-4 ("Joint Declaration"). These group members consist of current and former professionals from

2

various industries and sectors, including engineering, sales, information technology, real estate,  and public office; one of the group's members, Scott Heiner, was recently elected to the Wyoming House of Representatives. The PSLRA expressly permits a "person or **group of persons**" to serve as lead plaintiff so long as that group possesses the largest financial interest and satisfies Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); see also *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff.").

By way of moving together, the Ultra Petroleum Investor Group not only has agreed to jointly prosecute the Actions, it also ensures the efficient oversight of the Actions by sophisticated parties through the sharing of resources, and provides the class with additional benefits, such as a diversity of views and opinions, and protection from various arguments to be made by Defendants. *See In re MolyCorp, Inc. Sec. Litig.,* C.A. No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191, at *6-8 (D. Colo. May 29, 2012) (discussing the "significant public policy advantages to appointing a small, cohesive group of investors as lead plaintiff, as opposed [to] appointing [a] single [class member]"). The group members' respective backgrounds provides assurance that the class will receive excellent representation throughout the litigation.

Not only does the Ultra Petroleum Investor Group meet the typicality and adequacy requirements as a unit, each individual member of the group satisfies the requirements of Rule 23 and would be qualified to be both a lead plaintiff and class representative. Accordingly, because the Ultra Petroleum Investor Group has the largest financial interest

in this litigation and satisfies the typicality and adequacy requirements of Rule 23, the Ultra Petroleum Investor Group should be appointed lead plaintiff, its chosen counsel should be appointed lead counsel, and the competing motions be denied.

## II.   ARGUMENT

### A.  <u>The Ultra Petroleum Group is the Most Adequate Lead Plaintiff</u>

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the Class and otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant with the largest financial interest need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23. *In re Molson Coors*, 2019 U.S. Dist. LEXIS 233315, at *10 ("At this stage in the litigation, the presumptive plaintiff need only make a 'preliminary showing' that it meets Rule 23's typicality and adequacy requirements."). This presumption may be rebutted only upon ***proof*** by a class member that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Wolfe v. Aspenbio Pharma, Inc.,* 275 F.R.D. 625, 628 (D. Colo. 2011). Here, the Ultra Petroleum Investor Group is presumptively the most adequate plaintiff.

### 1.  **The Ultra Petroleum Investor Group Has the Largest Financial Loss**

The PSLRA provides a presumption that the "most adequate plaintiff" to serve as lead plaintiff is the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Courts within this District recognize that "there appears to be a clear weight of authority favoring the four-factor *Lax* test…and when applying this test, courts typically use the "last in, first out" ("LIFO") or "first in, first out"

4

("FIFO") method to calculate losses on the sale of securities, although the former is greatly preferred." *Mariconda*, 2018 U.S. Dist. LEXIS 204411 at *10; *see also In re Molson Coors*, 2019 U.S. Dist. LEXIS 233315, at *7. The four *Lax* factors are (1) the total number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered, with the fourth factor, the approximate loss suffered, being the most significant. *Mariconda*, 2018 U.S. Dist. LEXIS 204411 at *10; *see also Lax v. First Merchants Acceptance Corp.,* C.A. No. 97-cv-2715, 1997 U.S. Dist. LEXIS 12432, at *18 (N.D. Ill. Aug. 11, 1997).

Based on the losses represented in the respective moving papers, it is clear that the Ultra Petroleum Investor Group has the "largest financial interest" across all *Lax* factors. The following table illustrates the Ultra Petroleum Investor Group's financial interest relative to the other movants:

