# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

MICHAEL D. WATFORD, GARLAND R. SHAW, C. BRADLEY JOHNSON, DAVID W. HONEYFIELD and JERALD J. STRATTON, JR.,

Defendants.

_____

Civil Action No. 1:20-cv-02820-KLM

ANDREW BUSSOM, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

MICHAEL D. WATFORD, GARLAND R. SHAW, C. BRADLEY JOHNSON, DAVID W. HONEYFIELD and JERALD J. STRATTON, JR.,

Defendants.

_____

## MEMORANDUM OF LAW IN OPPOSITION TO
## COMPETING LEAD PLAINTIFF MOTIONS

_____

Michael Altman ("Mr. Altman") respectfully submits Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel.

Remaining are four competing motions for appointment as lead plaintiff and

1

approval of lead plaintiff's selection of counsel[1]. Only one movant, the so-called Ultra Petroleum Investor Group (the "Group")[2], claims a larger loss than Mr. Altman. But the Group is an improper lawyer-made group of five unrelated individual investors from Texas, Wyoming, Arkansas, and Israel represented by three law firms.[3] While courts have allowed unrelated investors to aggregate their losses to seek lead plaintiff status, "[a] court . . . should be careful to not allow '[a]ggregation solely for the purpose of creating a group that would have the 'largest financial interest in the relief sought by the class' [as that] would seem to contravene the PSLRA's purpose of shifting control of the litigation from the lawyers to the investors.'" *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 682 (D. Utah 2004) (quoting *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586 (N.D.Cal.1999)).

As demonstrated below, the Court should not appoint the Group as it was created by counsel to amass the largest financial interest. Additionally, the Group's Joint Declaration in Support of the Motion of the Ultra Petroleum Investor Group for Appointment as Lead Plaintiff, Consolidation of Related Actions, and Approval of Selection of Counsel (the "Joint Declaration"), (Dkt. No. 27-4), submitted to evidence its cohesion and non-lawyer driven reason to group, raises more questions than it

---

[1] On November 6, 2020, Harold Weber filed a notice of non-opposition to the competing movants. (Dkt. No. 28.) On November 9, 2020, Guomin Mao filed a notice of non-opposition to the competing movants. (Dkt. No. 29.) On November 11, 2020, the Ultra Investor Group of Paul Lauritano, Terrance W. Michael, and Bala Settu filed a notice of withdrawal of their motion for consolidation of related actions, appointment as lead plaintiff, and approval of counsel. (Dkt. No. 31.)

[2] The Group consists of Scott Heiner, Bala Settu, Geoffery Polychronis, Mahdi Riyad Issa, and Yoav Givon.

[3] Levi & Kosinsky, LLP and Bragar Eagel & Squire, P.C. as proposed co-lead counsel and Berens Law LLC as liaison counsel.

answers.

Courts do not hesitate to reject unrelated groups that fail to adequately demonstrate their adequacy. *See e.g.*, *Jakobsen v. Aphria Inc.*, No 2019 WL 1533598, at * 3 (S.D.N.Y. Mar. 27, 2019) (rejecting group that failed to show pre-existing relationship, barely allege any involvement in the litigation thus far, had vague and conclusory plans for cooperation, and were silent on whether they were formed as a group independent of counsel); *Kniffin v. Micron Technology, Inc.*, 359 F.Supp.3d 262, 2019 WL 2119613, at * 2 (S.D.N.Y. April 30, 2019); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018).

In contrast to the Group, Mr. Altman has lost over $705,000.[4] Mr. Altman is also a sophisticated businessperson and investor. Mr. Altman is a CPA and earned a bachelor's degree and a Master of Business Management. Dkt. No. 16. Prior to his retirement Mr. Altman was a licensed advisor with a Fortune 500 company. *Id*. In short, Mr. Altman should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

## **ARGUMENT**

## **1. THE GROUP IS AN IMPROPER LAWYER-MADE GROUP OF UNRELATED INVESTORS**

Courts consider whether unrelated groups of investors are appropriate lead plaintiffs "on a case-by-case basis." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 345

---

[4] Mr. Altman pursues claims in this litigation in connection with his own Ultra securities transactions and the Ultra securities transactions of his wife, Kayreen Altman, for whom he made all investment decisions. Kayreen Altman has duly assigned to Mr. Altman the right to pursue such claims. *See* Dkt. No. 17-3.

(E.D.N.Y. 2018).    Courts require unrelated members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin*, 359 F.Supp.3d at 262. Courts evaluate evidence of:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*See Id*.; *Brady*, 324 F.Supp.3d at 345; *Varghese v. China Shenghuo Pharm. Holdings, Inc*., 589 F. Supp. 2d 388, 391 (S.D.N.Y. 2008).

"[C]ourts in this District have cautioned, as have many courts throughout the country, that groups comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the Reform Act." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 WL 10684924, at *3 (D. Colo. Sept. 17, 2008) (citing cases).

