# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on Behalf of All Others Similarly Situated,

  Plaintiff,

v.

MICHAEL D. WATFORD, et al.,

  Defendants.

---

Civil Action No. 1:20-cv-02820-KLM

ANDREW BUSSOM, Individually and on Behalf of All Others Similarly Situated,

  Plaintiff,

v.

MICHAEL D. WATFORD, et al.,

  Defendants.

---

**PROPOSED LEAD PLAINTIFF SANKAR KARUPPASAMY'S OPPOSITION TO
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF (ECF NOS. 15,
18, 20, 23, 24, 26)**

---

4844-5707-7202.v1

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ..................................................................................................... 3

    A.   The Settu 2 Group Should Not Be Appointed Lead Plaintiff ....................... 3

        1.   The Settu 2 Group Is Transparently Lawyer-Driven ....................... 3

        2.   The Court Should Deny the Settu 2 Group's Motion In Its
Entirety ................................................................................................ 8

    B.   Mr. Altman Fails to Meet Rule 23's Requirements ................................... 10

        1.   Mr. Altman Fails to Make the Required *Prima Facie* Showing
of Adequacy ..................................................................................... 10

        2.   Mr. Altman Is An Atypical Plaintiff ................................................... 11

    C.   Mr. Karuppasamy Should Be Appointed Lead Plaintiff ............................ 14

    D.   The Remaining Movants Who Suffered Smaller Losses Than Mr.
Karuppasamy Cannot Be Appointed .......................................................... 15

III. CONCLUSION.................................................................................................. 15

4844-5707-7202.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abouzied v. Applied Optoelectronics, Inc.*,
2018 WL 539362 (S.D. Tex. Jan. 22, 2018).......................................................... 3, 9

*Apple v. LJ Int'l Inc.*,
2008 WL 11343371 (C.D. Cal. Feb. 8, 2008)............................................................ 9

*Arciaga v. Barrett Bus. Servs., Inc.*,
2015 WL 791768 (W.D. Wash. Feb. 25, 2015) ........................................................ 3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)..................................................................................... 11

*Baydale v. Am. Express Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) ......................................................... 14

*Beck v. Status Game Corp.*,
1995 WL 422067 (S.D.N.Y. July 14, 1995) ....................................................... 12, 13

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009) ............................................................................. 9

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
__ U.S. __, 137 S. Ct. 2042 (2017).......................................................................... 14

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ........................................................... 10

*China Agritech, Inc. v. Resh*,
__ U.S. __, 138 S. Ct. 1800 (2018).......................................................................... 14

*City of Philadelphia v. Fleming Cos., Inc.*,
264 F.3d 1245 (10th Cir. 2014)................................................................................ 4

*Clair v. DeLuca*,
232 F.R.D. 219 (W.D. Pa. 2005) ............................................................................ 10

*Garbowski v. Tokai Pharm., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018) ....................................................................... 8

*Grace v. Perception Tech. Corp.*,
128 F.R.D. 165 (D. Mass. 1989) ............................................................................ 12

**Page**

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019)......................................................... 10

*In re Atlas Mining Co. Sec. Litig.*,
2008 WL 821756 (D. Idaho Mar. 25, 2008)............................................................ 4

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005) .............................................................. 11

*In re Boeing Co. Aircraft Sec. Litig.*,
2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...................................................... 10, 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).......................................................... 1, 4, 8, 15

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002).............................................................. 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 476 (S.D.N.Y. 2002) ........................................................ 12, 13

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
2009 WL 10684924 (D. Colo. May 4, 2009)...................................................... 3, 8, 9

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
2009 WL 1542723 (D. Colo. May 29, 2009)........................................................... 8

*In re Netflix, Inc., Sec. Litig.*,
2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .................................................... 8, 12

*In re: Omega Healthcare Investors, Inc. Sec. Litig.*,
No. 1:17-cv-08983 (S.D.N.Y. Jan. 30, 2018) ......................................................... 4

*In re Peregrine Sys., Inc. Sec. Litig.*,
2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ...................................................... 12

*In re Spectrum Pharm., Inc.*,
2014 WL 1394162 (D. Nev. Mar. 20, 2014) ............................................................ 3

*In re Stitch Fix, Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019)...................................................................... 3

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
2007 WL 2683636 (D.N.J. Sept. 7, 2007).............................................................. 4

4844-5707-7202.v1

**Page**

*Isaacs v. Musk*,
    2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ........................................................ 9

*Karp v. Diebold Nixdorf, Inc.*,
    2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ..................................................... 2, 10

*Kinney v. Capstone Turbine Corp.*,
    2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ........................................................ 9

