**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

  v.

MICHAEL D. WATFORD,
GARLAND R. SHAW, C.
BRADLEY JOHNSON, DAVID W.
HONEYFIELD and JERALD J.
STRATTON, JR.,

     Defendants.

---

Civil Action No. 1:20-cv-02820-KLM

ANDREW BUSSOM, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

  v.

MICHAEL D. WATFORD,
GARLAND R. SHAW, C.
BRADLEY JOHNSON, DAVID W.
HONEYFIELD and JERALD J.
STRATTON, JR.,

     Defendants.

---

**THE ULTRA PETROLEUM INVESTOR GROUP'S MEMORANDUM OF LAW IN
REPLY TO THE COMPETING MOTIONS AND IN FURTHER SUPPORT OF ITS
MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

Movants Scott Heiner, Bala Settu, Geoffrey Polychronis, Mahdi Riyad Issa, and Yoav Givon (collectively, the "Ultra Petroleum Investor Group" or the "Group"), respectfully submit this memorandum of law in reply to the competing motions for consolidation of the above-captioned actions (the "Actions"), appointment as Lead Plaintiff, and approval of selection of counsel.

## I.    PRELIMINARY STATEMENT

With losses almost **four times greater** than the nearest competing movant, the Ultra Petroleum Investor Group has clearly demonstrated it has the largest financial interest in overseeing these Actions as lead plaintiff. The Ultra Petroleum Investor Group's financial interest is $2,808,871.05 and the two competing movants, Michael Altman ("Altman"), and Sankar Karuppasamy's ("Karuppasamy"), financial interests are $705,022.40 and $321,806.62, respectively. *See* ECF. No. 33 ("Group Opp.") at 2, 5. This means that the Ultra Petroleum Investor Group is the movant with the "largest financial interest" in the outcome of the litigation.

The Ultra Petroleum Investor Group has also made a *prima facie* showing in satisfaction of the typicality and adequacy requirements of Rule 23. Having satisfied the two-step test courts apply when appointing a lead plaintiff in a federal securities action, the Ultra Petroleum Investor Group is entitled to the statutory presumption of lead plaintiff. *See* 15 U.S.C. § 78u-4(B)(iii)(i). Rather than apply the law and applicable jurisprudence to the facts at bar, the remaining movants who oppose the Ultra Petroleum Investor Group's appointment resort to speculation and disingenuous arguments in an effort to rebut the strong presumption in the Group's favor. This falls far short of the **actual proof** required to rebut the Group's presumptive lead plaintiff status. The Court should disregard these arguments in favor of the Ultra Petroleum Investor Group's appointment.

1

## II.    ARGUMENT

### A. The Competing Movants Fail to Meet the Burden of Providing Proof that the Ultra Petroleum Investor Group Does Not Meet Rule 23 Requirements.

The Ultra Petroleum Investor Group's showing of both the largest loss and satisfaction of Rule 23 entitles it to the presumption of "most adequate plaintiff." This presumption may be rebutted only upon **proof** by a class member that the Ultra Petroleum Investor Group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *Wolfe v. Aspenbio Pharma, Inc.,* 275 F.R.D. 625, 628 (D. Colo. 2011); *Mariconda*, 2018 U.S. Dist. LEXIS 204411, at *14; (same); *In re Molycorp, Inc. Sec. Litig.,* C.A. No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191, at *4-5 (D. Colo. May 29, 2012) (same);  *In re Crocs, Inc.,* C.A. No. 07-cv-02351-REB-KLM, 2008 U.S. Dist. LEXIS 87524, at *7-8 (D. Colo. Sep. 17, 2008).

