# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 20-cv-02652-CMA-STV

ESWARAN SUBRAMANIAN, Individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MICHAEL D. WATFORD,
GARLAND R. SHAW,
C. BRADLEY JOHNSON,
DAVID W. HONEYFIELD, and
JERALD J. STRATTON, JR.,

    Defendants.

---

## ORDER ON MOTION TO CONSOLIDATE, TO BE APPOINTED LEAD PLAINTIFF, AND TO HAVE CHOICE OF COUNSEL APPROVED

---

This is a putative securities class action. Plaintiffs are current and former shareholders of Ultra Petroleum Corp. ("Ultra") who acquired shares of Ultra common stock between April 13, 2017 and August 8, 2019 (the "Class Period"). (Doc. # 1, ¶ 1). They allege that Defendants, members of Ultra's board of directors, artificially inflated the price of Ultra common stock during that period by disseminating false and misleading information about the health of the company. (Doc. # 1, ¶¶ 3-10).

Shortly after this lawsuit was filed, a second group of shareholders filed a similar lawsuit arising out of the same set of facts and asserting substantially identical claims.[1]

---

[1] *Bussom v. Watford, et al.*, No. 20-cv-02820-KLM.

1

Several plaintiffs now move to consolidate the actions, to be appointed lead plaintiff, and to have their choice of counsel approved. Specifically, the following motions are now before the Court: "Notice of Motion of Michael Altman to Consolidate the Related Actions, Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel" (Doc. # 15); "Proposed Lead Plaintiff Sankar Kuruppasamy's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel" (Doc. # 22); and "Motion of the Ultra Petroleum Investor Group for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel" (Doc. # 26).[2] For the following reasons, the Court orders that the cases be consolidated and that Ultra Petroleum Investor Group be appointed as lead plaintiff.

## I. **BACKGROUND**

Plaintiff Ultra Petroleum Investor Group ("UPIG") asserts that it suffered the largest loss among the movants, a collective loss of $2,808,871.05. (Doc. # 26 at 9.) UPIG is a group of five class members, comprised of businesspeople and investors. (*Id.* at 12.) Plaintiff Altman asserts that he suffered a loss of $705,022.40. (Doc. # 16 at 2.) Altman is an investor and former licensed advisor to a Fortune 500 company. (*Id.* at 11.) Plaintiff Kuruppasamy claims a loss of $321,806.62. (Doc. # 22-3 at 3.) Kuruppasamy is a business intelligence analyst. (Doc. # 22-4 at 1.)

---

[2] Previously, Plaintiffs Weber, Mao, and Slaight also sought to be appointed lead plaintiff (*see* Docs. ## 18, 23, 24), but subsequently filed notices of non-opposition (Docs. ## 28, 29, 32) that effectively withdrew their original motions. These plaintiffs recognized in their notices that they did not assert the largest financial interest in the relief being sought by the class. Therefore, the Court denies their original motions.

Each motion asserts that the respective movant meets the typicality and adequacy requirements to be appointed lead plaintiff. However, Altman and Kuruppasamy argue that UPIG is an inappropriately lawyer-made group. Further, Kuruppasamy argues that Altman fails the typicality and adequacy requirements. (Doc. # 38 at 4.)

The Court first analyzes whether UPIG, as the plaintiff asserting the largest loss, meets the typicality and adequacy requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Holding that it does, the Court then rejects the claim that UPIG is an inappropriately lawyer-made group. Because the Court finds that UPIG is the most adequate plaintiff, the Court declines to consider the arguments made against Altman.

## II. **DISCUSSION**

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the reviewing court shall not choose the lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u–4(a)(3)(B)(ii). Thereafter, the court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ." *Id.* Accordingly, the Court will first address the question of consolidation, and will then turn to the issue of lead plaintiff.

