**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge Regina M. Rodriguez

Civil Action No. 1:20-cv-02652-RMR-STV
     (Consolidated for all purposes with Civil Action No. 1:20-cv-02820)

ULTRA PETROLEUM INVESTOR GROUP, Individually and on Behalf of All Others
Similarly Situated,

     Plaintiffs,

v.

MICHAEL D. WATFORD,
C. BRADLEY JOHNSON,
ULTRA PETROLEUM, INC.,
FIR TREE CAPITAL MANAGEMENT LP N/K/A FIR TREE PARTNERS INC., and
EVAN LEDERMAN,

     Defendants.

---

**FIR TREE CAPITAL MANAGEMENT'S MOTION TO DISMISS**
**THE AMENDED CLASS ACTION COMPLAINT**

---

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ....................................................................................................... 4

    I.   The Complaint Does Not Plead a Primary Section 10(b) Violation and
        Thus Does Not State a Section 20(a) Claim Against Fir Tree. ..................................... 4

    II.  The Complaint Does Not Purport to Allege that Fir Tree Controlled
        Any Primary Violator On or Before February 28, 2018. ................................................ 5

    III. The Complaint Does Not Allege that Evan Lederman or Fir Tree
        Controlled Any Primary Violator After February 28, 2018. ....................................... 5

    IV. The Complaint Does Not Allege that Fir Tree Controlled Mr. Lederman
        in His Capacity as an Ultra Director. .............................................................. 7

    V.  Plaintiffs' Allegations Show That Fir Tree Acted in Good Faith
        and Did Not Induce Any Alleged Primary Violation. ............................................... 10

CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

Page

**Cases**

*820099 Ontario Inc. v. Harold E. Ballard Ltd.*,
1991 CarswellOnt 142  (Ontario Ct. of Justice 1991) ............................................................... 8

*Andrews v. Primus Telecommunications Group, Inc.*,
107 F. App'x 301 (4th Cir. 2004) ....................................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................... 7

*Atlantic Gypsum Co. v. Lloyds International Corp.*,
753 F. Supp. 505 (S.D.N.Y. 1990)..................................................................................... 11

*Bennett v. Schmidt*,
153 F.3d 516 (7th Cir. 1998) .......................................................................................... 10

*Doe v. School District No. 1, Denver, Colorado.*,
970 F.3d 1300 (10th Cir.) ............................................................................................... 3

*Global Crossing Estate Representative v. Winnick*,
2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) ....................................................................... 8

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) ...................................................................... 11

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)................................................................................. 6

*In re BioScrip, Inc. Securities Litigation*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015).................................................................................. 6

*In re Crocs, Inc. Securities Litigation*,
774 F. Supp. 2d 1122 (D. Colo. 2011)............................................................................... 1

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
308 F. Supp. 2d 249 (S.D.N.Y. 2004)................................................................................ 6

*In re Global Crossing, Ltd. Securities Litigation*,
2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)....................................................................... 9

*In re Kosmos Energy Ltd. Securities Litigation*,
955 F. Supp. 2d 658 (N.D. Tex. 2013) .......................................................................... 8, 10

*In re PLX Technology Inc. Stockholders Litig.*,
2018 WL 5018535 (Del. Ch. Oct. 16, 2018) ...................................................................... 8

*In re Splash Technology Holdings, Inc. Securities Litigation*,
2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) .................................................................... 6

*In re Williams Securities Litigation-WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009) ....................................................................................... 1

*Jones v. Bock*,
  549 U.S. 199 (2007).................................................................................................... 10

*Maher v. Durango Metals, Inc.*,
  144 F.3d 1302 (10th Cir. 1998) ................................................................................... 5

*Mahmood v. Misir*,
  73 O.R. (3d) 566 (Ontario Super. Ct. of Justice 2004) .............................................. 7

*Nardy v. Chipotle Mexican Grill, Inc.*,
  2019 WL 3297467 (D. Colo. Mar. 29, 2019) ............................................................. 4

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ..................................................................................... 11

*Ruiz v. McDonnell*,
  299 F.3d 1173 (10th Cir. 2002) ................................................................................... 7

*Silsby v. Icahn*,
  17 F. Supp.3d 348 (S.D.N.Y. 2014).............................................................................. 9

*Smallen v. Western Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) ............................................................................... 2, 4

