**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 20-cv-02652-RMR-STV (consolidated for all purposes with Civil Action
No. 20-cv-02820)

---

ULTRA PETROLEUM INVESTOR GROUP, Individually and on behalf of all others similarly
situated,

        Plaintiffs,

      v.

MICHAEL D. WATFORD,
C. BRADLEY JOHNSON,
ULTRA PETROLEUM, INC.,
FIR TREE CAPITAL MANAGEMENT LP N/K/A FIR TREE PARTNERS, INC., and
EVAN LEDERMAN,

        Defendants.

---

**DEFENDANT EVAN LEDERMAN'S
REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................................1

ARGUMENT ..............................................................................................................................................2

    I.       Plaintiffs Fail to Plead a Primary Violation of the Securities Laws. ................................2

    II.      Plaintiffs Fail to Plead that Mr. Lederman Had "Control" Over Any Primary
         Violation. .................................................................................................................................3

         A.     Plaintiffs Concede that Mr. Lederman Did Not Have Control Over
              Ultra on or before February 28, 2018. ....................................................................3

         B.     Plaintiffs Concede that Mr. Lederman Did Not Control Ultra's
              Alleged Violations of the Securities Laws. ............................................................4

         C.     Plaintiffs Have Not Alleged that Mr. Lederman Had Day-to-Day
              Control Over Ultra. ...................................................................................................4

CONCLUSION ...........................................................................................................................................9

## TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE(S)</small>

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) ............................................................................ 3, 5, 7

*In re Gold Resource Corp. Sec. Litig.*,
776 F.3d 1103 (10th Cir. 2015) ................................................................................ 2

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381 (10th Cir. 1997) ................................................................................ 6

*Grubka v. WebAccess Int'l*,
445 F. Supp. 2d 1259 (D. Colo. 2006),
*amended by* 2006 WL 2527815 (D. Colo. Aug. 31, 2006) ....................................... 3

*Maher v. Durango Metals*, 144 F.3d 1302, 1306 (10th Cir. 1998)
144 F.3d 1302 (10th Cir. 1998) ................................................................................ 3

*Medina v. Clovis Oncology, Inc.*,
215 F. Supp. 3d 1094 (D. Colo. 2017) ..................................................................... 3

*In re Molycorp, Inc. Sec. Litig.*,
157 F. Supp. 3d 987 (D. Colo. 2016) ....................................................................... 8

*In re NPS Pharms., Inc. Secs. Litig.*,
2007 WL 1976589 (D. Utah July 3, 2007) ............................................................... 8

*In re SemGroup Energy Partners LP*,
729 F. Supp. 2d 1276 (N.D. Okla. 2010) ................................................................. 8

*Sorkin, LLC v. Fischer Imaging Corp.*,
2005 WL 1459735 (D. Colo. June 21, 2005) ........................................................... 3

*Tchrs' Ret. Sys. of La. v. Qwest Commc'ns Int'l*,
2005 WL 2359311 (D. Colo. Sept. 23, 2005) ........................................................... 4

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
2008 WL 879023 (D. Colo. Mar. 28, 2008) ............................................................. 4

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
426 F. Supp. 3d 864 (D. Kan. 2019) ........................................................................ 7

STATUTES & RULES

Section 20(a) of the Securities Exchange Act of 1934 ........................................................................ *passim*

## PRELIMINARY STATEMENT

In their opposition to defendants' motions to dismiss, plaintiffs treat their Section 20(a) claims as an afterthought. They articulate the applicable standard at the highest level of generality and repeat their allegations from the amended complaint, but they all but ignore the multiple reasons why those allegations fail to plead a control person claim against Mr. Lederman.

As an initial matter, plaintiffs now admit that Mr. Lederman bears no liability for any statement on or before February 28, 2018, when he became chair of Ultra's board. Any control person claim against him in respect of statements on or before that date therefore fails.

