# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Regina M. Rodriguez

Civil Action No. 20-cv-02652-RMR-STV (consolidated for all purposes with Civil Action No. 20-cv-02820)

---

ULTRA PETROLEUM INVESTOR GROUP, Individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

MICHAEL D. WATFORD,
C. BRADLEY JOHNSON,
ULTRA PETROLEUM, INC.,
FIR TREE CAPITAL MANAGEMENT LP N/K/A FIR TREE PARTNERS, INC., and
EVAN LEDERMAN,

        Defendants.

---

## REPLY BRIEF SUPPORTING MOTION FOR JUDICIAL NOTICE

---

Plaintiffs' opposition brief (Dkt. #93) argues the Court should not take judicial notice of one of the twelve documents Defendants Watford and Johnson submitted with their motion to dismiss—Exhibit 12 (Dkt #84-13). Plaintiffs do not contest the motion as to the other eleven documents. Dkt. #93 at 2. Exhibit 12 is a presentation that was published in conjunction with and used during Ultra Petroleum's third quarter 2017 earnings conference call, held on November 7, 2017. A document published and used publicly is squarely within the type of documents courts commonly consider on motions to dismiss—not for their truth, but for the fact that the information contained in them was made public at a particular point in time. *E.g.*, *Chipman v. Aspenbio Pharma*, 2012 WL 4069353, *2 (D.

1

Colo. Sept. 17, 2012) ("[F]or the limited purpose of showing that various disclosures were made and available to investors, I may judicially notice publicly available investor communications and stock analysts' reports."); *Mulquin v. Nektar Therapeutics*, 510 F. Supp. 3d 854, 863 (N.D. Cal. 2020) (taking judicial notice of investor presentations "for the purpose of determining what was disclosed to the market"); *Waterford Twp. Police v. Mattel*, 321 F. Supp. 3d 1133, 1144 (C.D. Cal. 2018) (taking judicial notice of "industry analyst reports that were referenced in statements made during Mattel's earnings call on January 25, 2017"); *In re Century Aluminum Sec. Litig.*, 749 F. Supp. 2d 964, 979-80 (N.D. Cal. 2010) (taking judicial notice of PowerPoint presentations to analysts, "not for the truth of the matter asserted, but to show disclosure of information").

Plaintiffs argue there is no indication that Exhibit 12 is actually the presentation that Ultra published at the time, but the information in Exhibit 12 matches *exactly* with the scores of references to the presentation in the transcript of the third quarter 2017 earnings call, which Plaintiffs rely on in their complaint and do not dispute the Court can take judicial notice of. And Watford and Johnson downloaded Exhibit 12 from a public source that is plainly reputable—indeed, the same public source from which they obtained six other exhibits whose accuracy Plaintiffs do not dispute.

The Court should grant Watford and Johnson's motion for judicial notice in its entirety.

## Argument

### I.    The Court Can Consider Exhibit 12 On A Motion To Dismiss.

Plaintiffs' brief highlights that courts can consider on motions to dismiss documents referenced in the complaint. Dkt. #93 at 2. However, they ignore controlling precedent holding that courts can *also* consider documents subject to judicial notice, even if the documents are not referenced in the complaint. *E.g., Smallen v. The Western Union Co.*, 950 F.3d 1297, 1305 & n.4 (10th Cir. 2020). Thus, the Court can consider Exhibit 12 on a motion to dismiss because Exhibit 12 satisfies Federal

2

Rule of Evidence 201's standard for judicial notice. Independently, the Court can consider Exhibit 12 because it is part of the information presented on Ultra's third quarter 2017 earnings conference call, which Plaintiffs rely on in the complaint.

### A.     Exhibit 12 Satisfies Rule 201's Standard For Judicial Notice.

Plaintiffs do not dispute that the Court may take judicial notice of facts that "[1] can be accurately and readily determined [2] from sources whose accuracy cannot reasonably be questioned." Dkt. #93 at 1 (quoting Fed. R. Evid. 201(b)). Exhibit 12 satisfies both parts of this standard.

