**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 20-cv-02652-RMR-STV (consolidated for all purposes with Civil Action
No. 20-cv-02820)

---

ULTRA PETROLEUM INVESTOR GROUP, Individually and on behalf of all others similarly
situated,

        Plaintiffs,

     v.

MICHAEL D. WATFORD,
C. BRADLEY JOHNSON,
ULTRA PETROLEUM, INC.,
FIR TREE CAPITAL MANAGEMENT LP N/K/A FIR TREE PARTNERS, INC., and
EVAN LEDERMAN,

        Defendants.

---

**DEFENDANT EVAN LEDERMAN'S
REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

### TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................................1

ARGUMENT..............................................................................................................................................2

    I.        Plaintiffs Fail To Plead a Primary Violation of the Securities Laws. ..............................3

    II.      Plaintiffs Fail To Plead that Mr. Lederman Had "Control" over Any Primary
           Violation..............................................................................................................................3

           A.      Plaintiffs Concede That Mr. Lederman Did Not Have Control over
                 Ultra on or Before February 28, 2018...................................................................4

           B.      Plaintiffs Did Not and Cannot Allege That Mr. Lederman Controlled
                 Ultra's Alleged Violations of the Securities Laws.................................................4

           C.      Plaintiffs Have Not Alleged That Mr. Lederman Had Day-to-Day
                 Control over Ultra..................................................................................................6

CONCLUSION........................................................................................................................................10

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) .................................................................................. 3, 6, 9

*In re Gold Resource Corp. Sec. Litig.*,
776 F.3d 1103 (10th Cir. 2015) ........................................................................................ 3

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
130 F.3d 1381 (10th Cir. 1997) ........................................................................................ 9

*Maher v. Durango Metals*,
144 F.3d 1302 (10th Cir. 1998) .................................................................................. 3, 5, 9

*In re Molycorp, Inc. Sec. Litig.*,
157 F. Supp. 3d 987 (D. Colo. 2016) ............................................................................... 7

*In re NPS Pharms., Inc. Sec. Litig.*,
2007 WL 1976589 (D. Utah July 3, 2007) ...................................................................... 7

*In re SemGroup Energy Partners LP*,
729 F. Supp. 2d 1276 (N.D. Okla. 2010) ....................................................................... 7

*Tchrs' Ret. Sys. of La. v. Qwest Commc'ns Int'l*,
2005 WL 2359311 (D. Colo. Sept. 23, 2005) ................................................................. 4

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
2008 WL 879023 (D. Colo. Mar. 28, 2008) .................................................................... 4

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
426 F. Supp. 3d 864 (D. Kan. 2019) ............................................................................... 7

STATUTES & RULES

Section 20(a) of the Securities Exchange Act of 1934 ........................................................ *passim*

## PRELIMINARY STATEMENT

In their opposition to defendants' motions to dismiss, plaintiffs treat their Section 20(a) claim as an afterthought. Although they articulate the applicable standard at the highest level of generality and repeat their allegations from the second amended complaint, they all but ignore the multiple reasons set forth in Mr. Lederman's motion to dismiss why those allegations fail to plead a control person claim against Mr. Lederman.

As an initial matter, plaintiffs now admit that Mr. Lederman bears no liability for any statement on or before February 28, 2018, when he became chair of Ultra's board.[1] Any control person claim against him in respect of statements on or before that date therefore fails.

As to the five statements made after that date, plaintiffs have failed to allege that Mr. Lederman had the requisite influence or control to plead liability under Section 20(a). Plaintiffs do not dispute the logical impossibility of Mr. Lederman controlling the majority of these statements, which were spontaneous answers by another individual to analyst questions on an earnings call in which Mr. Lederman did not even participate. Instead, plaintiffs offer two arguments, neither of which has merit.

