# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:20-cv-02652-RMR-STV
(Consolidated for all purposes with Civil Action No. 1:20-cv-02820)

ULTRA PETROLEUM INVESTOR GROUP,
Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

MICHAEL D. WATFORD,
C. BRADLEY JOHNSON,
ULTRA PETROLEUM, INC.,
FIR TREE CAPITAL MANAGEMENT LP
N/K/A FIR TREE PARTNERS INC., and
EVAN LEDERMAN,

      Defendants.

---

## REPLY IN FURTHER SUPPORT OF FIR TREE PARTNERS, INC.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT ........................................................................................................................3

    I.     The Opposition Confirms That Plaintiffs Do Not Plead a Primary Section 10(b) Violation and Thus Do Not State a Section 20(a) Claim Against Fir Tree. ......................3

    II.    The Opposition Concedes That Plaintiffs Do Not Allege that Fir Tree Controlled Any Alleged Primary Violator On or Before February 28, 2018. .............................................4

    III.   The Opposition Makes Clear That the Second Amended Complaint Does Not Plead That Either Fir Tree or Mr. Lederman Controlled Ultra After February 28, 2018. .........4

    IV.   Plaintiffs' Theory of Fir Tree's Control of Mr. Lederman Rests Entirely on His Mere Employment by Fir Tree. ..........................................................................................8

    V.    The Opposition Cannot Escape That Fir Tree Did Not Control the Alleged Misstatements and Acted in Good Faith. ........................................................................9

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) ..................................................................................4

*Andrews v. Primus Telecommunication Group., Inc.*,
  107 F. App'x 301 (4th Cir. 2004) ...............................................................................6

*Gee v. Pacheco*,
  627 F.3d 1178 (10th Cir. 2010) ..................................................................................5

*In re Musical Instruments & Equipment Antitrust Litigation*,
  798 F.3d 1186 (9th Cir. 2015) ....................................................................................7

*Maher v. Durango Metals, Inc.*,
  144 F.3d 1302 (10th Cir. 1998) ..................................................................................6

*Medina v. Clovis Oncology, Inc*,
  215 F. Supp. 3d 1094 (D. Colo. 2017) ........................................................................8

*No. 84 Emp.-Teamster Joint Council Pension Trust Fund v.
  American West Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ......................................................................................9

*Pirraglia v. Novell, Inc.*,
  339 F.3d 1182 (10th Cir. 2003) ..................................................................................9

*Poole v. Southwestern Bell Telephone L.P.*,
  86 F. App'x 372 (10th Cir. 2003) ...............................................................................4

*Roberts v. Aetna Life Insurance Co.*,
  2021 WL 5355212 (D. Colo. Sept. 30, 2021) .............................................................8

*Smallen v. Western Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) ..................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights., Ltd.*,
  551 U.S. 308 (2007) ....................................................................................................5

*Yellowdog Partners, LP v. CURO Group Holdings Corp.*,
  426 F. Supp. 3d 864 (D. Kan. 2019) ...........................................................................8

**Statutes**

15 U.S.C. § 78t ...............................................................................................................3, 9

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................1

Defendant Fir Tree Capital Management LP (f/k/a Fir Tree Inc.) ("Fir Tree")[1] submits this reply memorandum in further support of its motion to dismiss the Second Amended Complaint. For the reasons shown below and in Fir Tree's opening brief, as well as the opening and reply memoranda of Defendants Michael D. Watford and C. Bradley Johnson and Defendant Evan Lederman, which Fir Tree adopts in their entirety and incorporates by reference herein, the Second Amended Complaint does not state a control-person claim under Section 20(a) of the Exchange Act against Fir Tree, and should be dismissed as to Fir Tree with prejudice under Rule 12(b)(6).

## PRELIMINARY STATEMENT

The Opposition (ECF No. 91; "Plfs.' Opp.") confirms that Plaintiffs' Section 20(a) control-person claim against Fir Tree, a former minority shareholder of Ultra Petroleum Corp. ("Ultra"), should be dismissed with prejudice. Despite Plaintiffs having a preview of Fir Tree's arguments from its motion to dismiss Plaintiffs' prior complaint, the 50-page Opposition says nothing in response to any of the cases cited in Fir Tree's opening brief. Rather, the Opposition shows that Plaintiffs' claim against Fir Tree is based solely on speculative allegations contradicted by the documents on which Plaintiffs rely. Moreover—again, despite being on notice of these arguments for months—the Opposition does not dispute that:

- The Complaint does not contain any allegations that Fir Tree controlled any alleged primary violator on or before February 28, 2018. (Thus, at a minimum, the Section 20(a) claim against Fir Tree based on statements on or before this date should be dismissed.)

