IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Nina Y. Wang**

Civil Action No. 1:20-cv-02652-NYW-STV

SCOTT HEINER,
BALA SETTU,
GEOFFREY POLYCHRONIS,
MAHDI RIYAD ISSA,
YOAV GIVON,
MICHAEL ALTMAN, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

MICHAEL D. WATFORD,
C. BRADLEY JOHNSON,
ULTRA PETROLEUM, INC.,
FIR TREE CAPITAL MANAGEMENT LP N/K/A FIR TREE PARTNERS INC., and
EVAN LEDERMAN,

    Defendants.

---

**PLAINTIFFS' OBJECTION TO THE RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE SCOTT T. VARHOLAK
TO GRANT DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

---

**COME NOW**, Plaintiffs respectfully object to Magistrate Judge Scott T. Varholak's

recommendation granting Defendants' motion to dismiss. "The court's function on a Rule 12(b)(6)

motion is not to weigh potential evidence that the parties might present at trial, but to assess

whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)

(citation omitted). Judge Varholak erred because instead of evaluating Plaintiffs' claims in their

own right to determine if they were plausible on their face, he considered them relative to a

1

competing narrative that he ultimately saw as more likely to prevail. Recommending the dismissal of Plaintiffs' complaint on this basis was inappropriate under the law.

## I.    LEGAL STANDARD.

"When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge 'determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to.'" *Goldgroup Res., Inc. v. DynaResource De Mexico, S.A. De C.V.*, 381 F. Supp. 3d 1332, 1342 (D. Colo. 2019), *aff'd*, 994 F.3d 1181 (10th Cir. 2021).

On a motion to dismiss, "a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor." *United States v. Air Methods Corp.*, 2020 WL 1694386, at *1 (D. Colo. Apr. 7, 2020) (citation omitted). "The PSLRA requires that a plaintiff plead falsity by specifying each allegedly misleading statement, the reason why the statement is misleading, and, if made on information and belief, all facts on which that belief is formed." *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1149 (D. Colo. 2019) (citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095-96 (10th Cir. 2003)).

## II.    DEFENDANTS VIOLATED THE SECURITIES EXCHANGE ACT OF 1934 BY KNOWINGLY MAKING FALSE AND MISLEADING STATEMENTS ABOUT ULTRA PETROLEUM'S DRILLING OPERATIONS.

Defendant Michael D. Watford, Chief Executive Officer of Ultra Petroleum, Inc., committed securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5(b). On November 7, 2017, he told investors during an earnings conference call that Ultra Petroleum's first horizontal well located on the east flank of the Pinedale field in Wyoming

2

was "indicative of horizontal potential in the field" when, in reality, it was anything but. ¶197 (Statement 10); *see also* ¶198 (in response to analyst question, stating that production estimates would be "recalculated" to show higher yields based on initial production from well) (Statement 11).[1] Ultra Petroleum selected the precise location of its first horizontal well only after months of research to identify the single best position. Further, because of this research, Ultra Petroleum drilled the well knowing that it would not be representative of the Pinedale field at large but would instead yield abnormally high returns due to the ideal location in which it was located. Thus, when Mr. Watford said that the well would be "indicative" of Ultra Petroleum's new horizontal drilling campaign, he knowingly misled investors. ¶200.

To support these allegations of "falsity," Plaintiffs relied on former employees and admissions from Ultra Petroleum's Director of Reservoir Engineering, Defendant C. Bradley Johnson. Former Employee 1 ("FE1") worked at Ultra Petroleum from August 2011 through October 2018 as a Staff Reservoir Engineer who supported the transition to horizontal drilling. ¶81. According to FE1, Ultra Petroleum spent six months identifying the single best location for the new horizontal well with the help of geologists, well-log data, and cross-sectional analysis. ¶¶130-31. Ultra Petroleum successfully found the best location for the well and, according to Mr. Johnson, knew that it would produce better results than future wells given its location within the field at large and proximity to preexisting vertical wells. ¶¶128-29. Ultra Petroleum's Chief Financial Officer at the time, Jerald J. Stratton, echoed Mr. Johnson's comments concerning the