| Movant | Loss Suffered | No. of Shares Purchased | Net Funds Expended | No. of Shares Retained |
|---|---|---|---|---|
| **Ultra Petroleum Investor Group** | **$2,808,871.05** | **2,560,594** | **$3,240,040.39** | **2,080,694** |
| - Scott Heiner | $1,269,587.47 | 690,000 | $1,412,571.90 | 690,000 |
| - Bala Settu | $612,134.57 | 648,000 | $746,415.60 | 648,000 |
| - Geoffrey Polychronis | $336,423.67 | 479,900 | $336,423.67 | 0 |
| - Mahdi Riyad Issa | $315,967.81 | 452,094 | $409,652.45 | 452,094 |
| - Yoav Givon | $274,757.53 | 290,600 | $334,976.77 | 290,600 |
| Michael Altman | $705,022.40 | 1,062,200 | $904,341.00 | 1,062,200 |
| Sankar Karuppasamy | $321,806.62 | 423,802 | $380,716.75 | 282,416 |
| Dennis and Margaret Anne Slaight | $291,990.73 | 89,700 | ($50,817.14) | - 1,593 |
| Guomin Mao | $104,301.46 | 123,150 | $130,094.00 | 123,150 |
| Harold Weber | $54,505.50 | 176,500 | $90,102.40 | 174,000.00 |

5

*See* ECF Nos. 17-4 (Altman Loss Chart); 19-3 (Weber Loss Chart); 22-3 (Karuppasamy Loss Chart); 23-3 (Slaight Loss Chart); 25-2 (Mao Loss Chart); and 30-2 (Ultra Petroleum Investor Group Amended Loss Chart).   The Ultra Petroleum Investor Group has suffered the largest loss during the Class Period and indeed, its losses exceed those of the closest movant by almost ***four times.***

Moreover, Mr. Heiner, a member of the Ultra Petroleum Investor Group, suffered the largest individual loss out of any remaining movant. Compared to the next largest movant, Mr. Altman, Mr. Heiner has the largest loss in three out of the four *Lax* factors, including the most important factor, approximate losses suffered, with almost ***double*** the loss.   Further, Mr. Heiner suffered the largest loss under any *Lax* factor for all other movants, including Mr. Karuppasamy, the movant with the next largest loss after Mr. Altman, having suffered approximately a ***four times*** greater loss.

Consequently, the Ultra Petroleum Investor Group is entitled to the presumption of the "most adequate plaintiff" because, relative to the other movants, it has the largest financial interest.

### 2.   The Ultra Petroleum Investor Group Has Demonstrated that It is a Cohesive Unit.

Courts in this District allow groups of investors that have demonstrated that they are cohesive and can effectively lead the securities class action to serve as lead plaintiff. *See, e.g. In re MolyCorp, Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 89191, at *6-8 (collecting cases*); In re Level 3 Commc'ns, Inc. Sec. Litig.,* C.A. No. 09-cv-00200, 2009 U.S. Dist. LEXIS 44706, at *10 (D. Colo. May 4, 2009) (The PSLRA "explicitly contemplates that a 'member or members of the purported plaintiff class,' including a 'group of persons,' may be appointed lead plaintiff."); *Mishkin v. Zynex, Inc.,* C.A. No. 09-cv-00780-REB-KLM,

6

2010 U.S. Dist. LEXIS 25445, at *8-9 (D. Colo. Mar. 3, 2010); *In re Spectranetics Corp. Sec. Litig.,* C.A. No. 08-cv-02048-REB-KLM, 2009 U.S. Dist. LEXIS 54809, at *16-17 (D. Colo. June 15, 2009). To demonstrate their cohesiveness, individuals seeking appointment as a group generally provide a joint declaration evidencing their pre-motion efforts to coordinate with one another and formulate a strategy to effectively prosecute the case. For example, in *In re MolyCorp.,* 2012 U.S. Dist. LEXIS 89191, at *8, a group was appointed lead plaintiff that submitted joint declarations that "sufficiently establish the Group's cohesiveness. The Joint Declaration provides details about how the Group will function, how potential disputes will be resolved, how the group will communicate with each other and counsel, and protocols implemented by the Group to ensure proper oversight of counsel." Similarly, in *Miami Police Relief & Pension Fund v. Fusion-io, Inc.,* C.A. No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141, at *20-21 (N.D. Cal. June 10, 2014) members of a group each submitted declarations "professing the readiness and willingness to serve as a representative party on behalf of the class." The declarations also described how the group "will work cooperatively together to direct and supervise the activities of counsel to best vindicate the interests of all shareholders and to vigorously prosecute the case." *Id.* In addition, the group members described how "they have been in contact to discuss how information will be shared and how the litigation will be managed on a day-to-day basis." *Id.* The Court appointed the group as lead plaintiff noting that "Courts have found that such joint declarations are demonstrative of a movant group's adequacy as lead plaintiff." *See also In re Spectranetics Corp.*, 2009 U.S. Dist. LEXIS 54809, at *15 ("certifications and declarations submitted by the members . . . demonstrate that the [group] . . . can and will work together to actively oversee the litigation and to