Courts reject unrelated groups that are lawyer-driven or unable to "function cohesively and effectively manage the litigation apart from their lawyers." *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,* 2015 WL 7018024 at *2 (S.D.N.Y. Nov. 12, 2015); *Elstein v. Net1 UEPS Techs., Inc*., 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014); *Khunt v. Alibaba Grp. Holding Ltd.,* 102 F.Supp.3d  523, 532 (S.D.N.Y. 2015) ("Many courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, 'To

allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.'") (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

### A. Group's Joint Declaration is Insufficient; Demonstrates that the Group is Lawyer Driven

The Group's Joint Declaration (Dkt. No. 27-4) fails to demonstrate that it is a proper group for a number of reasons. <u>First</u>, the Joint Declaration is conclusory. While the Group asserts that its members spoke with each other prior to the lead plaintiff motion being filed, "what is conspicuously absent [. . .] is any information regarding how these [. . .] apparent strangers [. . .] found each other." *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817 at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" whose members "span[] the country's geography."); *Jakobsen* 2019 WL 1522598, at *2 (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently.); *Kniffin*, 379 F. Supp. 3d at 263 (court not persuaded by a declaration that the group would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation." (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would

encourage the lawyers to drive the litigation").

Second, facts relating to Group member Mr. Settu further call into the question the veracity of the Joint Declaration.  Mr. Settu moved with two separate groups at the same time. *See* Dkt. Nos. 20 and 26. Mr. Settu signed, under penalty of perjury, the Group's Joint Declaration and another moving group's joint declaration. Dkt. Nos. 21-4 and 27-4.  Mr. Settu purports to "consider myself to be a sophisticated investor." Dkt. No. 27-4 ¶ 4. Mr. Settu certified that "I have reviewed a complaint filed in the action(s)." Dkt. No. 30-1 at 5. However, as evidenced below, Mr. Settu – and the Group generally – could not have adequately communicated with each other and counsel while Mr. Settu moved with two groups.

The Joint Declaration even described the above-captioned actions as "Related Actions" and further as "nearly identical in this District on behalf of the same Class, asserting claims against the same defendants[.]" Dkt. No. 27-4 ¶ 10. The Joint Declaration also affirmed that counsel and the Group members "discuss[ed] the allegations against Ultra Petroleum," and "***the procedural background of the Related Actions***[.]" Dkt. No. 27-4 ¶ 11 (emphasis added). The Joint Declaration further affirmed that during their call on October 30, 2020, the Group members and counsel "discussed among other things: the allegations and the strength of the claims against defendants;" and "***a strategy for prosecuting the Related Actions***[.]" Dkt. No. 27-4 ¶ 12 (emphasis added). In the Joint Declaration, Mr. Settu also affirmed that he, with the other Group members, would "actively manage the prosecution of the Related Actions". Dkt. No. 27-4 ¶ 15.

6

Yet at the same time Mr. Settu moved with another group of investors and signed another joint declaration (Dkt. No. 21-4), again under penalty of perjury. In this other joint declaration, Mr. Settu affirmed that, with his other counsel, "We have discussed this case with our counsel. Accordingly, each of us is aware of the current status of this litigation. We understand that in addition to ourselves, other investors in Ultra securities may file motions seeking appointment as Lead Plaintiff in this action." No. 27-4 ¶ 5. Mr. Settu signed the Joint Declaration and this other joint declaration on the same day – the day that both were filed – November 2, 2020. Dkt. Nos. 21-4 and 27-4.

In response to Mr. Settu's conflicting sworn submissions to the Court, on November 10, 2020, the Group filed a Notice of Errata and an additional declaration. Dkt. Nos. 30 and 30-3. This declaration, in contradiction to the joint declarations signed by Mr. Settu—a "sophisticated investor"—who had purportedly held multiple discussions with counsel, provided that Mr. Settu "mistakenly believed that Portnoy was investigating a different lawsuit than the one I had retained Levi & Korsinsky for because there were two separate complaints filed against Ultra with two different case captions."[5] Dkt. No. 30-3. This explanation makes no sense and demonstrates that Mr. Settu had no understanding of what he was signing and likely neither did any of the other members of the Group.

Then on November 11, 2020, Mr. Settu's other group, the so-called Ultra Investor Group, withdrew their motion for consolidation of related actions, appointment

---

[5] Importantly, the Joint Declaration itself, signed by Mr. Settu, included the two case captions. *See* Dkt. No. 27-4.

as lead plaintiff, and approval of counsel. Dkt. No. 31.

*Tsirekidze v. Syntax-Brillian Corp.* is on point.  2008 WL 942273, at \*4 (D. Ariz. Apr. 7, 2008). In *Tshierkdze*, an individual moved with two groups at the same time—like Mr. Settu.  Due to this "error" the Court commented that "[s]uch a blatant gaffe does not bode well for the adequacy of his group to lead this litigation." *Id*. Further, the Court found that "[t]he group's lack of cohesion is clearly evidenced by the fact, mentioned above, that its initial motion included Robert McCullough, Jr. as a member, even though he had retained separate counsel and was soon filing competing motions of his own." *Id* at 5.