*Landry v. Price Waterhouse Chartered Accountants*,
    123 F.R.D. 474 (S.D.N.Y. 1989) ................................................................. 12, 13

*Marcus v. J.C. Penney Co., Inc.*,
    2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ...................................................... 9

*McDermid v. Inovio Pharm., Inc.*,
    467 F. Supp. 3d 270 (E.D. Pa. 2020) .................................................................. 4

*McGuinness v. Parnes*,
    1988 WL 66214 (D.D.C. June 17, 1988) ............................................................. 13

*Meyer v. Paradigm Med. Indus.*,
    225 F.R.D. 678 (D. Utah 2004) ......................................................................... 7

*Micholle v. Ophthotech Corp.*,
    2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...................................................... 3

*Perez v. HEXO Corp.*,
    2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ..................................................... 2, 10

*Piven v. Sykes Enters., Inc.*,
    137 F. Supp. 2d 1295 (M.D. Fla. 2000) .............................................................. 11

*Ross v. Abercrombie & Fitch Co.*,
    2007 WL 895073 (S.D. Ohio Mar. 22, 2007) ...................................................... 9

*Shiring v. Tier Techs., Inc.*,
    244 F.R.D. 307 (E.D. Va. 2007) .................................................................. 12, 13

*Singer v. Nicor, Inc.*,
    2002 WL 31356419 (N.D. Ill. Oct. 17, 2002) ....................................................... 4

*Steginsky v. Xcelera, Inc.*,
    2015 WL 1036985 (D. Conn. Mar. 10, 2015) ...................................................... 11

4844-5707-7202.v1

**Page**

*Takata v. Riot Blockchain, Inc.*,
2018 WL 5801379 (D.N.J. Nov. 6, 2018) ............................................................... 3, 9

*Tan v. NIO Inc.*,
2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) .............................................................. 3

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 WL 942273 (D. Ariz. Apr. 7, 2008) ......................................................... 3, 4, 8, 9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
78j(b)............................................................................................................................ 5
§78t(a) ......................................................................................................................... 5
§78u-4(a)(2)(A)(vi) ....................................................................................................... 6
§78u-4(a)(3)(B)(iii)(I) ................................................................................................... 1

Federal Rules of Civil Procedure
Rule 10b-5 ................................................................................................................... 5
Rule 23 .................................................................................................................*passim*

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ................................... 6

4844-5707-7202.v1

## I.    INTRODUCTION

Four movants continue to pursue their motions seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  The PSLRA provides that the court should "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).    Only Mr. Karuppasamy satisfies both of these requirements.

While two of the remaining movants– the Settu 2 Group and Mr. Altman – claim to have suffered larger losses than Mr. Karuppasamy, both movants suffer from multiple disqualifying deficiencies.  First, although the PSLRA contemplates the appointment of a "group of persons" as lead plaintiff, rather than simply accepting any aggregation of class members claiming to be "cohesive," the court must make a "determination" as to the actual cohesiveness and adequacy of a group seeking appointment as lead plaintiff, and decline to appoint the group if it was "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).[2]  Here, the Settu 2 Group's submissions confirm that it is an amalgamation of five disparate class members brought together by counsel, unable to meet even the most accommodating definition of "cohesive."  The mere fact that one of the group's members,

---

[1]    The original seven lead plaintiff motions were filed by: (1) Sankar Karuppasamy; (2) Paul Lauritano, Aedes, LLC, Terrance W. Michael, and Bala Settu (the "Settu 1 Group"); (3) Scott Heiner, Mahdi Riyad Issa, Geoffrey Polychronis, Yoav Givon, and Bala Settu (the Settu 2 Group"); (4) Michael Altman; (5) Dennis and Margaret Anne Slaight; (6) Guomin Mao; and (7) Harold Weber.  Two movants filed notices of non-opposition to the competing lead plaintiff motions, and Mr. Settu withdrew one of the motions he filed against himself. *See* ECF Nos. 28 (Harold Weber); 29 (Guomin Mao); 31 (the Settu 1 Group).

[2]    Unless otherwise noted herein, all emphasis is added and citations are omitted.