"[A]ny allegations concerning the representative's adequacy must be relevant to the claims in the litigation." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007). Furthermore, and importantly, a movant's showing of "adequacy" can only be rebutted with "**proof**." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). This is a statutory requirement and, in practice, requires a significant proffer of evidence. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* No. 167-CV-02672 CRB, 2016 WL 5930844, at *5 (N.D. Cal. Oct. 11, 2016) (explaining that the standard for rebutting a presumption in favor of lead plaintiff requires an opposing party to **present evidence, not just argument**, demonstrating how appointing the presumed lead plaintiff "will affect the litigation" to the disadvantage of the class); *see also In re MolyCorp,* 2012 U.S. Dist. LEXIS 89191, at *5-6 ("Th[e] presumption  can be rebutted with proof that the

2

movant is either atypical or inadequate. However, **speculation** that a movant may be either atypical or inadequate **will not defeat** the PSLRA's most adequate plaintiff presumption.") (citing *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002)); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.,* 63 F. Supp. 3d 394, 402, 407 (D. Del. 2014) (the PSLRA requires opposing movants to provide "**actual proof**" to rebut the lead plaintiff presumption, not mere assertions) (citing *In re Cendant Corp. Litig.,* 264 F.3d 201, 269 (3d Cir. 2001)) (emphasis added); *Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("**Speculation and conjecture** from one interested party **is not enough** to prove a nefarious collaboration.") (emphasis added); *Constance Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.").

### 1. Mr. Settu Filing Duplicate Lead Plaintiff Applications Does Not Render Him, Nor the Group, Inadequate.

The competing movants claim that the Ultra Petroleum Investor Group is inadequate because one of the Group members, Bala Settu, filed duplicate lead plaintiff motions. As explained in Mr. Settu's supplemental declaration filed with the Court, well before oppositions were due, Mr. Settu believed that he was filing two separate lead plaintiff motions in two different actions, since there were two complaints on file with different captions. ECF No. 30-3 ("Settu Decl"). Mr. Settu clearly understands the duties and requirements of being a lead plaintiff, so much so, that he decided to move twice, merely believing that two actions equaled two motions, which if anything underscores Mr. Settu's zeal to represent the class.

Counsel for the competing movants argue disingenuously that Mr. Settu's conduct bars him from serving as the lead plaintiff. In fact, **both** the Rosen Law Firm ("Rosen"), counsel for Altman, and Robbins, Geller, Rudman, and Dowd LLP ("RGRD"), counsel for Karuppasamy, have each filed duplicative lead plaintiff motions on behalf of shareholders, and those movants were ***ultimately appointed lead plaintiff.*** *See In Re Altisource Portfolio Solutions, S.A. Securities Litigation,* 14-cv-81156-WPD (S.D. Fla.), ECF No. 24 (appointing as lead plaintiff a pension fund represented by RGRD, that filed two competing motions for lead plaintiff status using two separate firms on the same day, but which later corrected its mistake); *Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523 (S.D.N.Y. 2015) (appointing as lead plaintiff an individual and his company, represented by Rosen, that filed separate, competing motions for lead plaintiff status using two separate firms on the same day, but which later corrected its mistake); *Read v. Amira Nature Foods Ltd.*, No. 15-cv-00957-FMO-PJW (C.D. Cal. May 18, 2015), ECF No. 54 (RGRD moved on behalf of Steamfitters pension fund, but then withdrew motion after discovering that Steamfitters filed with another firm). Contrary to the competing movants' assertions that this is a "fatal defect," both firms are familiar with this error and know that it does not ordinarily bar movants from serving as lead plaintiffs.

The cases competing movants rely on for their attenuated proposition that filing competing lead plaintiff motions evidences an "obvious lack of identifiable cohesiveness" (ECF No. 35 "Karuppasamy Opp." at 4) and "does not bode well for the adequacy of his group" (ECF No. 34 "Altman Opp." at 8) are entirely inapposite, as the cases involve circumstances not present in this litigation. *See Tsirekidze v. Syntax-Brillian Corp.*, C.A. No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008) (denied

4

appointing a movant group due to several reasons, with filing duplicate motions only being one of the reasons); *McDermid v. Inovio Pharm*, C.A. No. 20-cv-01402-GJP, 2020 U.S. Dist. LEXIS 106766, at *15 (E.D. Pa. June 18, 2020) (denying appointment of movant group for filing competing lead plaintiff motions because **no explanation** for the contradictory motions was given and the group **attempted to boot the movant from the group** after the filing). Unlike these cases, Mr. Settu has provided an explanation for his duplicative motions which underscores his commitment to the litigation and assures that unnamed members of the class will receive adequate representation.