**A. CONSOLIDATION**

Under Fed.R.Civ.P. 42(a)(2), "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Movants Altman,

Kuruppasamy, and Ultra Petroleum Investor Group ("UPIG") argue (Doc. ## 16 at 6; 22 at 4–5; 26 at 6), and the Court agrees, that the instant action and the *Bussom* action involve common questions of law and fact. Both actions assert the same violations of the Securities Exchange Act of 1934, alleging nearly identical false and misleading statements about Ultra's business, operation, and prospects during the same identified Class Period. Consolidating the actions will enhance fairness and judicial economy. *See Harris v. Illinois–California Exp., Inc.*, 687 F.2d 1361, 1368 (10th Cir. 1982). Accordingly, the actions shall be consolidated.

**B.     APPOINTMENT OF LEAD PLAINTIFF**

    1. Applicable Law

The PSLRA establishes the procedure for appointment of a "lead plaintiff" in a securities class action. § 21D(a)(1), 15 U.S.C. § 78u- 4(a)(1); *see In re Spectranetics Corp. Sec. Litig.*, 2009 WL 1663953, at *1 (D. Colo. June 15, 2009). The plaintiff who files the initial action must publish notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i). Class members then have 60 days to move to serve as lead plaintiff for the class. *Id.* Finally, assuming that these prerequisites are met, the court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." § 21D(a)(3)(B)(i), 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that has the largest financial interest in the

case. § 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Though the statute gives no guidance as to how a plaintiff's financial interest should be calculated, *see In re Spectranetics Corp.*, 2009 WL 1663953, at *2, courts routinely look to the movant's financial loss as the most significant factor. *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *4 (N.D. Ill. Mar., 15, 2005) (unpublished) ("the best yardstick by which to judge 'largest financial interest' is the amount of loss, period"); *see also In re Spectranetics Corp.*, 2009 WL 1663953, at *2 (implicitly acknowledging the primacy of determining total loss).

However, a plaintiff cannot obtain lead-plaintiff status merely by demonstrating the largest financial loss; the plaintiff must also demonstrate that its claims are typical of the members of the class and that it will adequately represent the interests of all class members. *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 658 (D. Colo. 2000). Typicality exists where the claims of the representative plaintiffs "arise out of the same course of conduct and are based on the same theories as those of the absent class members and thus their interests are coextensive with and typical of those of all class members." *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D. Colo. 1998); *see Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975) (typicality exists "so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory"). The adequacy requirement is satisfied on proof of "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified,

experienced and able to vigorously conduct the proposed litigation." *In re Ribozyme*, 192 F.R.D. at 659.

If a plaintiff can establish all three of the above prerequisites – largest financial loss, typicality, and adequacy – the PSLRA creates a presumption that that plaintiff will be the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To rebut this presumption, a competing candidate must demonstrate that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

2. Analysis

The parties apparently agree that UPIG claims the largest financial loss. Therefore, the Court begins its lead-plaintiff analysis by considering whether UPIG satisfies Rule 23's requirements of typicality and adequacy. Movant UPIG asserts, and the Court agrees, that the claims at issue "arise out of the same course of events as those of other Class members" because UPIG purchased or otherwise acquired Ultra common stock during the Class Period at prices alleged to have been artificially inflated because of Defendants' false and misleading statements. Further, the Court agrees that UPIG will fairly and adequately represent the class: the Court is not aware of any potential conflicts between it and other purported class members, and UPIG's counsel appears qualified, experienced, and able to "vigorously conduct the proposed litigation." *In re Ribozyme*, 192 F.R.D. at 659.

Accordingly, because Movant UPIG has satisfied the PSLRA's prerequisites, it is presumptively the most adequate plaintiff. Beside the claims of class member aggregation addressed and disposed of below, no movant or potential class member has asserted that UPIG "will not fairly and adequately protect the interest of the class" or "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u4(a)(3)(B)(iii)(II).

Movants Altman and Kuruppasamy argue, however, that UPIG is an inappropriately lawyer-made group because the group is comprised of five previously unrelated class members. The Court disagrees.