*USAirways Group., Inc. v. British Airways PLC*,
  989 F. Supp. 482 (S.D.N.Y. 1997)................................................................................ 9

*VanLandingham v. Grand Junction Regional Airport Authority*,
  46 F. Supp. 3d 1119 (D. Colo. 2014)......................................................................... 10

*Zishka v. American Pad & Paper Co.,*
  2001 WL 1748741 (N.D. Tex. Sept. 28, 2001)............................................................ 6

**Statutes**

15 U.S.C. § 78t.................................................................................................... 1, 5, 10

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 1

Defendant Fir Tree Capital Management LP (f/k/a Fir Tree Inc.) ("Fir Tree")[1] respectfully moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Amended Class Action Complaint, dated July 9, 2021 (ECF No. 47, the "Complaint").  For the reasons shown below, as well as in: (i) Defendants Michael D. Watford and C. Bradley Johnson's Motion to Dismiss; and (ii) Evan Lederman's Motion to Dismiss, both of which Fir Tree adopts in their entirety and incorporates by reference herein, the Complaint does not state a control-person claim under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Fir Tree. Thus, the Court should dismiss the Complaint as to Fir Tree with prejudice under Rule 12(b)(6).

## PRELIMINARY STATEMENT

Ultra Petroleum Corp. was a natural gas exploration company that embarked on a strategy of devoting significant resources to horizontal drilling in Wyoming.  That attempt proved unsuccessful and Ultra's stock price declined.  Plaintiffs, six individual former shareholders of Ultra, filed this securities fraud lawsuit challenging Ultra's drilling strategy.  But "[a]llegations of corporate mismanagement are not actionable under Rule 10b-5."  *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1147 (D. Colo. 2011).  Nor are the securities laws "meant to provide investors with broad insurance against market losses[.]"  *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009).[2]  With Ultra bankrupt and in search of a source of recovery for their failed investments, Plaintiffs named Fir Tree—a former *minority* Ultra shareholder, who appointed a single director to Ultra's board—as a defendant in this lawsuit.  This effort fails for numerous reasons, and the Court should dismiss the control-person claim under Section 20(a) of the Exchange Act against Fir Tree with prejudice:

---

[1] Plaintiffs' designation of Fir Tree as "Fir Tree Capital Management LP, n/k/a Fir Tree Partners Inc.," is incorrect.  ¶ 31.
[2] Unless stated otherwise, all internal quotations and citations are omitted.

*First*, it is axiomatic that a Section 20(a) control-person claim "necessarily fail[s]" where "the complaint does not allege a primary violation of the securities laws[.]" *Smallen v. W. Union Co.*, 950 F.3d 1297, 1315 (10th Cir. 2020).  As shown in Defendants Michael D. Watford and C. Bradley Johnson's Motion to Dismiss, which Fir Tree adopts in its entirety and incorporates by reference herein, the Complaint does not plead a Section 10(b) primary violation claim against either of Messrs. Watford or Johnson.

*Second*, as shown in Evan Lederman's Motion to Dismiss, which Fir Tree adopts in its entirety and incorporates by reference herein, the Complaint does not even purport to plead that Mr. Lederman or Fir Tree controlled any alleged primary violator (*e.g.*, one of Ultra, Mr. Watford, or Mr. Johnson) on or before February 28, 2018, when Mr. Lederman joined the Ultra board.  Thus, the Section 20(a) claim against Fir Tree should be dismissed as to all alleged misrepresentations before that date.

*Third*, as shown in Mr. Lederman's Motion to Dismiss, even as to alleged misrepresentations made by Ultra or its management after February 28, 2018, when Mr. Lederman joined the Ultra board, the Complaint does not plead sufficient facts that Mr. Lederman controlled either the making of those statements or any primary violator more generally.  Crucially, Ultra adopted the horizontal drilling strategy that Plaintiffs now, in hindsight, attack, *before* Mr. Lederman joined the Ultra board.  Nor does the Complaint plead that Fir Tree itself controlled Ultra.  As a matter of law, Fir Tree's ownership of 18.5% of Ultra's stock and its power to appoint a single director to Ultra's board simply does not suffice to establish control under Section 20(a), and Fir Tree is not alleged to have had any control over the alleged misrepresentations.