As to the five statements made after that date, plaintiffs have failed to show that Mr. Lederman had the requisite influence or control to plead liability under Section 20(a). Plaintiffs concede that Mr. Lederman had no role whatsoever in the alleged primary violations of the securities laws—i.e., the alleged misrepresentations by other defendants. Plaintiffs do not dispute the logical impossibility of Mr. Lederman controlling the majority of these statements, which were spontaneous answers to questions by another individual on an earnings call in which Mr. Lederman did not even participate. Instead, plaintiffs claim that Mr. Lederman was a control person of Ultra based on their assertion that he was responsible for the Company's decision to go "all in" on horizontal drilling. But even if true, which they are not, these allegations would not remotely satisfy the Tenth Circuit's standard for Section 20(a), which requires control of *day-to-day* management and policies. In any event, plaintiffs' theory is directly contrary to the documents they chose to incorporate into the amended complaint by reference. The public disclosures cited in the amended complaint establish that the decision to pivot to horizontal drilling was both made and publicly announced months before Mr. Lederman's arrival. Further, it is undisputed that upon joining the board, Mr. Lederman was simply one of six independent directors on a seven-member board and

that neither he nor Fir Tree had a controlling interest in Ultra.  On the face of plaintiffs' pleadings, there is no basis—under any theory recognized in this Circuit—to find Mr. Lederman liable as a control person.

**ARGUMENT**

As set forth in Mr. Lederman's opening brief and below, the claims against Mr. Lederman should be dismissed with prejudice because plaintiffs have not properly alleged either element of their claim under Section 20(a) of the Securities Exchange Act.  Specifically, plaintiffs have failed to plead (i) a primary violation of the securities laws and (ii) that Mr. Lederman had "control" over the underlying violation or day-to-day control of the operations and management of Ultra.[1]

### I.    Plaintiffs Fail to Plead a Primary Violation of the Securities Laws.

As Messrs. Johnson and Watford articulated both in their motion to dismiss and again on reply, plaintiffs have failed to plead a claim for primary liability against any defendant.  Ultra Def. Br. at §§ I, II; Ultra Reply at §§ I, II.[2]  Because an underlying violation of the securities laws is an essential element of plaintiffs' Section 20(a) claims, the control person claims against Mr. Lederman must be dismissed for that reason alone.  *In re Gold Resource Corp. Sec. Litig.*, 776 F.3d 1103, 1118 (10th Cir. 2015).

---

[1] Plaintiffs also do not dispute that, as Mr. Lederman alluded to in his motion to dismiss, some or all of their claims here are barred under the clear terms of the broad release granted to Mr. Lederman and others as part of the Plan resolving Ultra's 2020 bankruptcy.  *See* Br. at 3 n.2. Again, to the extent the amended complaint is not dismissed on the instant set of motions, Mr. Lederman expects to promptly lay the groundwork, including through immediate discovery, to move for summary judgment on this basis.

[2] Capitalized terms not defined herein have the same meaning articulated in Mr. Lederman's opening brief in support of his motion to dismiss ("Br."). Plaintiffs' opposition to defendants' motions to dismiss is referred to herein as the "Opposition" or "Opp." "Ultra Reply" refers to the brief from Messrs. Johnson and Watford submitted herewith.

**II.     Plaintiffs Fail to Plead that Mr. Lederman Had "Control" Over Any Primary Violation.**

There is no dispute that, to plead control, plaintiffs must sufficiently allege that Mr. Lederman had control over the allegedly misleading statements to investors at the core of plaintiffs' securities fraud claims or "individually exerted control or influence over the day-to-day operations of" Ultra to "cause the direction of" its "management and policies."  Br. at 8 (citing, *inter alia*, *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003)).  Where, as here, "a plaintiff does not plead any facts from which it can be reasonably inferred the defendant was a control person" pursuant to that standard, a Section 20(a) claim fails.  *See Maher v. Durango Metals*, 144 F.3d 1302, 1306 (10th Cir. 1998).[3]

**A.     Plaintiffs Concede that Mr. Lederman Did Not Have Control Over Ultra on or before February 28, 2018.**

Plaintiffs do not dispute that Mr. Lederman cannot be liable for any statement made on or before February 28, 2018, when Mr. Lederman assumed the chairmanship of Ultra's board. Accordingly, plaintiffs' Section 20(a) claims tied to any statements before March 2018—which are the substantial majority of the at-issue statements—must be dismissed.