### 1.     The Publication And Contents Of Exhibit 12 Are Facts That Can Be Accurately And Readily Determined.

The fact that Exhibit 12 was published, in the form shown in Exhibit 12, on November 7, 2017, "can be accurately and readily determined" because the presentation is described and discussed in detail in the transcript of Ultra's third quarter 2017 earnings conference call—a transcript that Watford and Johnson have moved for judicial notice, which motion Plaintiffs do not oppose. Dkt. #84-6. Near the beginning of the earnings call, Watford referred participants to the presentation Ultra had published earlier that morning. *Id.* at 3 ("I'd like to now briefly address our third quarter results and then spend the remainder of the call discussing the investor deck we released this morning that we will be referring to during the call."). Each subsequent reference to the presentation in the transcript matches precisely with Exhibit 12. For example:

- **Transcript:** "Let me start with slide 4 and reinforce the message that we are a Tier 1 natural gas producer." Dkt. #84-6 at 4. **Exhibit 12**, page 4: Title of slide: "Ultra is a Tier 1 Gas Producer." Dkt #86-13 at 4.

- **Transcript** (still discussing page 4 of the presentation): "We delivered 70% EBITDA margins in the third quarter of 2017 with low cash operating cost." Dkt. #84-6 at 4. **Exhibit 12**, page 4: "Low cost, high margin production. Low $1.00 per Mcfe operating cost, 70% EBITDA margin in 3Q17." Dkt #84-13 at 4.

- **Transcript**: "On slide number 6, Pinedale drilling progression." Dkt. #84-6 at 4. **Exhibit 12**, page 6: Title of slide: "Pinedale Drilling Progression." Dkt. #84-13 at 6.

- **Transcript**: "On slide 7, we have summarized our inventory of vertical wells in Pinedale." Dkt. #84-6 at 4. **Exhibit 12**, page 7: Title of slide: "Pinedale Vertical Inventory." Dkt. #84-13 at 7.

- **Transcript**: "The next slide, slide number 8, titled Pinedale Vertical Well Performance…." Dkt #84-6 at 4. **Exhibit 12**, page 8: Title of slide: "Pinedale Vertical Well Performance." Dkt. #84-13 at 8.

- **Transcript**: "Onto the next slide which is titled Most Accurate IRR's Derived from Actual Producing Days, slide number 9." Dkt. #84-6 at 5. **Exhibit 12**, page 9: Title of slide: "Most Accurate IRR's Derived from Actual Producing Days." Dkt. #84-13 at 9.

- **Transcript**: "So we're going to skip all the way over to slide 15 in the deck. Just waiting for the little system to bring it up. There we go. It's entitled the 2018 Preliminary Growth Considerations." Dkt. #84-6 at 6. **Exhibit 12**, page 15: Title of slide: "2018 Preliminary Growth Considerations." Dkt. #84-13 at 15.

Importantly, the one-to-one match between the transcript's references to the presentation, on one hand, and to Exhibit 12, on the other hand, continues in the specific page of the presentation Watford and Johnson discuss in their motion to dismiss—slide 19 of the presentation. Dkt. #84 at 14. The transcript first refers to slide 19 with Johnson saying: "On the next slide, slide number 19, we have a map of the horizontal activity in Pinedale and on the east flank of Jonah Field." Dkt. #84-6 at 7. The title of slide 19 in Exhibit 12 is: "Horizontal Well Activity." Dkt. #84-13 at 19. Johnson then stated: "So with the map on slide 19, let's start with the southernmost well and we will work our way around the map in a clockwise fashion. First, Jonah Energy's Antelope 91-29H well." Dkt. #84-6 at 7. On slide 19 of Exhibit 12, the lowest labeled well is "Jonah Energy Antelope 91-29H." Dkt. #84-13 at 19. The next two paragraphs in the transcript then provide data about the 91-29H well, and that data matches what slide 19 of Exhibit 12 states. *Id.*