First, plaintiffs ask this Court to accept a wholly new, vague, and unpled assertion that Mr. Lederman is responsible as a control person because he purportedly "control[led] the specific statements the [second amended complaint] alleges are actionable." Opp. at 48. But this conclusory assertion in plaintiffs' Opposition can be found nowhere in the second amended

---

[1] Capitalized terms not defined herein have the same meaning articulated in Mr. Lederman's opening brief in support of his motion to dismiss, Dkt. No. 86 ("Br."). Plaintiffs' opposition to defendants' motions to dismiss, Dkt. No. 91, is referred to herein as the "Opposition" or "Opp." "Ultra Reply" refers to the reply brief from Messrs. Johnson and Watford, Dkt. No. 97, submitted herewith.

complaint and should be rejected for that reason alone. Plaintiffs cannot amend their complaint (for the third time) through their opposition to Mr. Lederman's motion. And even if plaintiffs had properly pled this wholly conclusory assertion, it would be insufficient to state a control person claim given that Mr. Lederman could never have controlled the spontaneous oral statements by others that plaintiffs claim were misstatements.

Second, plaintiffs repeat the allegations in the second amended complaint that Mr. Lederman was a control person of Ultra because he was allegedly responsible for the Company's decision to go "all in" on horizontal drilling. But the Court should reject this theory, too, because it is directly contrary to the documents plaintiffs chose to incorporate into the second amended complaint by reference. The public disclosures cited in the second amended complaint establish that the decision to pivot to horizontal drilling was both made and publicly announced months before Mr. Lederman's arrival. Regardless, plaintiffs' allegations of control do not remotely satisfy the Tenth Circuit's standard for control person liability under Section 20(a), which requires a plausible allegation of the power to control the **day-to-day** management and policies of Ultra. On the face of plaintiffs' pleadings, there is no basis—under any theory recognized in this Circuit—to find Mr. Lederman liable as a control person.

## ARGUMENT

As set forth in Mr. Lederman's opening brief and below, the claims against Mr. Lederman should be dismissed with prejudice because plaintiffs have not properly alleged either element of their claim under Section 20(a) of the Securities Exchange Act. Specifically, plaintiffs have failed to plead (i) a primary violation of the securities laws and (ii) that Mr. Lederman had either control over the underlying violation or day-to-day control of the operations and management of Ultra.

2

## I.  Plaintiffs Fail To Plead a Primary Violation of the Securities Laws.

As Messrs. Johnson and Watford articulated both in their motion to dismiss and again on reply, plaintiffs have failed to plead a claim for primary liability against any defendant. Ultra Def. Br. at §§ I, II; Ultra Reply at §§ I, II. Because an underlying violation of the securities laws is an essential element of plaintiffs' Section 20(a) claims, the control person claims against Mr. Lederman must be dismissed for that reason alone. *In re Gold Resource Corp. Sec. Litig.*, 776 F.3d 1103, 1118 (10th Cir. 2015).

## II.  Plaintiffs Fail To Plead that Mr. Lederman Had "Control" over Any Primary Violation.

There is no dispute that, to plead control, plaintiffs must sufficiently allege that Mr. Lederman had control over the allegedly misleading statements to investors at the core of plaintiffs' securities fraud claims or "individually exerted control or influence over the day-to-day operations of" Ultra to "cause the direction of" its "management and policies." Br. at 10 (citing, *inter alia*, *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003)). Where, as here, "a plaintiff does not plead any facts from which it can be reasonably inferred the defendant was a control person" pursuant to that standard, a Section 20(a) claim fails. *See Maher v. Durango Metals*, 144 F.3d 1302, 1306 (10th Cir. 1998).[2]

---

[2] Plaintiffs devote a portion of their Opposition to arguing that they need not plead that the control person actually or culpably participated in the primary violation. Opp. at 47. This assertion is a non sequitur. Plaintiffs' pleading failure is different and much more fundamental: They have failed to allege that Mr. Lederman had **influence or control** over the underlying violation or the day-to-day operations of the management of the Company. This element is foundational to control person claims in the Tenth Circuit, and plaintiffs' inability to plead it is dispositive. And, as established in Mr. Lederman's opening brief, courts in this Circuit routinely dismiss control person claims at the pleading stage for a failure to properly allege control. *See* Br. at 9 n.6 (collecting cases).

3

A.    **Plaintiffs Concede That Mr. Lederman Did Not Have Control over Ultra on or Before February 28, 2018.**

Plaintiffs do not dispute that Mr. Lederman cannot be liable for any statement made on or before February 28, 2018, when Mr. Lederman assumed the role of chair of Ultra's board. Accordingly, plaintiffs' Section 20(a) claims tied to any statements before March 2018—which are the substantial majority of the statements at issue—must be dismissed.  Br. at 10.