---

[1] Capitalized terms used and not otherwise defined herein have the same meaning as in Fir Tree's Motion to Dismiss the Second Amended Class Action Complaint, filed June 8, 2022 (ECF No. 88) (the "Moving Brief"). References to "2d. Am. Compl. ¶__" are to the Second Amended Class Action Complaint. Citations to "Ex.__" are to the Exhibits to the Declaration of Matthew Peller, filed contemporaneously herewith.

- Ultra's horizontal drilling strategy began before Mr. Lederman joined Ultra's board on February 28, 2018.

- Neither Fir Tree nor Mr. Lederman exerted any control over the making of the challenged statements.

In light of these concessions, the Opposition is left to cobble together a theory of control against Fir Tree based on: (i) the flimsy (and illogical) premise that Mr. Lederman somehow directed the day-to-day operations of Ultra by helping to implement a horizontal-drilling program that Ultra had decided upon and put into motion months before Mr. Lederman joined the board; and (ii) Plaintiffs' conclusory speculation about Fir Tree's investment strategy, based solely on generalized suppositions about the "private equity" industry, and not any well-pled allegations about Fir Tree's actions in this case. As to the latter, the *Wall Street Journal* article that Plaintiffs cite for Fir Tree's supposed short-term plans for Ultra demonstrates exactly the opposite: that Fir Tree was interested in staying invested in Ultra "over time." Plaintiffs' strained efforts to show control fail.

*First*, as shown in Defendants Michael D. Watford and C. Bradley Johnson's Reply Brief in Support of Their Motion to Dismiss ("Watford and Johnson Reply Br."), the Opposition makes clear that Plaintiffs have not satisfied their heavy burden to plead a Section 10(b) claim under the exacting standards of the Private Securities Litigation Reform Act or Rule 9(b). Thus, as a matter of law, without an underlying primary violation of Section 10(b), the Section 20(a) claim against Fir Tree must be dismissed.

*Second*, the Opposition offers no response to the fact that Plaintiffs have not alleged—and, indeed, cannot allege—that Fir Tree controlled any alleged primary violator on or before February 28, 2018. Having conceded this point, at a minimum, the Section 20(a) claims against Fir Tree for any challenged statements on or before that date should be dismissed.

*Third*, the Opposition points to no facts alleged in the Second Amended Complaint that either Fir Tree or Mr. Lederman exerted control over any person or mechanism responsible for allegedly making false or misleading statements to investors. Plaintiffs are thus against the ropes and must demonstrate that a minority shareholder (Fir Tree) who appointed a single director to Ultra's board (Mr. Lederman), and proposed director candidates to be chosen from a list, exercised day-to-day control over Ultra's operations *and* policies. The Opposition makes clear that the Second Amended Complaint fails to make this showing.

*Fourth*, the Opposition asks the Court to infer that Fir Tree controlled Mr. Lederman in his capacity as an Ultra director based on nothing more than the fact that he was employed by Fir Tree and that his decisions allegedly aligned with Plaintiffs' speculation as to Fir Tree's investment strategy, which is not supported by any factual allegation in the Second Amended Complaint and is, in fact, undermined by the *Wall Street Journal* article on which Plaintiffs rely. The case law—which Plaintiffs ignore—forecloses this theory.

*Finally*, having conceded that Fir Tree did not control the making of any of the challenged statements, the Opposition can only offer up an illogical theory as to why Fir Tree would embark on a drilling strategy guaranteed to fail, when holding almost 20% of Ultra's stock and wishing to stay invested in the company "over time." Thus, Plaintiffs' Section 20(a) claims against Fir Tree should be dismissed under 15 U.S.C. § 78t(a).

**ARGUMENT**

I.   **The Opposition Confirms That Plaintiffs Do Not Plead a Primary Section 10(b) Violation and Thus Do Not State a Section 20(a) Claim Against Fir Tree.**

As shown in Mssrs. Watford and Johnson's reply brief, the Opposition demonstrates that the Second Amended Complaint does not plead a Section 10(b) claim. "Because the complaint

does not allege a primary violation of the securities laws, [the] Section 20(a) claim[]" against Fir Tree "necessarily fail[s]." *Smallen v. W. Union Co.*, 950 F.3d 1297, 1315 (10th Cir. 2020).