---

[1] Citations to "¶¶___" refer to Plaintiffs' Second Amended Class Action Complaint for Violation of the Federal Securities Laws (Dkt. No. 75-2). Pursuant to Judge Varholak, the Clerk was directed to "enter Dkt. No. 75-2" as the complaint in this matter. *See* Text Order dated May 25, 2022 (Dkt. No. 77). "Statement __" refers to the statement numbers assigned by Judge Varholak to each of the alleged false statements, as written in his order.

representativeness of the well when testifying during bankruptcy proceedings in July 2020, stating that the well was situated within the field where "[t]here had not been a lot of vertical development . . . ." ¶133. Much of the horizontal well's productivity derived from the core in a productive area that was covered by a lake on the surface, *i.e.*, the precise location was not susceptible to vertical drilling and therefore had not been previously tapped. *Id.*

Judge Varholak rejected Plaintiffs' allegations on this point, accepting Defendants' narrative and holding that investors would not have understood Mr. Watford's statement to "communicate that [the well] would be 'typical' of the rest of Ultra's horizontal wells in the Pinedale Field." Dkt. No. 102 at 36. This holding ran contrary to the facts alleged by Plaintiffs in their complaint. Specifically, to demonstrate the materiality of Mr. Watford's statements, Plaintiffs included an excerpt from an analyst report written by NatAlliance Securities stating that Ultra Petroleum is "most likely going to be able to reduce costs and might be able to achieve better results" based on the results obtained from the new "horizontal well at Pinedale." ¶201. Judge Varholak did not consider these allegations (*see* Dkt. No. 102 at 36-37), which should have been accepted as true and supportive of all reasonable inferences favoring the non-movant, *i.e.*, that Plaintiffs and other investors were misled by Mr. Watford's statements. *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1193 (10th Cir. 2003) (plaintiffs entitled to have allegations accepted as true, regardless of whether they "seem far-fetched"); *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1116 (D. Colo. 2017) (to defeat motion to dismiss, plaintiffs must only plead a plausible interpretation showing defendants' statements misleading without regard to possible competing interpretations).

Judge Varholak also erred by relying on what he referred to as "fulsome disclosures" that "expressly discouraged" investors from "extrapolating [the well's] initial success to the rest of the Pinedale Field." Dkt. No. 102 at 36-38. Even if Mr. Watford had "expressly discouraged" investors against relying too heavily on the initial production reports (which he did not, *see* Dkt. No. 102 at 37), dismissal would only be appropriate if those statements "discredit[ed] the other one[s] so obviously that the risk of real deception drops to nil." *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1097 (1991); *see Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 (9th Cir. 2019) (warnings insufficient because they "did not counterbalance the misleading impression created by the initial misrepresentations") (internal quotations and alterations omitted). In addition to Mr. Watford's initial statement about the well being "indicative" of the field at large, he also said that initial production data would result in "significantly better economics with much higher returns" upon "recalculat[ion]." ¶198.[2] Thus, Mr. Watford's statements about Ultra Petroleum's new horizontal well created *at least* some risk of deception amongst investors and, for that reason, should not be shielded from liability at the pleading stage. *See Kunz v. SEC*, 64 F. App'x 659, 664 (10th Cir. 2003) (the "question of materiality" should be "resolved as a matter of law" only when the truth is "so obviously important or unimportant to an investor[] that reasonable minds cannot differ on the question") (internal quotations and alterations omitted).[3]

---

[2] The crux of Plaintiffs' allegation here is that the initial production data from the well would cause estimates to result in "significantly better economics with much higher returns," according to Mr. Watford. ¶198. Thus, Mr. Watford is confirming in direct response to an analyst question that the initial production data from the horizontal well would materially boost economic projections when, in reality, the data from the well was not representative of the field at large and therefore not reliable. *See* ¶200.

[3] It makes no difference whether Mr. Watford's statements on November 7, 2017 are "opinion" statements. As Judge Varholak held, investors can be misled if they "'understand an opinion statement to convey facts about how the speaker has formed the opinion—or, otherwise put, about