monitor the work of counsel").

As outlined in the Ultra Petroleum Investor Group's Joint Declaration, the Ultra Petroleum Investor Group's members have been in communication and have established procedures for the efficient and effective prosecution of this action. The Ultra Petroleum Investor Group Joint Declaration outlines how Movant's members will work collaboratively to prosecute the Actions in the best interests of the Class and describes the procedures the Group has put in place to facilitate decision-making and supervise counsel. As a result, the Ultra Petroleum Investor Group has provided evidence: (i) regarding how their group was formed and their communications prior to the lead plaintiff filings; (ii) of their cohesiveness; (iii) that they have a plan to cooperate to effectively manage the litigation; (iv) regarding their backgrounds or sophistication; and (v) regarding whether they chose their counsel. Joint Decl., ECF No. 27-4. Accordingly, the Ultra Petroleum Investor Group is the type of cohesive group that the PSLRA and this Court has envisioned.

The Ultra Petroleum Investor Group consists of just five sophisticated investors who decided to retain Levi & Korsinsky, LLP ("Levi & Korsinsky") and Bragar Eagel & Squire, P.C. ("BES") as co-lead counsel, and who are motivated to recover the losses they and the class suffered. Joint Decl. ¶ 11. In support of its motion, the Group submitted its Joint Declaration that established the Group is made up of: (1) a former Operations manager and engineer; (2) two self-employed business owners; (3) an engineer; and (4) a sales executive. *Id.* at ¶¶ 3-7.   Mr. Heiner is a retired operations manager, holds a bachelor's degree in engineering, and has been investing for 35 years. *Id.* at ¶ 3. He was also recently elected to public office representing District 18 for the Wyoming House of Representatives. Mr. Settu is a self-employed business owner, holds a bachelor's degree

8

in computer science, and has been investing for eight years. *Id.* at ¶ 4.Mr. Polychronis is a sales executive, has a bachelor's of science from Cornell, and has been investing for 40 years. *Id.* at ¶ 5. Mr. Issa is an engineer, holds a master's degree in electrical engineering and has been investing for 10 years. *Id.* at ¶ 6 Mr. Givon is a self-employed business owner with a master's degree in business administration, and has been investing for five years. *Id.* at ¶ 7. Collectively, the members of the Group each hold college degrees, with two masters, and boast a combined 98 years' worth of investing experience. *Id.* at ¶¶ 3-7. Further, each group member purchased Ultra Petroleum securities during the Class Period and suffered substantial losses. *Id.* As evidenced above, and in its initial motion, any member of the Ultra Petroleum Investor Group is suitable to serve as a lead plaintiff and class representative.