Third, the Group's member, Mr. Givon also filed a false sworn certification, and an incorrect loss chart with the Court. *See* Dkt. Nos. 27-1 and 27-2.  Mr. Givon corrected his submission over a week later with above mentioned Notice of Errata and attachments on November 10, 2020. Dkt. Nos. 30, 30-1, and 30-2.  Mr. Givon's errors in his sworn certification and loss calculations further demonstrate that the Group is not cohesive and was haphazardly created by counsel.

Lastly, the Court should not permit the Group members to be considered individually as the Group did not request that any of its constituents be appointed as lead plaintiff individually in the event the Court did not appoint the Group. Therefore, none of the individuals themselves "made a motion" pursuant to the PSLRA and should not be considered further. *See Level 3 Commc'ns, Inc.*, 2009 WL 10684924, at \*5 (D. Colo. May 4, 2009); *Tsirekidze*, 2008 WL 942273, at \*4; *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (denying a group's motion when

group members have not explicitly requested to be considered individually); *Abouzied v. Applied Optoelectronics, Inc*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (group members did not move for appointment as sole-lead, "the Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group."); *Jakobsen*, 2019 WL 1522598, at *4 (court will not consider whether individual group members could be appointed as lead plaintiff as there were no separate motions to appoint any member of the group as a lead plaintiff on an individual basis); *Takata*, 2018 WL 5801379 at *5 (declining to break apart a group of lead plaintiff movants because the group belatedly requested such cure "when confronted with [the] argument that a loosely connected group cannot effectively monitor counsel" which did "not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated [the] efforts.").

In sum, the Group is an improper unrelated group of investors, and should be rejected by the Court.[6]

### 2. MR. ALTMAN SHOULD BE APPOINTED LEAD PLAINTIFF

Mr. Altman, with losses of approximately $705,022.40, is the presumptive Lead Plaintiff as he has the remaining largest financial interest and satisfies the typicality and adequacy requirements of Rule 23. Mr. Altman should be appointed Lead Plaintiff and his selection of Lead Counsel should be approved.

---

[6] The Group's member Mr. Heiner appears to be a member-elect to the Wyoming House of Representatives. Due to the energy- and public land-heavy nature of his District, the State, and his campaign, Mr. Heiner would subject the class to unique pressures and defenses. Exacerbating this issue, Ultra Petroleum's primary assets are located in southwest Wyoming – the same area as Mr. Heiner's District.

To overcome the strong presumption entitling Mr. Altman to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the powerful presumption in favor of Mr. Altman. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive Lead Plaintiff, here Mr. Altman, will not adequately represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re SemGroup Energy Partners, L.P., Sec. Litig.*, 2008 WL 4826318, at *9 (N.D. Okla. Oct 27, 2008).

Moreover, although the Court may compare putative lead plaintiff's losses when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison as to adequacy or typicality. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

As Mr. Altman has made a prima facie demonstration of his typicality and adequacy, has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Altman must be appointed Lead Plaintiff.

### 3. MR. ALTMAN'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. See 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Altman has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 17-5. Thus, the Court may be assured that by approving Mr. Altman's selection of counsel, the members of the class will receive excellent legal representation.

## 4. COMPETING MOTIONS SHOULD BE DENIED

The competing motions should be denied as Mr. Altman satisfies the requirements of Rule 23, has the greatest remaining financial interest in the litigation, and should therefore be appointed Lead Plaintiff without further analyses. *Cavanaugh,* 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

The remaining competing movants, after the Group and Mr. Altman, all hold substantially smaller financial interests: Sankar Karuppasamy with $321,806; and the Slaights $291,990. *See* Dkt. Nos. 22-3 and 23-3.

In no way is Mr. Altman conceding or acknowledging that the competing movants are adequate or that their claims are typical. Mr. Altman reserves the right to address the competing movant's adequacy or typicality, should the Court reach those motions.

11

## CONCLUSION

For the foregoing reasons, Mr. Altman respectfully requests the Court issue an

Order: (1) consolidating the related actions; (2) appointing Mr. Altman as Lead Plaintiff

of the Class; (3) approving the Mr. Altman's selection of Rosen Law as Lead Counsel;

and (4) granting such other relief as the Court may deem to be just and proper.

Dated:  November 23, 2020              Respectfully submitted,


                                       */s/ Phillip Kim*
                                       Phillip Kim
                                       The Rosen Law Firm, P.A.
                                       275 Madison Avenue, 40th Floor
                                       New York, NY 10016
                                       Telephone: (212) 686-1060
                                       Fax: (212) 202-3827
                                       Email: pkim@rosenlegal.com

                                       *[Proposed] Lead Counsel for Plaintiff and
                                       Class*

## CERTIFICATE OF SERVICE

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am an attorney at The Rosen Law Firm, P.A., with offices at 275 Madison Ave, 40th Floor, New York, NY 10016. I am over the age of eighteen.

On November 23, 2020, I electronically filed the following **MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on November 23, 2020.


*/s/Phillip Kim*
Phillip Kim