- 1 -

4844-5707-7202.v1

Bala Settu, allowed himself to be appended to motions filed by two different groups and sets of counsel prevents the Settu 2 Group from meeting Rule 23's adequacy requirements. *See infra* §II.A. Mr. Settu's Supplemental Declaration (ECF No. 30-3), attempting to explain his dueling motions, not only fails to cure the Settu 2 Group's significant defects, it actually underscores the lawyer-driven machinations that created the group. *Id.*

While Mr. Altman claims the next largest financial interest, his "failure to provide ***any*** information regarding his experience in his preliminary motion," demonstrates his inability to "meaningfully oversee and control the prosecution of this consolidated class action." *Perez v. HEXO Corp.*, 2020 WL 905753, at \*3 (S.D.N.Y. Feb. 25, 2020) (emphasis in original); *see also Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at \*5 (S.D.N.Y. Oct. 30, 2019) (holding individual movants "need to provide enough information to make a preliminary showing of adequacy under Rule 23"); *see also infra* §II.B.1. Mr. Altman may well have declined to provide any personal information in his application because he was employed as a financial analyst who not only followed Ultra Petroleum Corporation ("Ultra" or the "Company"), but also conferred directly with defendants, rendering him an ***atypical*** class member and preventing his appointment as lead plaintiff. *See infra* §II.B.2. Mr. Altman fails to meet Rule 23's requirements and his motion should be denied. *Id*.

In contrast, Mr. Karuppasamy timely demonstrated through his submissions, including a detailed Declaration along with a sworn Certification, that he is willing and able to serve as lead plaintiff. *See* ECF Nos. 22, 22-1-22-5. Mr. Karuppasamy further underscored his adequacy and commitment to protecting the class in being the only movant to evidence that he proactively opted out of the third-party release in the Company's bankruptcy, precluding defendants from attempting to raise the release as a

- 2 -

defense against him.  *See* Ex. 1 (attached hereto).  Mr. Karuppasamy is the most adequate plaintiff and he should be appointed Lead Plaintiff.

The only remaining movants, Dennis and Margaret Anne Slaight, claim a smaller financial interest than Mr. Karuppasamy, and their motion should be denied.

## II.    ARGUMENT

### A.    The Settu 2 Group Should Not Be Appointed Lead Plaintiff

#### 1.    The Settu 2 Group Is Transparently Lawyer-Driven

While the PSLRA "explicitly contemplates that a 'member or members of the purported plaintiff class,' including a 'group of persons,' may be appointed lead plaintiff," "courts in this District have cautioned, as have many courts throughout the country, that groups comprised of individuals and entities having no pre-litigation relationship or *identifiable cohesiveness* aside from their alleged losses and shared counsel should not be appointed lead plaintiff." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 WL 10684924, at *3 (D. Colo. May 4, 2009). [3]  And, were the court "to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their

---

[3]    *See also Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *4-*6 (D.N.J. Nov. 6, 2018) (denying motion by two groups of individuals with larger losses and appointing single movant as lead plaintiff); *Tan v. NIO Inc.*, 2020 WL 1031489, at *4 & n.5 (E.D.N.Y. Mar. 3, 2020) (denying motion of group where counsel "introduced the members to one another"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) (rejecting group when "[n]othing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application"); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) ( "[b]ased on the evidence . . . it appears that legal counsel for the group cobbled the movants together"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *8-*9 (S.D.N.Y. Mar. 13, 2018) (same); *Arciaga v. Barrett Bus. Servs., Inc.*, 2015 WL 791768, at *3 (W.D. Wash. Feb. 25, 2015) (same); *In re Spectrum Pharm., Inc.*, 2014 WL 1394162, at *3 (D. Nev. Mar. 20, 2014) (same); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

- 3 -

4844-5707-7202.v1

eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner," and "the court should disqualify" such a lawyer-driven group. *Cendant*, 264 F.3d at 266-67.

The Settu 2 Group's obvious ***lack*** of identifiable cohesiveness is evident from the fact that one member, Bala Settu, filed competing lead plaintiff motions with two different groups and counsel. *McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 279 (E.D. Pa. 2020) (declining to appoint movant group where a member filed "dueling motions to be named lead plaintiff"); *Syntax-Brillian*, 2008 WL 942273, at \*4-\*5 (group's "lack of cohesion is ***clearly evidenced***" by  a member "filing competing motions of his own").[4]

Mr. Settu subsequently filed a Supplemental Declaration attempting to explain away the fact that he filed competing motions ***against himself***.  *See* ECF No. 30-3.  But, instead of curing this fatal defect, his new filing contains statements that directly contradict previous statements Mr. Settu made under penalty of perjury, and further highlights the lawyer-driven nature of his motions.  *Compare* ECF No. 30-3 *with City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258-59 (10th Cir. 2014) ("the PSLRA was intended to eliminate . . . the 'manipulation by class action lawyers of the clients they purport to represent'").  For instance, Mr. Settu claims that he signed two Certifications with two different law firms because he "mistakenly believed that Portnoy was investigating a different lawsuit than the one I had retained Levi & Korsinsky for ***because there were two separate complaints***