### 2. The Ultra Petroleum Investor Group is a Proper Group

Under the PSLRA there is a strong presumption that the "person or **group of persons** that . . . has the largest financial interest in the relief sought by the class" is the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii) (emphasis added). Courts in this District, and around the country have routinely allowed groups of investors that have demonstrated that they are cohesive and can effectively lead the securities class action to serve as lead plaintiff. *See, e.g., In re Molycorp,* 2012 U.S. Dist. LEXIS 89191, at *8; *City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.,* C.A. No. 12-cv-02164-PAB-KLM, 2013 U.S. Dist. LEXIS 54982, at *3 (D. Colo. Apr. 17, 2013). The Ultra Petroleum Investor Group's submission of the Joint Declaration furthers this point and rebuts a "lawyer-driven" argument. *See* ECF. No. 27-4 ("Joint Declaration"). *See also*, *e.g., Brady v. Top Ships, Inc.,* 324 F. Supp. 3d 335, 346 (E.D.N.Y. 2018) (relying on joint declaration detailing "plans for cooperation and coordination" to find proposed group "is not the type of lawyer-driven group that other courts have cautioned against approving"); *Chahal v. Credit Suisse Grp. AG,* No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *17-18 (S.D.N.Y. June 21, 2018) (relying on joint declaration that

5

proves "the group is sufficiently involved to allay any concerns that it will not exercise control over its counsel" and noting that "courts have appointed similar groups as lead plaintiffs upon submission of sworn declarations").

Notwithstanding, the competing movants argue that the Joint Declaration is "conclusory" and should be disregarded by the Court. Altman Opp. at 5. This argument, too, lacks credibility. The fact of the matter is that the declaration specifies (1) each group member's background and sophistication; (2) the decision to join together and serve as lead plaintiff as a group; (3) the discussion of and agreement on attorney fees; (4) the discussion of the alleged claims; (5) a strategy for prosecuting the action; (6) the importance of joint-decision making and remaining in communication to discuss and make timely decisions; (7) failsafe procedures in case of a disagreement, decided by a majority vote; and (8) the overall driving directive that the litigation be conducted in a cost-effective manner to obtain "the largest recovery possible for the Class."[1] *See In re Molycorp,* 2012 U.S. Dist. LEXIS 89191, at \*9 ("The Joint Declaration provides details about how the Group will function, how potential disputes will be resolved, how the group will communicate with each other and counsel, and protocols implemented by the Group to ensure proper oversight of counsel. The Court is therefore satisfied that the Molycorp Shareholder Group can work together to actively oversee the litigation and to monitor the work of counsel.") (internal citations omitted); *In re Spectranetics Corp. Sec. Litig.,* No. 08-cv-02048-REB-KLM, 2009 U.S. Dist. LEXIS 54809, \*16 (D. Colo. June 15, 2009)("I

---

[1] The Ultra Petroleum Investor Group has not requested that the Court disband it in favor of Mr. Heiner, the movant with the largest individual financial loss. This underscores the group's commitment to litigate this case together and, at the same time, moots the arguments raised by the competing movant's on this point. *See* Altman Opp. at 8; Karuppasamy Opp. at 8.

conclude that the certifications and declarations submitted by the members of the SIG demonstrate that the members of the SIG can and will work together to actively oversee the litigation and to monitor the work of counsel. I conclude further that the record demonstrates that the SIG fairly and adequately will protect the interests of the putative class.").

### 3. Typographical Errors Do Not Bar Individuals from Serving as Lead Plaintiffs.

Lastly, Altman's argument that Mr. Givon filed a "false sworn certification, and an incorrect loss chart with the Court" (Altman Opp. at 8) is misleading. As explained in the Group's Opp., "[a] typographical or clerical error of this sort does not rebut the presumption currently in favor of the Ultra Petroleum Investor Group. *See, e.g., In re Williams Sec., Litig.,* C.A. No. 02-CV-72-H(M), 2002 U.S. Dist. LEXIS 29738, at *33, n. 8 (N.D. Okla. July 8, 2002) ("The Court finds that the corrected errors in Mr. Meruelo's certification and loss calculation do not provide a sufficient basis for denying his motion to be appointed lead plaintiff."); *see also In re SLM Corp. Sec. Litig.,* 2012 U.S. Dist. LEXIS 8158, at *24 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.") (citing *In re IPO Sec. Litig.* 227 F.R.D. 65, 98 (S.D.N.Y. 2004)). Group Opp. at 14. The amended certification, filed on November 10, 2020, was signed by Mr. Givon on November 5, 2020, **one day** after the lead plaintiff motion. Further, the typographical error did not harm or prejudice any movant, and Mr. Givon's losses did not change, as the amended certification only corrected three trade dates.