"The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I); § 78u–4(a)(3)(B)(i)). Moreover, the statute contains no requirement that the members of a group be related; it merely requires that the group be able to fairly and adequately protect the interests of the class. *Id.* Indeed, a court in this district, reviewing other district courts' decisions on this issue, found that "the majority of courts confronted with this issue have permitted plaintiffs to aggregate their losses for purposes of the lead plaintiff determination." *In re Ribozyme*, 192 F.R.D. at 659 (quoting *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 350 (S.D.Cal.1998)). Courts have generally found that groups numbering three to five members are appropriate, whereas groups of 20, 90, 250, or more are too large. *Id.* at 659–60. Small, cohesive groups offer public policy advantages over a single individual because groups can share resources, offer a diversity of views, and protect against reliance on one

individual. *See In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-0292-WJM-KMT, 2012 WL 13013602, at *3 (D. Colo. May 29, 2012).

UPIG is an appropriately formed group. It contains only five class members, rather than the dozens or hundreds usually rejected by courts as clearly lawyer manipulated. *See, e.g.*, *In re Advanced Tissue Sciences Secs. Litig.*, 184 F.R.D. 351–53 (S.D.Cal.1998) (rejecting 250-member group, narrowing down to six member group); *Zaltzman v. Manugistics Group, Inc.*, No. S–98–1881, Mem. Op. and Or. at 9–14 (D.Md. Oct. 8, 1998) (rejecting proposed 92-member plaintiff group and picking two with largest losses to serve as lead plaintiffs). The members of UPIG submitted a Joint Declaration detailing their diversity of background, sophistication, and plans evincing cooperation. (Doc. # 27-4.) Such declaration provides evidence that the group can work together to oversee the litigation. *See In re Molycorp*, 2012 WL 13013602 at *3. Most importantly, UPIG suffered the largest loss, by far, of the movants. Against these standards, UPIG is an appropriately formed group.

Thus, the Court hereby finds UPIG to be the most adequate plaintiff and, therefore, appoints it lead plaintiff for the consolidated actions.

**C.     APPOINTMENT OF COUNSEL**

Finally, under 15 U.S.C. § 78u–4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." Movant UPIG has demonstrated that its choice of lead co-lead counsel, Levi & Korsinsky, LLP and Bragar Eagel & Squire, P.C., and liaison counsel, Berens Law LLC, are "qualified, experienced, and able to vigorously conduct the proposed litigation." *In re*

*Ribozyme*, 192 F.R.D. at 659. Therefore, the Court approves its selection of Levi & Korsinsky, LLP and Bragar Eagel & Squire, P.C. as co-lead counsel and Berens Law LLC as liaison counsel.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. The "Motion of the Ultra Petroleum Investor Group for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel" (Doc. # 26) is GRANTED;

   a. The *Bussom v. Watford, et al.*, action (No. 20-cv-02820-KLM), filed September 17, 2020, is CONSOLIDATED with this action;

   b. Ultra Petroleum Investor Group is APPOINTED as lead Plaintiff;

   c. The law firms of Levi & Korsinsky, LLP and Bragar Eagel & Squire, P.C. are APPROVED as co-lead counsel and Berens Law LLC is APPROVED as liaison counsel;

2. Altman's and Kuruppasamy's Motions (Docs. # 15 and 22) are GRANTED to the extent the seek consolidation and DENIED to the extent they seek appointment as lead plaintiff and lead counsel;

3. The motions filed by Plaintiffs Weber, Mao, and Slaight (Docs. ## 18, 23, 24), are GRANTED to the extent the seek consolidation and DENIED to the extent they seek appointment as lead plaintiff and lead counsel;

4. All future filings in these consolidated actions shall be filed in case number 20-cv-2652-CMA-STV using the caption provided below:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 20-cv-02652-CMA-STV (consolidated for all purposes with Civil Action No. 20-cv-02820)

ULTRA PETROLEUM INVESTOR GROUP, Individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MICHAEL D. WATFORD,
GARLAND R. SHAW,
C. BRADLEY JOHNSON,
DAVID W. HONEYFIELD, and
JERALD J. STRATTON, JR.,

    Defendant.

---

DATED: April 29, 2021

                                        BY THE COURT:

                                        _____
                                        CHRISTINE M. ARGUELLO
                                        United States District Judge