*Fourth*, even if the Complaint alleged that Mr. Lederman controlled a primary violator after February 28, 2018 (and it does not), it does not plead that Fir Tree controlled Mr. Lederman

2

in his capacity as an Ultra director, and therefore does not plead a Section 20(a) claim against Fir Tree.

*Finally*, Plaintiffs' Section 20(a) claim against Fir Tree should be dismissed in all events, because Plaintiffs' allegations establish that Fir Tree "acted in good faith and did not . . . induce" any primary violation of the securities laws.  15 U.S.C. § 78t(a)

## STATEMENT OF FACTS[3]

Fir Tree is a New York and Florida based private investment firm that invests worldwide in public and private companies across a variety of sectors and securities, real estate, and sovereign debt.  Fir Tree manages assets on behalf of leading endowments, foundations, pension funds, and sovereign wealth funds.  *See generally* ¶ 31.[4]

When Ultra emerged from its prior bankruptcy in April 2017, Fir Tree acquired $440 million in unsecured notes issued by Ultra's holding company, which were then converted into 11.8% of Ultra's shares.  Fir Tree later acquired another 3.8% of Ultra's shares in a rights offering in connection with Ultra's 2017 bankruptcy.  ¶¶ 143-44.  In August 2017, Fir Tree purchased another 2.9% of Ultra's shares, bringing its total holdings to 18.5% of Ultra's common stock. ¶ 145.

In September 2017, Fir Tree announced that it was "excited to engage[] with [Ultra] on a variety of initiative[s] in order to maximize stockholder value."  ¶ 146.  Ultra welcomed the input, and on September 27, 2017, announced "its intention to work collaboratively with Fir Tree Partners . . . to pursue value-maximizing strategies."  ¶ 147.

---

[3] As is required, Fir Tree recounts the well-pleaded facts of the Complaint that it assumes to be true for purposes of this motion only.  *See, e.g.*, *Doe v. Sch. Dist. No. 1, Denver, Col.*, 970 F.3d 1300, 1304 (10th Cir.) (on "motion to dismiss" court must "accept as true all well-pleaded factual allegations in the complaint").

[4] All references to "¶__" are to the Complaint.

In January 2018, Ultra and Fir Tree announced that they had entered into a Cooperation Agreement that allowed Fir Tree to choose a single representative (Mr. Lederman, a Fir Tree partner) for Ultra's seven-member board.  Fir Tree was also allowed to propose three to five candidates for one additional director position, from which Ultra would select one.  ¶ 148.

In the Cooperation Agreement, Fir Tree specifically agreed that it would "refrain from buying more than 25% of Ultra Petroleum's voting securities, soliciting proxies, facilitating any tender or exchange offer, take-over bid, or the like, or seeking any additional board candidates to Ultra's seven-person board[,]" and would not "advis[e], control[], chang[e] or knowingly influenc[e] the Board or management of the Company, including any plans or proposals to change the number or term of directors or to fill any vacancies on the Board (except as provided for in [the Cooperation] Agreement)."  ¶ 149.  As Plaintiffs themselves summarize it, the Cooperation Agreement provided Fir Tree with "influence, *but not control*."  ¶ 150 (emphasis added).

## ARGUMENT

**I.    The Complaint Does Not Plead a Primary Section 10(b) Violation and Thus Does Not State a Section 20(a) Claim Against Fir Tree.**

"To state a prima facie claim under Section 20(a)" of the Exchange Act, "the plaintiff must first establish a violation of the underlying securities law." *Nardy v. Chipotle Mexican Grill, Inc.*, 2019 WL 3297467, at *10 (D. Colo. Mar. 29, 2019).  Thus, "if a court dismisses a complaint's Section 10(b) claim, then the Section 20(a) claim should be dismissed as well." *Id.*  Here, as shown in Defendants Michael D. Watford and C. Bradley Johnson's Motion to Dismiss, the Complaint does not plead a Section 10(b) claim.  Thus, the Section 20(a) claim against Fir Tree must be dismissed. *See, e.g.*, *Smallen*, 950 F.3d at 1315.