---

[3] Plaintiffs devote a portion of their Opposition to arguing that they need not plead that the control person "actually or culpably participated in the primary violation."  Opp. at 44.  This assertion is a non sequitur.  Plaintiffs' pleading failure is different and much more fundamental: They have failed to allege that Mr. Lederman had *influence or control* over the underlying violation or the day-to-day operations of the management of the Company.  This element is foundational to control person claims in the Tenth Circuit, and plaintiffs' inability to plead it is dispositive.  And contrary to plaintiffs' inaccurate statement that control is not ordinarily resolvable on a motion to dismiss, courts in this Circuit routinely dismiss control person claims at the pleading stage for a failure to properly allege control.  *See, e.g., Sorkin, LLC v. Fischer Imaging Corp.*, 2005 WL 1459735, at *12 (D. Colo. June 21, 2005); *Grubka v. WebAccess Int'l*, 445 F. Supp. 2d 1259, 1268-69, 1271 (D. Colo. 2006), *amended by* 2006 WL 2527815 (D. Colo. Aug. 31, 2006); *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1131-1134 (D. Colo. 2017).

**B.      Plaintiffs Concede that Mr. Lederman Did Not Control Ultra's Alleged Violations of the Securities Laws.**

In their Opposition, plaintiffs also fail to address—and therefore concede—that Mr. Lederman had no role in the content, process, approval, or execution of Ultra's disclosure apparatus at all, much less in connection with the post-February 28, 2018 disclosures at issue in this case.  Br. at 10-13.  As such, there is no dispute that Mr. Lederman did not control Ultra "with regard to the primary securities law violation alleged." *Tchrs' Ret. Sys. of La. v. Qwest Commc'ns Int'l*, 2005 WL 2359311, at *12 (D. Colo. Sept. 23, 2005).  Nor is there any allegation that he had, much less that he used, any authority "to cause [Ultra]" to engage in the alleged unlawful conduct.  *W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, 2008 WL 879023, at *18 (D. Colo. Mar. 28, 2008); *see also* Br. at 10-11 (collecting cases).  Moreover, as Mr. Lederman explained in his opening brief, any theory that Mr. Lederman was somehow responsible for the allegedly actionable statements during his tenure on Ultra's board would be implausible.  Br. at 10-13.  Three of the five statements were contemporaneous responses from Mr. Johnson in response to questions asked on a May 10, 2018 earnings call.  As to the remaining two statements from the April 2018 10-K, plaintiffs do nothing to establish Mr. Lederman's responsibility over the allegedly misleading statements.  The securities laws are fundamentally about the accuracy of *disclosures*, and plaintiffs here have failed to allege that Mr. Lederman had any control over any purportedly fraudulent statement communicated to investors.

**C.      Plaintiffs Have Not Alleged that Mr. Lederman Had Day-to-Day Control Over Ultra.**

Plaintiffs have likewise failed to allege any of the hallmarks of day-to-day control by Mr. Lederman over the management and policies of Ultra.  Br. at 9-10.  In their Opposition, plaintiffs ask the Court to overlook this failure of pleading by repeating the allegations in the

4

amended complaint that Mr. Lederman was the architect behind Ultra's alleged "pivot" to horizontal wells between February 28, 2018 and May 10, 2018.  Opp. at 14; *see id.* (describing Mr. Lederman allegedly "order[ing] [Ultra's technical team] to focus on horizontal drilling").  But plaintiffs' contention is both legally deficient and so wholly inconsistent with documents incorporated by reference into the amended complaint that it cannot be credited.