Going clockwise, as Johnson stated in the transcript he would, Johnson next said: "The next well, another one by Jonah Energy, is the Antelope 341-19H." Dkt. #84-6 at 7. The next labeled well

4

on slide 19 of Exhibit 12, moving clockwise, is "Jonah Energy Antelope 341-19H." Dkt. #84-13 at

19. Again, the transcript indicates Johnson provided specific information about that well, and the

information matches the information on slide 19. *Id.*

The transcript indicates that Johnson next said: "Moving up to the northernmost well on this

map, you will see Ultra's first horizontal well in Pinedale drilled from the Boulder 10-33 pad." Dkt.

#84-6 at 7. The upper-most well on slide 19 of Exhibit 12 is labeled "Ultra Boulder 10-33-B-1H."

Dkt. #84-13 at 19.

Finally, the transcript states that Johnson said: "Now let's move southeast from this well which

brings us to the set of three horizontal wells on the Warbonnet 9-24 (sic) [9-23] (23:41) pad. This is

location of our 2017 horizontal program." Dkt. #84-6 at 8 (brackets in original). Moving from the

prior well at the top of slide 19 of Exhibit 12 to the southeast (that is, down and right), there are three

labeled wells matching Johnson's description. Dkt. #84-13 at 19.

In sum, Exhibit 12 matches precisely with the description of the presentation that accompa-

nied Ultra's third quarter 2017 earnings conference call. That match establishes beyond any doubt

that Exhibit 12 is an accurate copy of the presentation Ultra published on November 7, 2017. Thus,

its publication on that day is a fact that "can be accurately and readily determined."

This dispels many of Plaintiffs' arguments against judicial notice. For instance, Plaintiffs argue

"[t]here is no way for Plaintiffs to confirm when Exhibit 12 was published, where it was available, or

any other pertinent facts." Dkt. #93 at 2-3. But the transcript of the earnings call, which took place

on November 7, 2017, establishes that the presentation was "released this morning." Dkt. #84-6 at

3. Plaintiffs argue that the presentation is undated, which they argue "is in stark contrast" to other

presentations that are dated. Dkt. #93 at 2-3. But, again, the transcript establishes the date—and,

more than that, Exhibit 12 itself refers to dates throughout its contents, establishing it is from the

third quarter of 2017. Dkt. #84-13 at 2 (detailing "3Q17 Business Results"), at 5 (entitled "3Q17 Summary & Full Year Production Update"), at 23 (entitled "Third Quarter 2017 Summary Financial Results").

### 2.     Exhibit 12 Comes From A Source Whose Accuracy Cannot Reasonably Be Questioned.

In addition, Exhibit 12 comes from a source whose accuracy cannot be reasonably questioned: a data collection company called FactSet. Indeed, Plaintiffs do not contest six other exhibits that Watford and Johnson obtained from FactSet. Dkt #84-1, ¶¶ 2-5, 8-9; Dkt. #93 at 2. Plaintiffs complain that FactSet is "paywalled." Dkt. #93 at 3. But that is no different from nearly every other research tool lawyers use, including WestLaw, Lexis, and even the Court's PACER system—let alone Bloomberg, Seeking Alpha, or any of the many other financial websites that both plaintiffs and defendants use in securities cases like this one to obtain documents that were made public during the time in question. In fact, Plaintiffs themselves rely on exhibits from the paywalled site Bloomberg, and yet they still contend the exhibits are a matter "of public record." Dkt. #92, ¶ 1; Dkt. #69, ¶ 1. And Watford and Johnson's Exhibit 1 was downloaded from Seeking Alpha, yet Plaintiffs do not oppose judicial notice of that document. Dkt. #84-1, ¶ 1.[1]

It is often the case in litigation that information that was accessible for free at the time events