B.    **Plaintiffs Did Not and Cannot Allege That Mr. Lederman Controlled Ultra's Alleged Violations of the Securities Laws.**

The second amended complaint does not allege that Mr. Lederman did control, or could have controlled, the post-February 28, 2018 representations made to investors that were purportedly misleading.  Indeed, as explained in Mr. Lederman's opening brief, there is not a single allegation suggesting, much less properly pleading, that Mr. Lederman had any role in the context, process, approval, or execution of Ultra's disclosures, whether generally or with respect to any specific investor disclosure.  Br. at 10-15.  Simply put, plaintiffs have not pled that Mr. Lederman controlled Ultra "with regard to the primary securities law violation alleged," *Tchrs.' Ret. Sys. of La. v. Qwest Commc'ns Int'l,* 2005 WL 2359311, at *12 (D. Colo. Sept. 23, 2005), or that he had, let alone that he used, any authority "to cause [Ultra]" to engage in the alleged unlawful conduct, *W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, 2008 WL 879023, at *18 (D. Colo. Mar. 28, 2008).  *See also* Br. at 13-15 (collecting cases).  This much is clear on the face of the second amended complaint.

In the Opposition, plaintiffs argue that "Lederman . . . possessed the power—and though not required, that [he] exercised that power—to control **the specific statements the Complaint alleges are actionable**."  Opp. at 48 (emphasis added).  But this assertion appears nowhere in the second amended complaint.  In fact, in all three iterations of their complaint (Dkt. Nos. 1, 47, 75-2), as well as in their 50-page opposition brief to defendants' prior motions to dismiss (Dkt. No. 68),

4

plaintiffs did not include a single allegation supporting (or even argument advancing) this theory.[3]

Plaintiffs do barely more in the Opposition, focusing on just one allegation in the second amended

complaint—specifically, an allegation quoting a March 12, 2018 press release where Mr. Lederman

said that the Company was "laser focused on," among other things, "dramatically improving

investor communication and transparency." Opp. at 48 (citing SAC ¶ 228). But again, plaintiffs do

not contend—and, more importantly, did not plead—that this statement was itself false or

misleading, or that Mr. Lederman had any involvement in Ultra's actual disclosure apparatus or the

allegedly misleading disclosures at issue in this case. By focusing on this allegation (and this

allegation alone), plaintiffs are asking the Court to conclude that Mr. Lederman's generic reference

to improving investor relations in a press release is tantamount to "possess[ing] the power . . . and

. . . exercis[ing] that power . . . to control the specific statements the Complaint alleges are

actionable." Opp. at 48. There is no authority supporting this impermissible expansion of Section

20(a) liability, and plaintiffs fail to cite any cases in support.[4]

In all events, as Mr. Lederman explained in his opening brief, plaintiffs' theory that Mr.

Lederman was somehow responsible for the allegedly actionable statements during his tenure on

---

[3] Notably, Mr. Lederman argued in detail in the prior motion to dismiss the amended complaint that plaintiffs had not properly pled that Mr. Lederman controlled the underlying securities fraud. *See* Dkt. No. 64 at 10-13. In the second amended complaint—filed nearly four months after the motions to dismiss the prior complaint were fully briefed—plaintiffs made no effort to address this deficiency. The second amended complaint contains no new allegations about Mr. Lederman. Br. at 7.

[4] Plaintiffs misapprehend Mr. Lederman's argument regarding control, asserting that it "depends on the premise that plaintiffs must allege actual control . . . [where] the mere possession of power, and even indirect power at that, suffices regardless of whether it is exercised." Opp. at 47 (citing *Maher*, 144 F.3d at 1306 (10th Cir. 1998)). But that does address plaintiffs' pleading deficiency. The pleading shortcoming here is that plaintiffs have not made **any allegations** related to **either** Mr. Lederman's "power to control the transactions underlying the alleged securities violation" **or** the actual exercise of such power. *See supra.*

Ultra's board is directly inconsistent with the actual statements in context.  Br. at 13-15.  Three of the five statements were contemporaneous responses from Mr. Johnson to questions asked on a May 10, 2018 earnings call.  As to the remaining two statements from the April 2018 10-K, plaintiffs do nothing to establish Mr. Lederman's responsibility over the allegedly misleading statements.  The securities laws are fundamentally about the accuracy of **disclosures**, and plaintiffs here have failed to allege that Mr. Lederman had any control over any purportedly fraudulent statement communicated to investors.