**II.     The Opposition Concedes That Plaintiffs Do Not Allege that Fir Tree Controlled Any Alleged Primary Violator On or Before February 28, 2018.**

The Opposition does not contest that Fir Tree could not have controlled any alleged primary violator on or before February 28, 2018, when Mr. Lederman joined Ultra's board of directors.  Thus, at a minimum, the Section 20(a) claims against Fir Tree based on challenged statements on or before February 28, 2018 should be dismissed.  *See Poole v. Sw. Bell Tel. L.P.*, 86 F. App'x 372, 374 (10th Cir. 2003) (claims "deem[ed] . . . abandoned" where plaintiff "did not oppose the defendants' argument" for dismissal of claims).  (*See* Lederman Reply Br. at 3-4.)

**III.    The Opposition Makes Clear That the Second Amended Complaint Does Not Plead That Either Fir Tree or Mr. Lederman Controlled Ultra After February 28, 2018.**

Although Plaintiffs assert that control "need not be pled with particularity" (Plfs.' Opp. at 47), they do not dispute that under controlling Tenth Circuit law, they must point to allegations that Fir Tree exercised control over: (i) the making of the alleged misstatements that are the core of Plaintiffs' Section 10(b) claims; or (ii) Ultra's day-to-day management and policies.  *See, e.g.*, *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1107-09 (10th Cir. 2003).

As to the alleged misstatements made after February 28, 2018, the Opposition struggles to explain how Fir Tree controlled these statements.  *First*, the Opposition speculates that "Fir Tree's business model is to drill horizontal wells and then boast of the results so they can sell their shares." (Plfs.' Opp. at 48.)  But this says nothing about Fir Tree's *control* over Ultra's allegedly false statements about horizontal drilling.  More fundamentally, this speculation is based on a single paragraph of the Second Amended Complaint (Paragraph 148) that purports to set forth the general business strategy of private equity firms that invest in drilling companies:

More specifically, the business plan was: (i) a private equity company forms a small subsidiary with just a few employees; (ii) the subsidiary identifies fields that have seen little development; (iii) the subsidiary acquires acreage in the field; (iv) the subsidiary drills exploratory wells in the oilfield; (v) if these wells are successful, the subsidiary can recognize proved reserves; (vi) the proved reserves increase the value of the company's acreage; and (vii) the subsidiary sells the acreage and returns money to the private equity company which then returns the money to its investors. Thus, the private equity companies were not drilling in order to produce oil, but rather to benefit from the price appreciation when speculative reserves are proved.

But this generalized allegation does not mention Fir Tree at all, nor does it contain any well-pled factual allegations about Fir Tree's actions with respect to Ultra, let alone allege facts to suggest that Fir Tree controlled the alleged misstatements here.[2]

*Second*, the Opposition argues that "the [September 27, 2017] press release that announced Fir Tree's involvement stated that the company's public statements would thenceforth emphasize . . . horizontal developments." (Plfs.' Opp. at 48.) But, the September 27, 2017 press release—which was issued months prior to Mr. Lederman joining the Ultra board—merely stated that Ultra planned to "[i]ncrease clarity to the market" in its disclosures about the impact of its already-decided-upon horizontal drilling program. Moreover, that Ultra changed its investor communications says nothing about Fir Tree's control over those communications. In sum, the Opposition offers no factual allegations from the Second Amended Complaint that would establish

---

[2] Indeed, the *Wall Street Journal* article that the Opposition (and Second Amended Complaint) lean upon to try to demonstrate Fir Tree's supposed short-term plans for Ultra demonstrates exactly the opposite. (*See, e.g.*, 2d. Am. Compl. ¶ 152; Plfs.' Opp. at 14.) That article shows that Fir Tree was interested in staying invested in Ultra "over time," quoting one of Fir Tree's managing partners about its investment in Ultra, one of its "largest energy bets": "While there is still some work to do, these companies are as healthy as they've ever been . . . The market will take notice over time." (Ex. A.) The Court may consider this article on this Motion because it is incorporated by reference into the Second Amended Complaint (*see* 2d. Am. Compl. ¶ 152). *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("when ruling on Rule 12(b)(6) motions to dismiss" "courts must consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference"); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

that Fir Tree caused Ultra to issue any statement. The Opposition likewise fails to make any such showing as to Mr. Lederman. (*See* Lederman Br. at 11-15; Lederman Reply Br. at 4-9.)