Defendants made similarly false statements about the horizontal well on January 30, February 28, and May 10, 2018. *See* ¶202 (Statement 13); ¶204 (Statement 14); ¶213 (Statement 15). Each statement furthered the misrepresentation that the initial horizontal well drilled by Ultra Petroleum would be representative of others to come in the field at large and that production output would be on par with the initial production reports previously provided. Indeed, the January 30, 2018 press release told investors that future wells would be "verifying the significant resource potential" already demonstrated by the initial well when, in fact, the "resource potential" demonstrated by the initial well was not indicative of the field at large due to the precise location in which it was drilled. ¶203. Similarly, Mr. Johnson's statements on February 28, 2018 concerning "delivering repeatable results" were also materially misleading, given that the location of the well made "repeatable results" not possible. ¶205. Mr. Johnson's statements on May 10, 2018 also concealed the truth about the initial well insofar as his comments attributed the lower output to simply "variability" within the field when, in reality, the lower output was a direct consequence of Ultra Petroleum's decision to drill the initial well in the single-most ideal location possible while knowing that production output would not be repeatable. ¶214. Defendants concealed specifics about the initial well's location and output (*e.g.*, its distance from neighboring vertical wells and access to untouched pockets of gas) that, in turn, prevented investors from being able to accurately evaluate or understand the above statements. Each statement in its own right, even if "literally

---

the speaker's basis for holding that view. And if the real facts are otherwise, but not provided, the opinion statement will mislead the audience.'" Dkt. No. 102 at 36 (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188 (2015)). Assuming *arguendo* that Mr. Watford's statements are "opinions," investors understood his statements to mean that the well's initial production was "indicative" of the field at large. The "real facts" behind that statement did not support it. *See* ¶200.

accurate," became misleading "through their context and manner of presentation." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008); *see also SEC v. Merch. Capital, LLC*, 483 F.3d 747, 768 (11th Cir. 2007) ("It is well established that a materially misleading omission of past performance information occurs when a promoter makes optimistic statements about the prospects of the business but fails to include past performance information that would be useful to a reasonable investor in assessing those statements.").

The crux of Plaintiffs' allegations is that Defendants concealed specifics about the initial well's location and output (*e.g.*, its distance from neighboring vertical wells and access to untouched pockets of gas) that, in turn, prevented investors from being able to accurately evaluate or understand the above statements. Thus, Judge Varholak erred when recommending dismissal because, for example, the statements did not mislead investors with respect to the locations of certain wells. Dkt. No. 102 at 40-41. Similarly, with respect to Mr. Johnson's statement about the "variability" in the field at large and the differences in output between wells, Judge Varholak adopted one interpretation of the term over Plaintiffs' alleged interpretation without any particular evidence or reasoning to do so. At the pleading stage, this was improper under the case law. *See Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 689 (5th Cir. 2014) (holding plaintiff entitled to benefit of doubt at pleading stage when parties disagreed over meaning of "reserves" in oil and gas industry); *SEC v. Platforms Wireless International Corp.*, 617 F.3d 1071, 1092 (9th Cir. 2010) (rejecting defendants' "alternative interpretation" of press release as "not plausible"); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990) ("Even a statement which is literally true, if susceptible to quite another interpretation by the reasonable investor[,] may properly be considered a material misrepresentation.").

### III.    ULTRA PETROLEUM'S CORPORATE GOVERNANCE STATEMENTS ALSO VIOLATED THE FEDERAL SECURITIES LAWS.

Plaintiffs' complaint also asserted violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) for statements concerning Ultra Petroleum's corporate governance. Specifically, on April 17, 2018, Ultra Petroleum's annual report for 2017 (as amended) described the "separate roles" for its non-executive Chairman and Chief Executive Officer, stating that the latter "focuses on the day-to-day business and operations" while the former "lead[s] the board in its fundamental role of providing guidance to and oversight of management." ¶206 (Statement 16); *see also* ¶209 (describing internal processes to "mitigate" risk caused by executive officers) (Statement 17). These statements were material to investors because, among other reasons, the private equity firm Fir Tree Capital Management had just taken a significant stake in Ultra Petroleum and installed Defendant Evan Lederman as the Board's non-executive Chairman. ¶139.