Beyond their sophistication and ability to serve as lead plaintiff, the Joint Declaration also details the Group members' communication thus far and plans for coordination in the future including: (1) the decision to join together and serve as lead plaintiff as a group; (2) the discussion of, and agreement on, attorney fees; (3) a strategy for prosecuting the action; (4) the importance of joint-decision making and remaining in communication to discuss and make timely decisions; (5) a tie-breaking mechanism and a failsafe procedure in the event a majority vote cannot be reached; and (6) the overall driving directive that the litigation be conducted in a cost-effective manner to obtain "the largest recovery possible for the Class." Joint Decl. at ¶¶11-21. *See In re MolyCorp.,* 2012 U.S. Dist. LEXIS 89191, at *8; *Cullinan v. Cemtrex, Inc.,* 287 F. Supp. 3d 277, 286 (E.D.N.Y. 2018) (appointing a group as lead plaintiff where filings indicate the "group members' plans for cooperation and involvement in the litigation."); *Brady v. Top Ships*

*Inc.,* 324 F. Supp. 3d 335, 346 (E.D.N.Y. 2018) (relying on joint declaration detailing "plans for cooperation and coordination" to find proposed group "is not the type of lawyer-driven group that other courts have cautioned against approving."); *In re Sequans Communs. S.A. Sec. Litig.,* 289 F. Supp. 3d 416, 424 (E.D.N.Y. 2018) (submission of joint declaration with moving papers "provides sufficient assurances that the [] investors are capable of working together if chosen as Lead Plaintiffs.").

### 3.  The Ultra Petroleum Investor Group Satisfies the Requirements of Rule 23

The PSLRA requires that the presumptive lead plaintiff to "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Courts in this District have applied this directive at the lead plaintiff stage by analyzing the typicality and adequacy requirements of Rule 23. *In re Crocs, Inc. Sec. Litig.,* No 07-cv-2351-REB-KLM, 2008 U.S. Dist. LEXIS 87524, at *7-8 (D. Colo. Sept. 17, 2008) ("Typicality is present so long as the claim of the class representative and class members are based upon the same legal or remedial theory"…."The requirement of adequacy is satisfied on proof of (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.") (internal citations omitted).

There can be no dispute that the Ultra Petroleum Investor Group satisfies the typicality requirements. Like all members of the Class, the Ultra Petroleum Investor Group (1) purchased Ultra Petroleum securities during the Class Period; (2) at prices artificially inflated by the false and misleading statements and/or omissions by Defendants; and (3) suffered heavy losses as a result of Defendants' material misstatements. Collectively, the Group purchased 2,560,594 shares of Ultra Petroleum, of which 2,080,694 were retained

at the end of the Class Period, spent $3,240,040.39 on the shares, and lost $2,808,871.05. Thus, the Ultra Petroleum Investor Group's claims are substantially similar, if not identical, to those of absent Class members. *See* ECF Nos. 27-1 (PSLRA Certifications); 30-1 (Amended PSLRA Certifications).

The Ultra Petroleum Investor Group also satisfies the adequacy requirements  as it has no conflicts with absent Class members and is highly motivated to recover its losses suffered from Defendants' alleged violations of the federal securities laws – the same injury incurred by the proposed Class, arising from the same alleged conduct. Ultra Petroleum Investor Group's adequacy is further bolstered by its choice of counsel, having chosen Levi & Korsinsky and BES as proposed Co-Lead Counsel for the Class and Berens Law LLC ("Berens") as Liaison Counsel. Levi & Korsinsky, BES, and Berens, have successfully worked together in other securities matters, are highly experienced in securities class actions and are well qualified to litigate the Actions on behalf of the Class and their appointments should also be approved. *See Cemtrex*, 287 F. Supp. 3d 277 (Levi & Korsinsky appointed Lead Counsel with BES added as additional counsel); *In re Helios and Matheson Analytics, Inc. Sec. Litig.,* C.A. No. 1:18-cv-6965-JGK (S.D.N.Y. 2018) (same); *Abouzied v. Applied Optoelectronics, Inc.,* C.A. No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018) (same); *Nauman v. Array Biopharma Inc. et al.,* C.A. No. 1:17-cv-2848 (D. Colo. 2017) (Levi & Korsinsky appointed as Lead Counsel with Berens appointed as Liaison Counsel); *Telke v. New Frontier Media, Inc. et al.,* C.A. No. 1:12-cv-2941 (D. Colo. 2012) (same).