---

[4]    *See also Singer v. Nicor, Inc.*, 2002 WL 31356419, at \*2 (N.D. Ill. Oct. 17, 2002) (movant's proclaimed "mis-communication" was a "more serious problem" because the movant's "retention of two different law firms and filing of two motions for appointment as lead plaintiff reveal conflicts . . . that make it unsuitable"); *In re Atlas Mining Co. Sec. Litig.*, 2008 WL 821756, at \*5 (D. Idaho Mar. 25, 2008) (rejecting group's lead plaintiff motion where members filed competing motions against themselves); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at \*9 (D.N.J. Sept. 7, 2007) (same); *In re: Omega Healthcare Investors, Inc. Sec. Litig.*, No. 1:17-cv-08983, ECF Nos. 28, 29, 29-2 (S.D.N.Y. Jan. 30, 2018) (same).

- 4 -

*filed against Ultra with two different case captions*," and he claims that he learned that these various counsel were "pursuing the same lawsuit" *after* the motions were filed. ECF No. 30-2 at ¶¶6-7. While perhaps true, this explanation merely highlights Mr. Settu's unfamiliarity with basic aspects of this complex litigation and what is required of a lead plaintiff, not to mention his inability to oversee and direct counsel. More problematically, however, this new declaration directly contradicts Mr. Settu's earlier attestations under penalty of perjury where he claimed to understand that:

> 9.    On September 1, 2020, Eswaran Subramanian filed a putative class action in this District, Case No. 1:20-cv-02652-CMA (the "*Subramanian* Action"), on behalf of all purchasers of Ultra Petroleum common stock during the Class Period. The action seeks relief against Ultra Petroleum and certain of its senior officers for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission.

> 10.    On September 17, 2020, Andrew Bussom commenced **a nearly identical action** in this District on behalf of the same Class, asserting the same claims against the same defendants as the *Subramanian* Action, Case No. 1:20-cv-02820-KLM (**together, the "Related Actions"**).

> 11.    We are like-minded investors who contacted and retained Levi & Korsinsky, LLP ("Levi & Korsinsky") and Bragar Eagel & Squire, P.C. ("BES") **to represent us in the Related Actions** as Co-Lead Counsel. . . .

> \* \* \*

> 17.    . . .We also believe that Levi & Korsinsky and BES will vigorously prosecute the **Related Actions** . . . .

ECF No. 27-4 at 9-17.¶

So, Mr. Settu previously claimed he retained Levi Korsinsky and BES for **both related actions**; yet, **now** Mr. Settu claims he mistakenly believed he was required to retain separate counsel in **each** action. The most logical inference from these competing (and conflicting) accounts is that Mr. Settu simply did not review **either** lead plaintiff motion purportedly filed on his behalf, or the two Joint Declarations he signed, as **both** motions

- 5 -

contain **both** captions for **both** cases and seek to **consolidate** the two actions, and Mr. Settu declared that he was submitting a Joint Declaration "in support of [his] **motion for consolidation of related** actions." ECF Nos. 20, 21-4, 26. Had Mr. Settu reviewed any of these documents, and understood the relief he authorized, let alone the responsibility of a lead plaintiff under the PSLRA, he would not have assumed he needed to participate in both actions with different counsel to "increase [his] chances of recuperating [his] losses." ECF No. 30-3 at ¶6.

In addition, Mr. Settu's stated belief that he signed certifications with multiple law firms to increase his chances at recuperating his losses contradicts his earlier claim that he understood he could have "taken **no action** and remained [an] absent class member[]." *Compare* ECF No. 30-3 at ¶6 *with* ECF No. 27-4 at ¶2. Mr. Settu clearly did not, and apparently still does not, understand that he could have declined to sign up with **either** law firm and still would recover his losses as an absent class member. His confusion may stem from his counsel's website which invites investors to "**See If You Qualify For Monetary Reward**" by filling out the "Ultra Petroleum Corp. **Information Request Form**." Ex. 2 (attached hereto). It would be concerning if Mr. Settu believed his counsel's claim of a "[r]eward" given that his Certification parrots the PSLRA language of providing that he will "not accept any payment for serving as a representative party on behalf of the class" other than the "pro rata share of the recovery," and potential expenses such as lost wages – certainly not a reward. *Compare id. with* ECF No. 30-1 at 5 of 13 *and* ECF No. 27-1 at 4 of 12; *see also* 15 U.S.C. §78u-4(a)(2)(A)(vi); S. Rep. No. 104-98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689 ("The Committee believes that lead plaintiffs are not entitled to a bounty for their service.").