####    4.  Karuppasamy's Bankruptcy Argument Is Legally Misguided, Factually Irrelevant, and Admittedly Does Not Constitute Proof of Inadequacy against Any Member of the Class.

In a last-ditch effort to win the motion, Karuppasamy suggests that his decision to "proactively opt[] out" of Ultra Petroleum's bankruptcy proceedings protects him from attack if and when the class moves for certification. Karuppasamy Opp. at 2, 14-15. His decision to raise this argument flies in direct conflict with the class's overall ability to succeed, as he is effectively raising arguments that would disqualify countless members of the class if accepted. Fortunately for the class, the argument is devoid of legal support and, in fact, contrary to statute. The Court should reject it without hesitation.

The third-party release raised by Karuppasamy does not bar anyone from pursuing the defendants in this action. Indeed, shareholders are entitled to pursue debtors and related parties for judgments, orders, or settlement agreements arising from securities fraud claims pursuant to 11 U.S.C. 523(a)(19). "Congress intended to make § 523(a)(19) applicable to all securities fraud judgments, orders or settlement agreements which arose after the enactment of the Sarbanes-Oxley Act, whether arising before or after the filing of the bankruptcy petition." *In re Weilein*, 328 B.R. 553, 555 (Bankr. N.D. Iowa 2005); *see also In re Gibbons*, 289 B.R. 588, 592 (Bankr. S.D.N.Y. 2003). Notwithstanding, Karuppasamy appears intent on overlooking this statute for no reason other than to advance his own interests above those belonging to the class as a whole.

In any event, the fact that Karuppasamy opted out of the bankruptcy does not amount to "proof" of inadequacy or conflict as to the Ultra Petroleum Investor Group or anyone else for that matter. Karuppasamy admits as much in his opposition, suggesting that the "effectiveness" of the release itself is "questionable." Karuppasamy Opp. at 14. Given its tenuous footing, it cannot serve as a basis to disqualify the Ultra Petroleum

8

Investor Group.

## III.    CONCLUSION

For the foregoing reasons, of the Ultra Petroleum Investor Group respectfully requests that the Court grant its motion: (1) consolidating the Actions; (2) appointing it as Lead Plaintiff for the Class in the Actions; (3) approving Levi & Korsinsky, LLP and Bragar Eagel & Squire, P.C. as Co-Lead Counsel for the Class and Berens Law LLC as Liaison Counsel for the Class; and (4) granting such other relief as the Court may deem just and proper.

Dated:  December 7, 2020                Respectfully submitted,

/s/ *Jeffrey A. Berens*
Jeffrey A. Berens
Berens Law LLC
2373 Central Park Blvd
Suite 100
Denver, CO 80238
Tel.: (303) 861-1764
Email: jeff@jberenslaw.com

*Liaison Counsel for Ultra Petroleum Investor Group and Proposed Liaison Counsel for the Class*

Shannon L. Hopkins
Levi & Korsinsky, LLP
1111 Summer Street, Suite 403
Stamford, CT 0695
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com

Melissa A. Fortunato
Marion Passmore
Bragar Eagel & Squire, P.C.
580 California Street, Suite 1200
San Francisco, California 94104
Telephone:  (415) 568-2124

9

Facsimile:  (212) 214-0506
Email: fortunato@bespc.com
Email: passmore@bespc.com

*Counsel for the Ultra Petroleum Investor
Group and Proposed Co-Lead Counsel
for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send notification of such filing to

the e-mail addresses denoted on the Court's Electronic Mail Notice List.


/s/ *Jeffrey A. Berens*
Jeffrey A. Berens
Berens Law LLC
2373 Central Park Blvd
Suite 100
Denver, CO 80238
Tel.: (303) 861-1764
Email: jeff@jberenslaw.com

11