II.   **The Complaint Does Not Purport to Allege that Fir Tree Controlled Any Primary Violator On or Before February 28, 2018.**

As shown in Evan Lederman's Motion to Dismiss (at 8-9), the Complaint does not even purport to plead that Mr. Lederman or Fir Tree controlled any alleged primary violator (*i.e.*, Ultra, Mr. Watford, or Mr. Johnson) on or before February 28, 2018.  Section 20(a) liability requires that the defendant "control[] a[] person liable" under the securities laws.  15 U.S.C. § 78t(a).  Because the Complaint contains no allegations whatsoever that Fir Tree exercised such control on or before February 28, 2018, the Section 20(a) claim against Fir Tree should be dismissed as to all alleged misrepresentations on or before that date.

III.   **The Complaint Does Not Allege that Evan Lederman or Fir Tree Controlled Any Primary Violator After February 28, 2018.**

As shown in Mr. Lederman's Motion to Dismiss (at 9-13), even as to alleged misrepresentations after February 28, 2018—when he joined the Ultra board—the Complaint does not plead sufficient non-conclusory facts that Mr. Lederman exercised control over any primary violator for the limited period of time between February 28, 2018, and May 10, 2018.  Thus, even if the Complaint had pled that Fir Tree controlled Mr. Lederman in his capacity as an Ultra director (and it does not, as shown below), the Section 20(a) claim must be dismissed against Fir Tree to the extent that claim is premised on Mr. Lederman's status as a control person.

As to Fir Tree itself, the Complaint does not contain any well-pleaded allegations that Fir Tree controlled any primary violator.  The Complaint does not allege that Fir Tree controlled either Mr. Watford or Mr. Johnson.  Nor does the Complaint allege facts that would establish that Fir Tree controlled Ultra.  The power to appoint a representative to a board of directors—even in addition to owning about 20% of a company's stock—does not suffice, as a matter of law, to plead control under Section 20(a).  *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305-06 (10th Cir. 1998) (minority stake in company and right to appoint board member insufficient to establish

5

control, even where defendant had "the option to acquire [a] controlling interest" in company); *see also Andrews v. Primus Telecomm. Grp., Inc.*, 107 F. App'x 301, 306 (4th Cir. 2004) ("a 20 percent share hardly amounts to control of the . . . company"); *In re Alstom SA*, 406 F. Supp. 2d 433, 489 (S.D.N.Y. 2005) ("Minority stock ownership is not enough to establish control person liability, since minority stock ownership does not give the owner the power to direct the primary violator.").

Courts routinely reject allegations of control that are far more substantial than those alleged in the Complaint.  For example:

- In *In re BioScrip, Inc. Securities Litigation*, the court held that private equity firm KKR did not control BioScrip "as a matter of law," even though KKR "controlled approximately 26 percent of BioScrip stock and had the right to designate two directors on BioScrip's eight-person board."  95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015).

- In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, the court held that Verizon did not control Flag, despite that "Verizon's predecessor co-founded Flag, Verizon owned almost 30% of Flag's voting stock and Verizon selected three of the nine members of Flag's Board of Directors."  308 F. Supp. 2d 249, 273-74 (S.D.N.Y. 2004).

- In *Zishka v. American Pad & Paper Co.*, the court held that Bain Capital and its board appointees did not control Ampad, notwithstanding that Bain "owned 38%-50% of the stock of Ampad, and . . . place[d] three persons on the Ampad Board."  2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001), *aff'd on other grounds*, 72 F. App'x 130 (5th Cir. 2003).

- In *In re Splash Technology Holdings, Inc. Securities Litigation*, the court held that Radius did not control Splash, even where "Radius owned approximately 20% of Splash's stock," "Splash had been a Radius operating division," "Radius' CEO . . . served on Splash's Board," and "the

majority of Splash's officers were former Radius employees."  2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000). The allegations of control against Fir Tree here are markedly weaker than in these cases, where no control was found as a matter of law.

Moreover, Plaintiffs do not allege that Fir Tree had any control whatsoever over the alleged misstatements that are the subject of Plaintiffs' claims.  As shown in Mr. Lederman's Motion (at 10-12), in the absence of allegations that Fir Tree exercised control over any person or mechanism responsible for allegedly making false or misleading statements to investors, Fir Tree cannot be found to have had the requisite control to support a claim under Section 20(a).