First, plaintiffs offer no legal support for the notion that control over a single facet of business strategy could ever constitute habitual control over management and policies sufficient to satisfy Section 20(a).  Rather, the Tenth Circuit has been clear that a plaintiff must allege that the defendant "individually exerted control or influence over the day-to-day operations of the company" to plead control.  *Adams*, 340 F.3d at 1108.  Applying that standard in its seminal control person case, the Tenth Circuit found day-to-day control only with respect to the CEO defendant that "possessed the ultimate management authority of the corporation on *a daily basis*."  *Id.* (emphasis added).  By contrast, the Court disposed of plaintiffs' control person claims against an outside director who "was not an executive of the company" because plaintiffs failed to establish that the director had the requisite *day-to-day* executive and operational authority, notwithstanding allegations that he oversaw management and was responsible for, among other things, press releases and public statements.  *See id.*; *see also* Appellants' Reply Brief, *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003) (No. 02-1208), 2002 WL 32373061 at *17-22 (summarizing allegations).  Under this well-established law, the episodic direction or sponsorship of particular business strategies—like that alleged here—is not sufficient to plead control.

And even if it were, plaintiffs' allegations of Mr. Lederman's control over the decision to focus on horizontal drilling cannot be credited because they are directly and demonstrably inconsistent with public documents, which they have incorporated by reference into the amended

complaint.  As set forth in Mr. Lederman's moving brief, those documents—*e.g.*, earnings call

transcripts and press releases, *see* Exs. 3, 5—decisively undermine plaintiffs' allegations about

Mr. Lederman's role in Ultra's transition of its operations to horizontal drilling.  Br. at 4-5 (citing,

*inter alia*, CAC ¶¶ 142, 175, 179, 183, 185, 188, 190).  They prove that the decision was made—and

the disclosure of that business strategy to investors was communicated—months before

Mr. Lederman was appointed as Ultra's board chair.  *See id.*  Plaintiffs do not save their improper

control person claims by asserting in opposition that Mr. Lederman is responsible for **expanding**—

as opposed to **initiating** as alleged in the amended complaint—Ultra's disclosed horizontal drilling

strategy.  *See* Opp. at 3.  Setting aside that this is inconsistent with what their amended complaint

says, *see* CAC at ¶ 151, plaintiffs nowhere explain how Mr. Lederman's endorsement of a previously

disclosed strategy amounts to day-to-day management over Ultra sufficient to find control person

liability, and cite no authority that could sponsor such an expansive view of Section 20(a).  In short,

regardless of his position on horizontal drilling between February 28, 2018 and May 10, 2018,

Mr. Lederman cannot have controlled the decision to horizontally drill that was made and disclosed

months before he even arrived at the Company.  Plaintiffs do not even acknowledge these basic

logical flaws or attempt to reconcile their allegations with these documents.  Nor do plaintiffs

dispute that allegations (like theirs) that directly contradict documents incorporated by reference in a

complaint could not be credited on a motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers,
Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

Particularly in light of this chronology, plaintiffs' remaining isolated allegations are nowhere

near sufficient to allege Mr. Lederman's *day-to-day* control over Ultra.  To start, the allegations that

Mr. Lederman participated in a single meeting with management championing a better and more

efficient execution of a previously announced drilling strategy cannot support a finding of "day-to-

6

day control." *See Adams*, 340 F.3d at 1108.  Likewise, the conclusory allegation that Mr. Lederman

tried to persuade the board to support the horizontal drilling strategy during periodic board

meetings, Opp. at 46, falls far short of alleging control of the day-to-day operations of the Company.