---

[1] Courts also routinely take judicial notice of publications like newspaper articles and analyst reports, both of which are often behind paywalls. *E.g.*, *Ark. Pub. Emps. v. Bristol-Myers Squibb*, 28 F.4th 343, 352 (2d Cir. 2022) ("The district court properly took judicial notice of investment analyst reports from Goldman Sachs and Alliance Bernstein…."); *Chipman*, 2012 WL 4069353 at *2 (similar); *In re SemGroup Energy*, 2009 WL 3713524, *2 (N.D. Okla. Nov. 4, 2009) ("Courts have taken judicial notice of analyst reports in motions to dismiss securities claims when the reports are submitted to establish whether and when certain information was provided to the market, but not to prove the truth of the matters asserted therein.").

occurred (for example, free attendance at an earnings conference call or a free download of a presen-tation from a company's website) is no longer free by the time litigation occurs (for example, tran-scripts of earnings calls are not always free and presentations may no longer be on a company's website after the company is dissolved and no longer has a website).  But Rule 201 does not specify that only free information are sources whose accuracy cannot reasonably be questioned, and Plaintiffs cite no authority interpreting Rule 201 to implicitly create that limitation.

> **B.      Exhibit 12 Is Part Of Ultra's November 7, 2017 Earnings Conference Call, Which Plaintiffs Rely On In Their Complaint.**

Independent of considering Exhibit 12 because the Court can take judicial notice of it, the Court can also consider Exhibit 12 because it is part and parcel of the information Ultra Petroleum disclosed on its November 7, 2017 earnings conference call, which Plaintiffs rely on in their complaint. *See* Compl. ¶¶ 8, 96, 114, 115, 152, 193-196.  Indeed, Watford and Johnson moved the Court to take judicial notice of the transcript of that conference call, Exhibit 5 to their motion.  Dkt. #84-6; Dkt. #85 at 2-3.  Plaintiffs do not oppose the Court taking judicial notice of that transcript.  Dkt. #93 at 2.

The transcript of the earnings call refers throughout to the accompanying presentation—to Exhibit 12.  *Supra* at 3-4.  As such, the Court cannot fairly consider what information was presented publicly during the conference call without considering the presentation as well.  Considering only the oral remarks, without the accompanying information presented visually, would consider only half the information presented.  Doing that would make no sense, and Plaintiffs do not cite any precedent supporting such a holding.

## II.      Watford And Johnson Do Not Ask The Court To Consider Exhibit 12 For Its Truth.

The bulk of Plaintiffs' brief opposing judicial notice is devoted to arguing that the information on slide 19 of Exhibit 12 is not "reliable" and so should not be considered for its truth.  Dkt. #93 at

3-4.  However, as Watford and Johnson explain in their reply brief supporting their motion to dismiss, they are not asking the Court to consider Exhibit 12 for its truth, but only for what information was disclosed publicly on November 7, 2017.  *See* Reply Br. at 8-9.  Thus, Plaintiffs' argument is beside the point and is not a reason to deny consideration of Exhibit 12.

To the extent that Plaintiffs' argument is that the information on slide 19 of Exhibit 12 is not intelligible, the Court should reject that argument for the reasons explained in Watford and Johnson's reply brief supporting their motion to dismiss.  *Id.* at 9.  Any such argument is clearly wrong once slide 19 is considered in conjunction with the oral remarks describing the slide in the transcript of the earnings conference call.  *Id.* at 9-10.  In other words, Plaintiffs' argument proves the point that the Court cannot fairly consider one part of the information disclosed on the earnings call without the other part.  *Supra*, Part I.B.

### Conclusion

For each of these reasons, as well as those set forth in their Motion for Judicial Notice, Defendants Watford and Johnson respectfully request that the Court take judicial notice of Exhibits 1 through 12 to their motion to dismiss.

Dated: July 13, 2022

Respectfully submitted,

*/s/ David Holman*

David Holman
CRISHAM & HOLMAN LLC
2549 West Main Street, Suite 202
Littleton, CO 80120
(720) 739-2176

Joshua Z. Rabinovitz
Anne I. Salomon
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(312) 862-2284

*Counsel for Defendants Michael D. Watford
and C. Bradley Johnson*

9