### C.  Plaintiffs Have Not Alleged That Mr. Lederman Had Day-to-Day Control over Ultra.

Plaintiffs have likewise failed to allege any of the hallmarks of day-to-day control by Mr. Lederman over the management and policies of Ultra.  Br. at 11-13.  In their Opposition, plaintiffs ask the Court to overlook this pleading failure by repeating the allegations in the second amended complaint that Mr. Lederman was the architect behind Ultra's alleged pivot to horizontal wells between February 28, 2018 and May 10, 2018.  Opp. at 16 (describing Mr. Lederman allegedly "order[ing] [Ultra's technical team] to focus on horizontal drilling").  But plaintiffs' contention is legally deficient.  And, even if their allegations were otherwise sufficient, they are so wholly inconsistent with documents incorporated by reference into the second amended complaint that they cannot be credited.

Plaintiffs offer no legal support for the notion that control over a single facet of business strategy could ever constitute habitual control over management and policies sufficient to satisfy Section 20(a).  To the contrary, the Tenth Circuit has been clear that a plaintiff must allege that the defendant "individually exerted control or influence over **the day-to-day operations** of the company" to plead control.  *Adams*, 340 F.3d at 1108 (emphasis added).  Plaintiffs do not offer any

6

such allegations against Mr. Lederman that meet the standard of "ultimate management authority."

*Id.*

None of the few cases that plaintiffs cite suggest otherwise.  In *Yellowdog Partners, LP v.*

*CURO Group Holdings Corp.*, 426 F. Supp. 3d 864 (D. Kan. 2019), the primary case on which

plaintiffs rely, the district court found that certain shareholders and directors were control persons

on the basis of an admission by the company that these defendants "collectively have the ability to

elect all of the members of our board of directors **and thereby control our policies and**

**operations**."  *Id.* at 877 (emphasis added).  In other words, the defendants in *Yellowdog*—in language

almost identical to the statutory standard—had conceded in writing that they were control persons

for the company.  *Id.*  Here, there is no such admission (and no facts or even allegations upon which

such an admission could be assumed).  In fact, plaintiffs have no well-pled allegations against Mr.

Lederman of the kind that the court found relevant in *Yellowdog*—i.e., systematic control of the

board, the power to elect all board members, or the requisite influence over the operations of the

company, *id.* at 877-88—that could provide a basis for control person liability here.[5]

---

[5] The other cases that plaintiffs cite provide no more support for their control person allegations against Mr. Lederman.  In *In re Molycorp, Inc. Securities Litigation*, the director defendants **were**—unlike Mr. Lederman—alleged to possess day-to-day control over the defendant company because each "participated directly in the management of Molycorp," "had access to . . . materially adverse, undisclosed information," and "[were] involved in signing and/or disseminating" the allegedly fraudulent public filings and releases.  157 F. Supp. 3d 987, 997 (D. Colo. 2016).  Moreover, the court in *Molycorp* found the plaintiffs had adequately alleged that each of the individual director defendants was a primary violator of the securities laws for having signed or approved the actual statements alleged to be misleading.  *Id.*  In *In re NPS Pharmaceuticals, Inc. Securities Litigation*, the court found the complaint there had sufficiently alleged that certain individuals were controlling defendants because plaintiff alleged that "each defendant had the power to influence and control the content and dissemination of the allegedly false statements giving rise to the alleged § 10(b) violations, and that they actually exercised this control."  2007 WL 1976589, at *7 (D. Utah July 3, 2007); *see also In re SemGroup Energy Partners LP*, 729 F. Supp. 2d 1276, 1300-02 (N.D. Okla. 2010) (finding directors to be control persons when they "signed or authorized" allegedly