Given that Fir Tree and Mr. Lederman did not control the making of the allegedly fraudulent statements, the Opposition is forced to argue that Mr. Lederman exercised day-to-day control over Ultra. But for the reasons shown in Mr. Lederman's reply, this fails as to him. (*See* Lederman Reply Br. at 6-9.)

As to Fir Tree, Plaintiffs' task is made more difficult because, as numerous cases have held, minority shareholders such as Fir Tree, which held only 18.5% of Ultra shares and was afforded a single appointment to its seven-member board, do not possess control under Section 20(a) as a matter of law. (*See* Moving Br. at 7 (citing, *inter alia*, *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305-06 (10th Cir. 1998) (minority stake in company and right to appoint board member insufficient to establish control); *Andrews v. Primus Telecomm. Grp., Inc.*, 107 F. App'x 301, 306 (4th Cir. 2004) (20 percent share did not amount to control))). Despite having been on notice of these authorities from Fir Tree's prior motion to dismiss, the Opposition fails to seriously contend with them.

Backed into a corner, the Opposition grasps at straws. Plaintiffs first turn to an allegation made by a disgruntled Ultra investor, who, having unsuccessfully challenged Ultra's bankruptcy plan, has now brought a separate *pro se* securities fraud case. (Plfs.' Opp. at 48.) Plaintiffs contend that allegations in his *pro se* complaint—which have not yet been tested on a motion to dismiss— "are reliable and should be credited." (Plfs.' Opp. at 50.) In support, Plaintiffs cite three out-of-Circuit decisions—all of which concern crediting allegations borrowed from complaints brought by federal or state regulators (*e.g.*, the SEC and FTC), rather than allegations pilfered from an unadjudicated *pro se* complaint. (Plfs.' Opp. at 50.) Tellingly, Plaintiffs do not explain *how* they

confirmed that the copied allegations are reliable, such as speaking to the *pro se* litigant about his complaint or otherwise independently verifying his *ipse dixit* allegations. Plaintiffs point to *In re Musical Instruments & Equipment Antitrust Litigation*, 798 F.3d 1186 (9th Cir. 2015) (Plfs.' Opp. at 50), but the page that they cite from that decision (1199) is from the dissenting opinion in that case. The majority opinion held that neither the FTC complaint nor the FTC consent decree at issue supported allegations of antitrust violations in that case, 798 F.3d at 1196, and thus provides no support for Plaintiffs here. Not all complaints are created equal, and the Opposition does not explain how the *pro se* complaint on which Plaintiffs rely, which has not survived a motion to dismiss and follows an unsuccessful attempt by the same plaintiff to disrupt Ultra's bankruptcy reorganization plan, displays any of the indicia of reliability found in a complaint filed by a governmental agency, such as the SEC. Even if these allegations could be credited, however, they still would not save Plaintiffs' otherwise fatally flawed claims against Fir Tree.

Next, Plaintiffs contend that "Fir Tree also appointed two of Ultra's directors in 2016." (Plfs.' Opp. at 48.) Not so. As the Complaint and Opposition both recognize, Fir Tree—as a member of the committee of holders of Ultra's corporate unsecured notes—proposed director candidates to a list from which Ultra's board of directors would choose two directors. (2d. Am. Compl. ¶ 156; Plfs.' Opp. at 5.) Neither the Opposition nor the Amended Complaint explains who those candidates were or their relationship (if any) to Fir Tree. More fundamentally, the Opposition does not respond to (and therefore concedes) Fir Tree's argument in its opening brief that its "mere proposal of potential nominees cannot establish its control over Ultra." *See* Moving Br. at 8.

When all is said and done, Fir Tree's actions bear no resemblance to Plaintiffs' main authority, *Yellowdog Partners, LP v. CURO Group Holdings Corp.*, 426 F. Supp. 3d 864, 877 (D.

7

Kan. 2019) (Plfs.' Opp. at 48), where the allegations of control were supported by the company's admission that the director defendants—who not only founded and held a controlling share of the company, but had the power to appoint the *entire* board of directors—had control over the company's "policies and operations." Instead, the facts here are more like those in *Medina v. Clovis Oncology, Inc*, which Plaintiffs also cite (Plfs.' Opp. at 48), where investors alleged holdings of minority stakes in a company and service on the board of directors, but failed to show control liability as they did not "allege any control over the day-to-day operations of [the company]." 215 F. Supp. 3d 1094, 1133 (D. Colo. 2017).