Contrary to the statements in the annual report Mr. Lederman played an integral role in the day-to-day affairs and, as alleged, overrode Mr. Watford on critical operational issues including those relating to Ultra Petroleum's transition to horizontal drilling. ¶165. While management historically had developed drilling plans "working hand in glove with geologists, reservoir engineers, and other oil and gas professionals" (¶¶166-67), Mr. Lederman assumed control over the process on or around February 28, 2018 (¶¶168-70). Against the advice of Ultra Petroleum's technical team, Mr. Lederman forced Ultra Petroleum to abandon its traditional planning process and insisted that only horizontal drilling occur going forward. ¶170. This directive was detrimental because Ultra Petroleum was not prepared to expand the horizontal drilling program at such an expedited pace and, as such, resulted in a litany of problems, according to former employees of Ultra Petroleum. ¶¶171-75. Mr. Lederman based his directive on unsubstantiated and unfounded

"models" from a third-party (Andrew Teno, Director at Fir Tree Capital Management) with no experience in the oil-and-gas industry. ¶¶177-83 (describing unreliable nature of models generated by Mr. Teno that were used by Mr. Lederman to direct operations); *see also* Dkt. No. 102 at 18-19 (summarizing Plaintiffs' allegations). These facts directly contradicted and undermined Ultra Petroleum's statements in the annual report and, accordingly, properly supported Plaintiffs' allegations of falsity. *See*, *e.g.*, *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 983 & n.8 (8th Cir. 2012) ("Having chosen to represent it was in material compliance with FDA regulations and cGMP, KV was obligated to make a full disclosure of any material facts" concerning compliance); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 277 (S.D.N.Y. 2012) (sustaining fraud claims based on statement that Goldman is "dedicated to complying fully" with applicable laws).

Instead of accepting Plaintiffs' well-pleaded allegations (which were supported by four different former employees who had witnessed Mr. Lederman's unilateral discretion over the company), Judge Varholak rejected them as "immaterial and therefore unactionable" as a matter of law. Dkt. No. 102 at 44. Ultra Petroleum's internal controls, specifically those relating to the management of the company, were not immaterial as a matter of law. This is especially true in light of the "Cooperation Agreement" and "Standstill Provisions" entered into between Ultra Petroleum and Fir Tree Capital Management in the wake of the take-over proceedings commenced the prior year. *See* ¶¶158-63. If anything, management over the company was of the utmost importance to investors and, therefore, statements concerning its internal controls for management were not "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Kunz*, 64 F. App'x at 664; *Basic Inc. v. Levinson*, 485 U.S. 224, 240

(1988) ("materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information").

## IV.    PLAINTIFFS CAN PURSUE THEIR CONTROL PERSON LIABILITY CLAIMS.

Having properly pleaded a primary violation under the federal securities laws against Messrs. Watford and Johnson and Ultra Petroleum, Plaintiffs can pursue the Section 20(a) claims against the individuals that controlled Ultra Petroleum at the time of the violations, *i.e.*, Fir Tree Capital Management and Messrs. Watford, Johnson, and Lederman. *See In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1014 (D. Colo. 2016) (Section 20(a) requires primary violation).

## V.    CONCLUSION.

For the reasons stated herein, Plaintiffs respectfully request that their objection to Judge Varholak's recommendation be sustained insofar as the statements identified above were false and/or materially misleading.[4]

Dated: December 5, 2022                    BERENS LAW LLC

                                           /s/ Jeffrey A. Berens
                                           Jeffrey A. Berens
                                           2373 Central Park Boulevard, Suite 100
                                           Denver, Colorado 80238
                                           Telephone: (303) 861-1764
                                           jeff@jberenslaw.com

                                           *Liaison Counsel*

---

[4] Judge Varholak did not consider "whether Defendants acted with scienter" and, therefore, is not addressed in this objection. *See* FED. R. CIV. P. 72(b)(2). If their objection is sustained, Plaintiffs respectfully submit that their allegations of "scienter" are sufficiently pleaded and, therefore, do not provide an alternative basis for dismissal.

LEVI & KORSINSKY, LLP
Nicholas I. Porritt
Adam M. Apton
Adam C. McCall
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
nporritt@zlk.com
aapton@zlk.com
amccall@zlk.com

BRAGAR EAGEL & SQUIRE, P.C.
Melissa A. Fortunato
Marion Passmore
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Email: fortunato@bespc.com
Email: passmore@bespc.com

*Co-Lead Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

I, Jeffrey A. Berens, an attorney, hereby certify that on December 5, 2022, I caused a true and correct copy of the foregoing "PLAINTIFFS' OBJECTION TO THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE SCOTT T. VARHOLAK TO GRANT DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT" to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury that the foregoing is true and correct. Executed on December 5, 2022.

/s/ Jeffrey A. Berens
Jeffrey A. Berens