### B. No Proof Exists to Rebut the Presumption in Favor of the Ultra Petroleum Investor Group's Appointment as Lead Plaintiff.

Having the largest financial interest and satisfying the Rule 23 requirements of

adequacy and typicality, the Ultra Petroleum Investor Group is entitled to the presumption of "most adequate plaintiff." This presumption may be rebutted only upon proof by a class member that Ultra Petroleum Investor Group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *Aspenbio Pharma*, 275 F.R.D. at 628.

The competing lead plaintiff movants can only rebut that presumption with ***actual proof*** that Ultra Petroleum Investor Group is atypical or inadequate. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *In re MolyCorp,* 2012 U.S. Dist. LEXIS 89191 at *5-6 ("Th[e] presumption can be rebutted with proof that the movant is either atypical or inadequate. However, ***speculation*** that a movant may be either atypical or inadequate ***will not defeat*** the PSLRA's most adequate plaintiff presumption.") (citing *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002)).

The other movants cannot meet this burden. The Ultra Petroleum Investor Group plainly meets the typicality requirement of Rule 23 because: (i) it suffered the same injuries as the absent class members; (ii) it suffered as a result of the same course of conduct by defendants; and (iii) its claims are based on the same legal issues. *See Cooke v. Equal Energy Ltd.,* 2014 U.S. Dist. LEXIS 63452, at *7-8 (W.D. Okla. May 8, 2014); *In re Crocs,* 2008 U.S. Dist. LEXIS 87524, at *7 ("Typicality is present so long as the claim of the class representative and class members are based upon the same legal or remedial theory"). Further, the  Ultra Petroleum Group is adequate because its interests are clearly aligned with those of the other members of the Class, there no evidence of antagonism between its interests and those of the Class, and the Group has a significant and

compelling interest in prosecuting the Actions based on the large financial losses it suffered as a result of the wrongful conduct alleged in the Actions. *See Medina v. Clovis Oncology, Inc.,* C.A. No. 15-cv-2546-RM- MEH, 2016 U.S. Dist. LEXIS 19784, at *9, 11 (D. Colo. Feb. 18, 2016) (adequacy satisfied where movant group lacks conflicts with remainder of the class and possesses largest financial interest). The Ultra Petroleum Investor Group has made the necessary preliminary showing of adequacy and typicality and are therefore the "most adequate plaintiff" pursuant to the PSLRA.

The fact that one of the members of the Ultra Petroleum Investor Group, Bala Settu, initially appeared to file with another law firm is of no matter. This does not constitute actual "proof" of atypicality or inadequacy. As set forth in the Declaration of Bala Settu in Support of the Ultra Petroleum Investor Group's Motion for Appointment as Lead Plaintiff ("Settu Decl.") (ECF. No. 30-3), filed on November 10, 2020, Mr. Settu retained Portnoy Law Firm ("Portnoy") on or about October 27, 2020 under the mistaken belief that he was joining a different lawsuit than the one at issue in this motion in order to increase his chances of recouping his losses, and was referred to Pomerantz, LLP ("Pomerantz"). Settu Decl. ¶ 6. Upon learning that the two lawsuits were the same, Mr. Settu promptly sought to withdraw as a client of the Portnoy and Pomerantz firms and, thus, from the Ultra Investor Group. *Id.* at ¶ 7. On November 11, 2020, the Ultra Investor Group withdrew its motion for lead plaintiff (the "Withdrawal"). ECF No. 31. This is not uncommon and, in any event, does not disqualify the Ultra Petroleum Investor Group from serving as lead plaintiff. *See, e.g.*, *Cemtrex,* 287 F. Supp. 3d at 282 n. 9 (Court appointed a group of movants as lead plaintiff when one group member filed two lead plaintiff motions); *Reitan v. China Mobile Games & Entm't Grp., Ltd,* 68 F. Supp. 3d 390, 400

(S.D.N.Y. 2014) (rejecting argument that potentially duplicative lead plaintiff motions filed by entity rendered the entity inadequate or atypical to file lead plaintiff motions); *See also In Re Altisource Portfolio Solutions, S.A. Securities Litigation*, 14-cv-81156 (WPD) (S.D. Fla.) (appointing as lead plaintiff a pension fund represented by Robbins Geller Rudman & Dowd LLP, counsel for Sankar Karuppasamy, that filed two competing motions for lead plaintiff status using two separate firms on the same day, but which later corrected its mistake).