Whatever his *ex post facto* justification may be for these snafus, the PSLRA was enacted in part "to 'empower investors so that they, not their lawyers, control securities

- 6 -

4844-5707-7202.v1

litigation.'" *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 681 (D. Utah 2004). In direct contradiction to Congress's goal in enacting the PSLRA, Mr. Settu's various declarations confirm that his multiple law firms, as opposed to the clients, drove his and thus the entire groups' motions. While Mr. Settu specifically details how he "contacted," "spoke" with, and "decided to retain Levi & Korsinsky," and is still "committed to retaining Levi & Korsinsky as counsel," (ECF No. 30-3 at ¶¶4-5, 8), Mr. Settu is tellingly *silent* regarding his relationship with his proposed co-counsel BES. *See* ECF No. 30-3. The obvious implication being that these two firms brought the group members together, further undermining the Settu 2 Group's purported cohesion.

This conclusion is further bolstered by the Settu 2 Group's Certifications that appear to be from different law firms. Scott Heiner, Bala Settu, Mahdi Riyad Issa, and Yoav Givon each signed Certifications that are identical in format, including an individual sentence regarding their background, yet Geoffrey Polychronis's Certification is in a *completely different* format and contains no similar background information. *Compare* ECF No. 27-1 at 1, 4, 9, and 11 of 12 *with id.* at 6 of 12. The group members further *admit* that it was only "through [] counsel" that they "learn[ed] of each other's interest in seeking appointment of lead plaintiff." *See* ECF No. 27-4 at ¶12.

Finally, although the Settu 1 Group's motion was subsequently withdrawn, the details surrounding Mr. Settu's inclusion in the group further confirm that his groups' motions were lawyer-driven. He admits that his second Certification was signed *not* with Pomerantz, the law firm which eventually filed the Settu 1 Group's motion, but with the Portnoy Law Firm, that then "referred" him to Pomerantz (although the Portnoy Law Firm remains on the papers as his "additional counsel"). *See* ECF Nos. 20, 30-3 at ¶6. And, it appears the other two members of the Settu 1 Group were similarly handed off to Pomerantz from other firms as they both have "additional counsel" on the Settu 1 Group's

- 7 -

4844-5707-7202.v1

motion papers. *Id.* (reflecting Shahmoon Keller PLLC as additional counsel for Paul Lauritano and Bronstein, Gerwirtz & Grossman, LLC as additional counsel for Terrance W. Michael). This shuffling of plaintiffs between and amongst law firms is exactly the sort of lawyer-driven machinations which both prompted the enactment of the PSLRA and resulted here in dueling motions being filed by the same individual. *See Level 3*, 2009 WL 10684924, at \*3 ("'[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation'"). [5] The inability of counsel and the group members to keep proper track of their roster does "not bode well" for their ability to "lead this litigation." *Syntax-Brillian*, 2008 WL 942273, at \*4. In short, the submissions by Mr. Settu's groups provide *prima facie* evidence that both groups were "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," **and** that their members cannot "be counted on to monitor counsel in a sufficient manner." *Cendant*, 264 F.3d at 267. The Settu 2 Group's motion should be denied.

### 2.    The Court Should Deny the Settu 2 Group's Motion In Its Entirety

The Court should decline any *post hoc* invitation by the Settu 2 Group to realign the group or to consider appointing individual group members. *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 WL 1542723, at \*1 (D. Colo. May 29, 2009) (declining to consider appointment of group member individually because "[i]f any one of the Movants desired selection as lead plaintiff individually, that issue could have been raised explicitly in their

---

[5]    *See also, e.g.*, *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 453-55 (D. Mass. 2018) (explaining how lead plaintiff candidate submitted certification on referring law firm's website who then provided the certification to the firm seeking status as lead counsel, and finding such a candidate "would not have been an adequate lead plaintiff"); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at \*4 (N.D. Cal. Apr. 27, 2012) ("all signs point to the Fish Group having been recruited by one law firm, . . . and then transferred for reasons unknown to their present counsel").

4844-5707-7202.v1

original motion").[6]  First, the defects apparent with Mr. Settu's application infect the entire group and provide compelling evidence that its members lack the ability to direct and oversee counsel or properly effectuate the role of lead plaintiff.  Moreover, any indication by counsel and/or the Settu 2 Group members of their "willingness to abandon the group only suggests how loosely it was put together," and would be further confirmation that the group is lawyer-driven and lacks cohesion.  *Syntax-Brillian*, 2008 WL 942273, at *4; *see also Takata*, 2018 WL 5801379, at *5 n.5 ("[t]his belated offer to break apart the group and request Lee as lead plaintiff does not assuage the Court's concerns that the attorneys, and not the plaintiffs, have initiated Lee Movants' efforts").[7]  The Settu 2 Group's motion should be denied in its entirety.