## IV.   The Complaint Does Not Allege that Fir Tree Controlled Mr. Lederman in His Capacity as an Ultra Director.

Plaintiffs also do not allege that Fir Tree controlled Mr. Lederman in his capacity as a director of Ultra.  The sole allegations in the Complaint about the relationship between Fir Tree and Mr. Lederman are that "[f]rom February 2011 through January 2021, Evan Lederman worked for Fir Tree Partners, where he was a Partner and member of its Risk Committee," ¶ 32, and that Mr. Lederman's "mandates and interventions were not on behalf of the Board as a whole, but instead" were "on behalf of Fir Tree," ¶ 172.  But this latter allegation is not supported by any alleged facts and is simply a conclusory assertion that this Court should not credit on this motion. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (only "well-pleaded facts, as distinguished from conclusory allegations, must be taken as true.").

Ultra was incorporated in the Yukon Territory, Canada.  Under Canadian corporate law— as under the corporate law of Delaware and other U.S. states—a corporate director, even if

appointed by a shareholder, such as Mr. Lederman here, owes fiduciary duties only to the corporation, and not to the shareholder who appointed him. *See Mahmood v. Misir*, 73 O.R. (3d) 566 ¶ 57 (Ontario Super. Ct. of Justice 2004) (Ex. A) ("In view of the fact that the statutory duties of good faith, loyalty and care are owed to the corporation, the directors cannot have separate duties of the same nature owing to the shareholders. Such parallel duties would create untenable and unrealistic conflicts."). In the absence of well-pleaded allegations to the contrary—which Plaintiffs do not make—that director must be presumed to have acted in the corporation's best interest, and not at the direction of the appointing shareholder. As one Canadian court explained, "the role that any director must play (whether or not a nominee director) is that he must act in the best interests of the corporation. If the interests of the corporation (and indirectly the interests of the shareholders as a whole) require that the director vote in a certain way, it must be the way that he conscientiously believes after a reasonable review is the best for the corporation. The nominee director's obligation to his 'appointing' shareholder would seem to me to include the duty to tell the appointer that his requested course of action is wrong if the director in fact feels this way." *820099 Ontario Inc. v. Harold E. Ballard Ltd.*, 1991 CarswellOnt 142 ¶ 106 (Ontario Ct. of Justice 1991) (Ex. B).

Thus, the "mere fact" that Mr. Lederman was a partner of Fir Tree and that Fir Tree appointed him to the Ultra board "cannot, standing alone, establish that [he] acted as [an] agent[] or acted under the control" of Fir Tree in his capacity as an Ultra director. *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 675 (N.D. Tex. 2013) (dismissing Section 20(a) claim on this basis); *accord, e.g.*, *In re PLX Tech. Inc. S'holders Litig.*, 2018 WL 5018535, at *50 (Del. Ch. Oct. 16, 2018) ("Delaware law does not recognize any basis to attribute the actions of an independent director to the control of the stockholder that nominated or appointed him, simply by

virtue of the fact of the nomination or appointment."); *Glob. Crossing Estate Representative v. Winnick*, 2006 WL 2212776, at *21 (S.D.N.Y. Aug. 3, 2006) (refusing to adopt "novel and expansive conception of New York fiduciary law" that "a fiduciary duty can be imputed to a shareholder based on the participation of its designee on the board of a corporation").

For example, in *Silsby v. Icahn*, the court dismissed a Section 20(a) claim against Carl Icahn, who held 14.8% of the company's stock and had nominated two directors to the company's board.  17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014).  The court reasoned that the nomination of those directors, standing alone, "len[t] no support to the plaintiffs' allegation that Icahn exercised control over" those directors because they "were not working within the scope of their employment for Icahn when acting in their capacity as Directors" of the company.  *Id.*; *see also In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *9 (S.D.N.Y. Aug. 8, 2005) ("Although it may be true in some general sense that it is axiomatic that employers 'control' their employees, pleading an employment relationship is insufficient to establish agency between Microsoft and Softbank and its employees in their capacities as directors of an independent corporation.") (alteration omitted).  Imposing Section 20(a) control-person liability on a corporation based solely on the actions of a director that it appointed to the board of another corporation would harm corporate governance more generally by making investors less willing to seek representation on a corporation's board and impermissibly permit the general tort law theory of *respondeat superior* to circumvent the clear limitations on liability imposed by Section 20(a).  *See, e.g.*, *USAirways Grp., Inc. v. Brit. Airways PLC*, 989 F. Supp. 482, 494 (S.D.N.Y. 1997) (same observation, under Delaware law).