Indeed, it only emphasizes that Mr. Lederman had only one vote on a seven-person board and does

not support the conclusion that he had any day-to-day management role.  Finally, the allegations in

the amended complaint do not support plaintiffs' sweeping assertion in their Opposition that

Mr. Lederman "directed Ultra employees in their day-to-day tasks and circumvented company

executives."  Opp. at 46.  Rather, even when viewed in the light most favorable to plaintiffs, they

have at most alleged occasional interactions and communications between Mr. Lederman and Ultra

employees related to discrete Company matters.  CAC ¶¶ 172, 174.  These allegations fail to plead

day-to-day control over the management and operations of Ultra.

Plaintiffs offer no legal support for their efforts to characterize Mr. Lederman's alleged

conduct as day-to-day control of Ultra.  In *Yellowdog Partners, LP v. CURO Group Holdings Corp.*, 426

F. Supp. 3d 864 (D. Kan. 2019), the primary case plaintiffs rely on, the district court found that

certain shareholders and directors were control persons on the basis of an admission by the

company that these defendants "collectively have the ability to elect all of the members of our board

of directors *and thereby control our policies and operations.*"  *Id.* at 877 (emphasis added).  In other words,

the defendants in *Yellowdog*—in language almost identical to the statutory standard—had conceded

in writing that they were control persons for the company.  *Id.*  Here, there is no such admission

(and no facts or even allegations upon which such an admission could be assumed).  Nor are there

any well-pled allegations that Mr. Lederman systematically controlled the board, had the power to

elect all Board members, or had the power to influence the policies and operations of Ultra.

Plaintiffs have not identified a single case in which a court has sustained Section 20(a) claims against

7

an independent director like Mr. Lederman on the basis of the sort of threadbare allegations of day-

to-day control that plaintiffs offer here.[4]

---

[4] Indeed, none of the other cases that plaintiffs cite regarding control person liability provides a basis for plaintiffs' allegations against Mr. Lederman. In *In re Molycorp, Inc. Securities Litigation*, the director defendants were alleged to manage day-to-day control over the defendant company because each "participated directly in the management of Molycorp," "had access to . . . materially adverse, undisclosed information, and "was involved in signing and/or disseminating" the allegedly fraudulent public filings and releases. 157 F. Supp. 3d 987, 997 (D. Colo. 2016). Moreover, unlike Mr. Lederman, each of the individual director defendants was found liable as a primary violator of the securities laws for having signed or approved the actual statements alleged to be misleading. *Id.* In *In re NPS Pharmaceuticals, Inc. Securities Litigation*, the court found that certain individuals were controlling defendants because plaintiff alleged that "each defendant had the power to influence and control the content and dissemination of the allegedly false statements giving rise to the alleged § 10(b) violations, and that they actually exercised this control." 2007 WL 1976589, at *7 (D. Utah July 3, 2007); *see also In re SemGroup Energy Partners LP*, 729 F. Supp. 2d 1276, 1300-1302 (N.D. Okla. 2010) (finding directors to be control persons when they "signed or authorized" allegedly fraudulent statements and "operated . . . and conducted SGLP's business pursuant to agreements and formal memoranda").

8

## CONCLUSION

For these reasons, as well as those set forth in Mr. Lederman's opening brief and the briefs

of Messrs. Johnson and Watford, Mr. Lederman respectfully requests that the Court dismiss the

Section 20(a) claims with prejudice.[5]

Dated:  January 27, 2022                                         Respectfully submitted,

                                                                By: */s/ Edmund Polubinski III*

                                                                Edmund Polubinski III
                                                                Patrick W. Blakemore
                                                                DAVIS POLK & WARDWELL LLP
                                                                450 Lexington Avenue
                                                                New York, New York 10017
                                                                Telephone: (212) 450-4000
                                                                Facsimile: (212) 701-5800
                                                                Email: edmund.polubinski@davispolk.com

                                                                *Attorneys for Defendant Evan Lederman*

---

[5] For the reasons set forth in the reply brief of Messrs. Watford and Johnson, the Court should deny plaintiffs' request for leave to amend.  *See* Ultra Reply at § III.

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: */s/ Edmund Polubinski III*
Edmund Polubinski III