Even if plaintiffs' allegations were sufficient to plead day-to-day control—which they are not—they cannot be credited because they are directly and demonstrably inconsistent with public documents, which plaintiffs have incorporated by reference into the second amended complaint. As set forth in Mr. Lederman's moving brief, those documents—e.g., earnings call transcripts and press releases, *see* Exs. 3, 5—decisively undermine plaintiffs' allegations about Mr. Lederman's role in Ultra's transition of its operations to horizontal drilling. Br. at 4-5 (citing, *inter alia*, SAC ¶¶ 153, 189, 193, 197, 199, 202). They prove that the decision was made—and the disclosure of that business strategy to investors was communicated—months before Mr. Lederman was appointed as Ultra's board chair. *See* Br. at 4-5; *see also* Exs. 3, 5.

Plaintiffs do not save their improper control person claims by asserting in opposition that Mr. Lederman is responsible for **expanding**—as opposed to **initiating** as alleged in the second amended complaint—Ultra's disclosed horizontal drilling strategy. *See* Opp. at 3. Setting aside that this is inconsistent with what their second amended complaint says, *see* SAC at ¶ 164, plaintiffs nowhere explain how Mr. Lederman's endorsement of a previously disclosed strategy amounts to day-to-day management over Ultra sufficient to find control person liability, and cite no authority that could sponsor such a sprawling view of Section 20(a). In short, regardless of his position on horizontal drilling between February 28, 2018 and May 10, 2018, Mr. Lederman cannot have controlled the decision to horizontally drill that was made and disclosed months before he even arrived at the Company. Plaintiffs do not even acknowledge these basic logical flaws or attempt to reconcile their allegations with these documents. Nor do plaintiffs dispute that allegations (like theirs) that directly contradict documents incorporated by reference in a complaint cannot be

fraudulent statements and "operated . . . and conducted SGLP's business pursuant to agreements and formal memoranda"). No such circumstances are present here.

credited on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

Particularly in light of this chronology, plaintiffs' remaining isolated allegations are nowhere near sufficient to allege Mr. Lederman had the power to direct or control Ultra management and operations on a daily basis. The allegations that Mr. Lederman participated in a single meeting with management championing a better and more efficient execution of a previously announced drilling strategy cannot support a finding of "day-to-day control." *See Adams*, 340 F.3d at 1108. Likewise, the conclusory allegation that Mr. Lederman tried to persuade the board to support the horizontal drilling strategy during periodic board meetings, Opp. at 49, falls far short of alleging control of the day-to-day operations of the Company. Indeed, it merely emphasizes that Mr. Lederman had only one vote on a seven-person board and does not support the conclusion that he had any day-to-day management role. Finally, the few remaining allegations in the second amended complaint do not support plaintiffs' sweeping assertion in their Opposition that Mr. Lederman "directed Ultra employees in their day-to-day tasks and circumvented company executives." Opp. at 49-50. Rather, even when viewed in the light most favorable to plaintiffs, they have at most alleged occasional interactions with and communications between Mr. Lederman and Ultra employees related to discrete Company matters over the course of fewer than three months. SAC ¶¶ 186, 188. These allegations fail to plead that Mr. Lederman had the power to control the day-to-day management and operations of Ultra. *See Maher*, 144 F.3d. at 1305-06; *see also Adams*, 340 F.3d at 1108 (finding day-to-day control to require the "ultimate management authority of the corporation on a daily basis").

9

## CONCLUSION

For these reasons, as well as those set forth in Mr. Lederman's opening brief and the briefs of Messrs. Johnson and Watford, Mr. Lederman respectfully requests that the Court dismiss the Section 20(a) claims with prejudice.[6]


Dated:  July 13, 2022

Respectfully submitted,

By: */s/ Edmund Polubinski III*

Edmund Polubinski III
Patrick W. Blakemore
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: edmund.polubinski@davispolk.com

*Attorneys for Defendant Evan Lederman*

---

[6] For the reasons set forth in the reply brief of Messrs. Johnson and Watford, the Court should deny plaintiffs' request for leave to amend.  *See* Ultra Reply at § III.

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Edmund Polubinski III*
Edmund Polubinski III