**IV. Plaintiffs' Theory of Fir Tree's Control of Mr. Lederman Rests Entirely on His Mere Employment by Fir Tree.**

The Opposition claims that Fir Tree controlled Mr. Lederman in his capacity as an Ultra director because (i) he was employed by Fir Tree, which appointed him to the Ultra board; and (ii) he allegedly "did exactly what Fir Tree wanted: pushed to develop horizontal wells quickly so Fir Tree could exit its position" in Ultra. (Plfs.' Opp. at 49.)[3] But as shown above, Plaintiffs' speculation about Fir Tree's supposed investment strategy as to Ultra is based on nothing more than generalized suppositions about the private equity industry, is unmoored from any factual allegation about Fir Tree, let alone its investment in Ultra, and is contradicted by the very news article on which Plaintiffs rely.

When stripped of the allegations about Fir Tree's purported investment strategy, the Opposition is left to argue that Fir Tree controlled Mr. Lederman in his capacity as an Ultra director based on the fact that he was employed by Fir Tree, which appointed him to the Ultra board. But

---

[3] The Opposition also contends that Fir Tree "could have removed" Mr. Lederman from Ultra's board "if it disapproved of his actions." (Plfs.' Opp. at 49.) But the Second Amended Complaint contains no such allegation, and "plaintiff[s] cannot attempt to amend the complaint through [their] brief in opposition to a motion to dismiss." *Roberts v. Aetna Life Ins. Co.*, 2021 WL 5355212, at *9 (D. Colo. Sept. 30, 2021).

the numerous cases Fir Tree cited in its Moving Brief—which Plaintiffs do not address at all—foreclose this inference. (*See* Moving Br. at 7-9.)

**V.     The Opposition Cannot Escape That Fir Tree Did Not Control the Alleged Misstatements and Acted in Good Faith.**

As noted above, the Opposition does not dispute that Fir Tree did not exercise any control over the making of the alleged misstatements. Moreover, under 15 U.S.C. § 78t(a), the Section 20(a) claims against Fir Tree should be dismissed because the Second Amended Complaint confirms that Fir Tree acted in good faith. Plaintiffs contend that the fact that Fir Tree did not sell any Ultra stock is not dispositive of Fir Tree's good faith, based on some courts' refusal to infer a lack of motive from a lack of insider sales. (Plfs.' Opp. at 45-46.) But Plaintiffs' cases stand for nothing more than the unremarkable proposition that a plaintiff may plead scienter through factors other than insider sales.[4] Here, the problem is that the Opposition does not explain why, if Fir Tree planned to "flip" its stake of Ultra stock, it would continue to back, and, indeed, increase, a costly horizontal drilling program that it knew (according to Plaintiffs) could not succeed, because the initial testing was, in Plaintiffs' view, flawed. (*See* Watford and Johnson's Reply Br. at 21-22.) Plaintiffs speculate that further drilling could have been successful (Plfs.' Opp. at 30), but that is not what the Second Amended Complaint alleges. Rather, what Plaintiffs allege is that Defendants knew horizontal drilling would fail because they knew there was a "single best

---

[4] *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003) (finding scienter where plaintiffs alleged other facts showing "ample motive and opportunity to mislead investors," including that defendants were executives who had control over a firm's public statements); *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003) (although defendants did not engage in insider trading, scienter could be inferred from further allegations, including motivation to inflate financial results and stock prices due to compensation based on financial performance).

location" for horizontal drilling.  (*e.g.*, ¶¶ 192, 200.)  Given this, Plaintiffs' explanation for why Fir Tree lacked good faith is illogical and should not be credited.[5]

## CONCLUSION

For the foregoing reasons and those set forth in Fir Tree's opening brief, as well as the opening and reply memoranda of Mr. Watford and Mr. Johnson, and Mr. Lederman, Plaintiffs' Section 20(a) claim against Fir Tree should be dismissed with prejudice.

Dated: July 13, 2022

**ROLNICK KRAMER SADIGHI LLP**

By: */s/ Sheila A. Sadighi*
Sheila A. Sadighi
300 Executive Drive, Suite 275
West Orange, New Jersey 07052
Tel. 973-996-4991
ssadighi@rksllp.com

Matthew Peller
1251 Avenue of the Americas
New York, New York 10020
Tel. 212-597-2822
mpeller@rksllp.com

*Counsel for Defendant Fir Tree Capital Management LP (f/k/a Fir Tree Inc.)*

---

[5] Fir Tree joins in the argument set forth in Defendants Watford and Johnson's reply brief that Plaintiffs should not be afforded an opportunity to amend the Complaint.  *See* Watford and Johnson Reply Br. at 24-25.