Similarly, Mr. Givon's errata correcting the dates of three transactions also does not provide "proof" of inadequacy or atypicality. *See* ECF No. 30. The corrections do not affect or change Mr. Givon's reported losses. The errata was provided well in advance of oppositions on the motions for lead plaintiff to allow for competing movants time to review and consider the information. A typographical or clerical error of this sort does not rebut the presumption currently in favor of the Ultra Petroleum Investor Group. *See, e.g., In re Williams Sec., Litig.,* C.A. No. 02-CV-72-H(M), 2002 U.S. Dist. LEXIS 29738, at *33, n. 8 (N.D. Okla. July 8, 2002) ("The Court finds that the corrected errors in Mr. Meruelo's certification and loss calculation do not provide a sufficient basis for denying his motion to be appointed lead plaintiff."); *In re SLM Corp. Sec. Litig.,* 2012 U.S. Dist. LEXIS 8158, at *24 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.") (citing *In re IPO Sec. Litig.* 227 F.R.D. 65, 98 (S.D.N.Y. 2004)).

### C. <u>The Ultra Petroleum Investor Group's Selection of Counsel Should Be Approved.</u>

The Court should approve Ultra Petroleum Investor Group's selection of Levi & Korsinsky and BES as Co-Lead Counsel, and Berens as Liaison Counsel, for the putative

Class. The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to approval by the Court. 15 U.S.C. §78u-4(a)(3)(B)(v). The attorneys at Levi & Korsinsky, BES, and Berens are highly experienced in class action securities litigation and will prosecute the Actions effectively and expeditiously. See ECF Nos.27-5, 27-6, 27-7, Exs. E, F, and G (firm resumes). Thus, the Ultra Petroleum Investor Group's chosen counsel are eminently qualified and are prepared to devote the necessary time and resources to these Actions for the benefit of the Ultra Petroleum Investor Group and the absent Class members.

## III.    CONCLUSION

For the foregoing reasons, of the Ultra Petroleum Investor Group respectfully requests that the Court grant its motion: (1) consolidating the Actions; (2) appointing it as Lead Plaintiff for the Class in the Actions; (3) approve Levi & Korsinsky and BES as Co-Lead Counsel for the Class and Berens Law LLC as Liaison Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  November 23, 2020                Respectfully submitted,

/s/ Jeffrey A. Berens
Jeffrey A. Berens
Berens Law LLC
2373 Central Park Blvd
Suite 100
Denver, CO 80238
Tel.: (303) 861-1764
Email: jeff@jberenslaw.com

Liaison Counsel for Ultra Petroleum Investor Group and Proposed Liaison Counsel for the Class

Shannon L. Hopkins
Levi & Korsinsky, LLP

15

1111 Summer Street, Suite 403
Stamford, CT 0695
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com

Melissa A. Fortunato
Marion Passmore
Bragar Eagel & Squire, P.C.
580 California Street, Suite 1200
San Francisco, California 94104
Telephone:  (415) 568-2124
Facsimile:  (212) 214-0506
Email: fortunato@bespc.com
Email: passmore@bespc.com

*Counsel for the Ultra Petroleum Investor Group and Proposed Co-Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

/s/ *Jeffrey A. Berens*
Jeffrey A. Berens
Berens Law LLC
2373 Central Park Blvd
Suite 100
Denver, CO 80238
Tel.: (303) 861-1764
Email: jeff@jberenslaw.com