---

[6]    *See also Syntax-Brillian*, 2008 WL 942273, at *4 ("the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff. . . .  We decline to do so.  The [group] moved for lead plaintiff as a group and will be evaluated as such."); *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *3 n.3 (C.D. Cal. Feb. 29, 2016) ("under the plain text of the statute, the Court can only consider the individual that has filed the complaint or made the motion. Here, that entity is the Capstone Investor Group . . . ."); *Level 3*, 2009 WL 10684924, at *5 ("courts confronted by a request to appoint only one individual out of an otherwise inadequate group in order to salvage lead plaintiff status have declined to do so"); *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the [PSLRA] that the Court realign a proposed group to cure a deficiency . . . ."); *Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (individual's "consideration for appointment as lead plaintiff rises and falls with the group"); *Abouzied*, 2018 WL 539362, at *5 ("the Court will not consider the suggestion that it select one member of the group").

[7]    *See Isaacs v. Musk*, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) ("The Court acknowledges TIG's suggestion that the group may be broken apart if the Court has concerns about any specific member.  But that suggests that the group is artificial and should not have been brought in the first place."); *Abouzied*, 2018 WL 539362, at *5 ("courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff"); *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009) ("[T]he Buettgen Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate."); *Apple v. LJ Int'l Inc.,* 2008 WL 11343371, at *4 (C.D. Cal. Feb. 8, 2008) (noting that two individuals within a larger group were "'willing to serve as a lead plaintiff either individually or as part of a group'" but that such "assertions hardly persuade the Court that they, as opposed to counsel, would be directing this litigation" and considering movant with next largest financial interest).

- 9 -

### B.    Mr. Altman Fails to Meet Rule 23's Requirements

#### 1.    Mr. Altman Fails to Make the Required *Prima Facie* Showing of Adequacy

To make a prima *facie* showing of adequacy sufficient to trigger the PSLRA's presumption, "a movant must supply **some** information about its ability to perform the role of lead plaintiff diligently and effectively." *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*5 (N.D. Ill. Nov. 15, 2019) (emphasis in original). Recognizing this basic tenet, "most movants – and **particularly individual investors** – embrace the opportunity to advise the Court about their financial sophistication, experience, and ability to effectively manage and direct the activities of class counsel." *Id.*; *cf.* ECF No. 22-4 (Mr. Karuppasamy's Declaration describing his background, sophistication, and ability to manage this case). Indeed, any "viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process." *Boeing*, 2019 WL 6052399, at \*7 n.10. And, individual movants who **fail** to timely provide "basic details" about themselves with their initial motions necessarily fail to make a *prima facie* showing of adequacy. *See, e.g., Camp v. Qualcomm Inc.*, 2019 WL 277360, at \*3 (S.D. Cal. Jan. 22, 2019) (individual investor's motion denied where he "failed to include any basic details about himself"); *Perez*, 2020 WL 905753, at \*3 (disqualifying movant who failed "to provide **any** information regarding his experience in his preliminary motion") (emphasis in original).[8]

---

[8]    *See also Karp*, 2019 WL 5587148, at \*6 (declining to appoint individual investors who submitted only bare certifications); *Gross v. AT&T Inc.*, 2019 WL 7759222, at \*2 (S.D.N.Y. June 24, 2019) (denying motion where movant "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that the "record contains no evidence that [movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them"); *Clair v. DeLuca*, 232 F.R.D. 219, 226-27 (W.D. Pa. 2005) (recognizing that "[s]imply making

Unlike the movant in *Boeing* who **at least** provided his city of residence (which was insufficient to trigger the presumption), Mr. Altman failed to timely provide **any** information about himself other than submitting his sworn Certification which provides "no information about [his] level of financial sophistication," "no general information about [his] background[], education, employment, or investment experience; no information about [his] litigation experience generally or any basis to gauge [his] ability to control and manage complex class action securities litigation." 2019 WL 6052399, at *5. Here, as in *Boeing*, the "complete dearth of information accompanying [Mr. Altman's] lead plaintiff motion leaves the Court with virtually no basis to assess [his] adequacy to lead and direct litigation potentially involving thousands of claims for tens, or perhaps hundreds, of millions of dollars." *Id.* Mr. Altman does not meet Rule 23's adequacy requirement.