The Complaint does not allege any *facts*—only unsupported conclusions—that would establish that Fir Tree directed Mr. Lederman to take the alleged actions challenged by the

Complaint, or that he was acting in his capacity as a Fir Tree partner, rather than as a director of Ultra, when he took those supposed actions.  Where "there are no allegations in the complaint in support of [a] theory" that Mr. Lederman was acting as Fir Tree's agent, the Court "cannot assume that" he was "acting on behalf of" Fir Tree in his capacity as an Ultra director.  *In re Kosmos*, 955 F. Supp. 2d at 676.

## V.     Plaintiffs' Allegations Show That Fir Tree Acted in Good Faith and Did Not Induce Any Alleged Primary Violation.

Even if the Complaint properly alleged that Fir Tree controlled an alleged primary violator (and it does not), the Section 20(a) claim against Fir Tree still should be dismissed because Plaintiffs' allegations establish that Fir Tree "acted in good faith and did not . . . induce the act or acts constituting the violation or cause of action."  15 U.S.C. § 78t(a).[5]  As a preliminary matter, and as shown above (*see supra* page 7), Plaintiffs do not allege that Fir Tree had any control whatsoever over the alleged misstatements that are the subject of Plaintiffs' claims; thus, the Complaint is devoid of any allegations that Fir Tree "induce[d] the act or acts constituting the violation or cause of action," 15 U.S.C. § 78t(a).

Moreover, the allegations of the Complaint confirm that Fir Tree acted in good faith.  The Complaint alleges that Fir Tree owned hundreds of millions of dollars worth of Ultra's stock—a 15.6% stake—at the beginning of the putative class period, ¶¶ 144-44, and invested an additional

---

[5] "Dismissal of a claim under Rule 12(b)(6) on the basis of an affirmative defense . . . is proper where that defense is clear from the face of the Complaint."  *VanLandingham v. Grand Junction Reg'l Airport Auth.*, 46 F. Supp. 3d 1119, 1124 (D. Colo. 2014), *aff'd*, 603 F. App'x 657 (10th Cir. 2015).  As the Seventh Circuit has put it, "[l]itigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *see Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.  If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense.").

$64 million in Ultra during the putative class period between August and September 2017, ¶ 145, at a time when Plaintiffs allege that Ultra's stock price was artificially inflated.  The Complaint does not allege that Fir Tree sold *any* shares of Ultra before the stock-price declines on which Plaintiffs claim damages.  Fir Tree's investments in Ultra negate bad faith as a matter of law. Plaintiffs provide no explanation for why Fir Tree would have purchased additional Ultra shares if it allegedly knew that the price was artificially inflated and then risked its entire investment in Ultra by forcing the company to engage in an operational strategy that it knew would fail.  The law is clear that this Court need not accept an "implausible" "core theory" that "has no basis in logic or common experience."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020); *see also Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, 2005 WL 736217, at *3 (S.D.N.Y. Mar. 30, 2005) ("As a matter of law, . . . allegations of irrational motive cannot support a fraud claim under Rule 9(b)."), *aff'd*, 159 F. App'x 317 (2d Cir. 2005); *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990) ("Plaintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent.").

## CONCLUSION

For the foregoing reasons, as well as those in (i) Defendants Michael D. Watford and C. Bradley Johnson's Motion to Dismiss and (ii) Evan Lederman's Motion to Dismiss, Plaintiffs' Section 20(a) claim against Fir Tree should be dismissed with prejudice.

Dated: October 29, 2021

**ROLNICK KRAMER SADIGHI LLP**

By: */s/ Sheila A. Sadighi*
Sheila A. Sadighi
300 Executive Drive, Suite 275
West Orange, New Jersey 07052
Tel. 973-996-4991
ssadighi@rksllp.com

Matthew Peller
1251 Avenue of the Americas
New York, New York 10020
Tel. 212-597-2822
mpeller@rksllp.com

*Counsel for Defendant Fir Tree Capital Management LP (f/k/a Fir Tree Inc.)*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2021, I electronically filed the foregoing Fir Tree Capital Management's Motion to Dismiss the Amended Class Action Complaint with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on October 29, 2021.

*/s/ Sheila A. Sadighi*
Sheila A. Sadighi