### 2.    Mr. Altman Is An Atypical Plaintiff

A movant cannot meet Rule 23's typicality requirement where he "'is subject to unique defenses which threaten to become the focus of the litigation.'" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000). Significantly, it "is not necessary to 'definitively resolve whether such defenses would succeed on their merits,'" but typicality is defeated "when the court is 'confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff.'" *Steginsky v. Xcelera, Inc.*, 2015 WL 1036985, at *4 (D. Conn. Mar. 10, 2015); *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA, though, provides that we ask simply whether [the movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."). Ultimately, the "point of this requirement

---

a motion for lead plaintiff status, taken alone, establishes nothing about the movant's adequacy to take on this burdensome task," and finding "no evidence that [individual lead plaintiff movants] are the type of sophisticated investor who can control a multi-million dollar class action"); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1304-05 (M.D. Fla. 2000) (denying motion lacking information of plaintiff's "identity, resources, and experience").

- 11 -

4844-5707-7202.v1

is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Netflix*, 2012 WL 1496171, at *5.

An internet search of Mr. Altman reveals that he was a financial analyst (from at least 1997 to 2020) who followed Ultra and participated in conference calls with defendants on at least two occasions in 2019. *See* Exs. 3,4 (attached hereto). In both instances, Mr. Altman was encouraged to "follow up" with the Company offline. *See* Ex. 3 at 15; Ex. 4 at 17. As courts have long held, such atypical access to a company and the individual defendants renders plaintiffs subject to a unique defense, "making them atypical and inadequate class representatives." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002); *see also Beck v. Status Game Corp.*, 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995) ("This defense obviously will be unique to [the plaintiff] because plaintiffs make no claim that each of the 4,000 persons who owned [defendant's] stock met with a member of the [defendant's] Board or had several conversations with a Board member."); *see also Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) (same).[9]

---

[9]     *See also Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007) ("where, as here, plaintiff relies on the fraud-on-the-market doctrine to establish typicality, any reliance on non-market information means that 'he cannot be said to have relied on the integrity of the market, and is atypical of those who have so relied'"); *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *6-*7 (S.D. Cal. Oct. 11, 2002) (finding lead plaintiff movant failed to establish compliance with Rule 23 and that declarations stating group only had public information were "insufficient to demonstrate the absence of issues unique to it which may sidetrack litigation at a later stage" and the "issues [regarding reliance and access to non-public information] loom too large for the court to determine at this preliminary stage that the Remedy Group is able to adequately represent the interests of the remaining class members"); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989) ("It is beyond reality to suggest that any potential shareholder could meet with corporate officers to discuss information that was already available to the public. ***Personal contact with corporate officers and special meetings at the company will render a plaintiff atypical to represent the class***.").

4844-5707-7202.v1

In addition, **after** the Class Period ending disclosure on August 9, 2019 which caused the Company's stock to **plummet 31%**, and **after** the NASDAQ formally delisted the Company's stock, Mr. Altman spoke directly to defendants Johnson, Honeyfield, and Stratton during Ultra's 3rd quarter 2019 earnings call and concluded by thanking defendants and informing them that they were "**doing a great job**." Ex. 4. Now, Mr. Altman asks this Court to appoint him as **sole** lead plaintiff on behalf of the entire class in these related actions which charge these **same** defendants with securities fraud violations.[10] To entrust Mr. Altman with this fiduciary role would unnecessarily prejudice the interests of the entire class.

Whether Mr. Altman actually received material non-public information about the Company, whether his post Class-Period statements thanking defendants for doing a "great job," or whether his apparent failure to opt out of the third-party bankruptcy release would ultimately doom his or the class's claims is irrelevant at this point. It is sufficient that Mr. Altman will "be required to devote considerable time to rebut the claim that [his] purchases were based not on the integrity of the market, but on non-public information that [he] received from [the individual defendants]." *Landry*, 123 F.R.D. at 476 ("The fact that [Mr. Altman] will be subject to such defenses renders [his] claims atypical of other class members."); *Indep. Energy*, 210 F.R.D. at 481 ("Courts have routinely found a disqualifying unique defense where the potential named plaintiff has had a direct or personal relationship with a board member or officer of the issuing company.").[11]

---

[10]   In addition, as discussed further below, Mr. Altman has failed to provide any evidence that he opted out of the third-party bankruptcy release. *See infra* §II.C.

[11]   *See also Beck*, 1995 WL 422067, at *4 (claim that plaintiff "did not receive inside information" irrelevant because "it does not matter whether a unique defense ultimately will prove meritorious" where plaintiff "will 'be required to devote considerable time to rebut' the unique defense"); *Shiring*, 244 F.R.D. at 314 (the "presence of this arguable defense" is enough to "render[] plaintiff's claims atypical"); *McGuinness v. Parnes*, 1988 WL 66214, at

- 13 -

4844-5707-7202.v1

Ensuring that the lead plaintiff (particularly a proposed **sole** lead plaintiff such as Mr. Altman) is not subject to unique defenses or disabling defects is particularly important in the wake of two recent Supreme Court decisions: (i) *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, __ U.S. __, 137 S. Ct. 2042 (2017), which held that the statute of repose applicable to securities cases is not subject to equitable tolling; and (ii) *China Agritech, Inc. v. Resh*, __ U.S. __, 138 S. Ct. 1800 (2018), which held that "*American Pipe* [tolling] does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id*. Mr. Altman's motion must be denied, therefore, because the claims of the **entire** class would be jeopardized by his appointment and later disqualification.

### C.     Mr. Karuppasamy Should Be Appointed Lead Plaintiff

Mr. Karuppasamy possesses the next largest financial interest, is not subject to any unique defenses, and has made a *prima facie* showing of adequacy.  *See* ECF No. 22.  In addition, Mr. Karuppasamy is the only movant before the Court to submit evidence that he timely opted out of the third-party release in Ultra's bankruptcy proceeding.  *See* Ex. 1. While the effectiveness of this release is questionable, it purports to release securities holders' claims against Ultra **and third parties** including "current and former . . . officers" of the Company, **unless** they opted out before "June 11, 2020." *Id*. at 2-3.  The appointment of Mr. Karuppasamy as lead plaintiff, therefore – as opposed to the competing movants who failed to evidence their respective opt outs – offers the class an additional level of protection as his claims are not in jeopardy regardless of: (i) whether the third party release is raised by defendants as a defense to the claims asserted in this action; or (ii) the merits

---

*4 (D.D.C. June 17, 1988) (claim that plaintiff received no non-public information did not prevent finding of atypicality); *Baydale v. Am. Express Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (movant's "status raises complex and novel issues of law" which "diversion would be a needless litigation sideshow" that could "be circumvented . . . by selecting another lead plaintiff").

- 14 -

of such a defense.  If Mr. Karuppasamy is appointed, the Court can rest assured that efforts to enforce the release would not present a prejudicial distraction to the class.

### D.    The Remaining Movants Who Suffered Smaller Losses Than Mr. Karuppasamy Cannot Be Appointed

The remaining movants, Dennis and Margaret Anne Slaight, claim smaller losses ($291,990) than the losses claimed by Mr. Karuppasamy ($321,806).  Consequently, the Court cannot consider their motion unless they first submit proof to rebut the presumption of most adequate plaintiff which lies in favor of Mr. Karuppasamy.  *See Cendant*, 264 F.3d at 268.  Because no rebuttal evidence exists, the Slaight's motion should be denied.  *Id.*

## III.    CONCLUSION

Mr. Karuppasamy is the only movant who possesses the largest financial interest *and* meets Rule 23's requirements, and he respectfully requests that the Court appoint him as Lead Plaintiff and deny the competing motions.

DATED:  November 23, 2020

Respectfully submitted,
ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
TRICIA L. MCCORMICK
MICHAEL ALBERT


s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
triciam@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Counsel

- 15 -

SHUMAN, GLENN & STECKLER
RUSTY E. GLENN
600 17th Street, Suite 2800 South
Denver, Co  80202
Telephone:  303/861-3003
303/536-7849 (fax)
rusty@shumanlawfirm.com

Local Counsel for [Proposed] Lead Plaintiff

PAUL L. ROBINSON, ESQ. LLC
500 Paterson Plank Road
Union City, NJ  07087
Telephone:  201/627-3299
201/627-3301 (fax)
trginternationalllc@gmail.com

Additional Counsel for [Proposed] Lead
Plaintiff

- 16 -

4844-5707-7202.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 23, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: dmyers@rgrdlaw.com

4844-5707-7202.v1

# Mailing Information for a Case 1:20-cv-02652-CMA-STV Subramanian v. Watford et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Allen Berens**
  jeff@jberenslaw.com,jeffreyberens@comcast.net

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com,e_file_sd@rgrdlaw.com

- **Laurence Jesse Hasson**
  lhasson@bernlieb.com,bernstein@bernlieb.com,lsriken@bernlieb.com,mguarnero@bernlieb.com

- **David Christopher Holman**
  david.holman@dgslaw.com,robin.anderson@dgslaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Guomin Mao**
  ingo@rcfllp.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Ivy Tran Ngo**
  ingo@rcfllp.com,clarkin@rcfllp.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)